# Exhibit 1

Contract No. WSJ-17016

## CONSTRUCTION CONTRACT (LUMP SUM)

This Construction Contract (referred to herein as the "Agreement" and consisting of this document and all Exhibits attached hereto and/or incorporated herein by reference) made and entered into as of _____17 January 2018_____ by and between:

**The Owner** (the "Owner"):

Westin St. John Hotel Company, Inc. (a subsidiary of ILG, Inc.)
9002 San Marco Court
Orlando, Florida 32819

ILG, Inc.
6262 Sunset Drive
Miami, FL 33143

**And the Contractor** (the "Contractor"):

Cotton International, Inc.
5443 Katy Hockley Cutoff
Katy, Texas 77493

**The Project is** (the "Project"):   Hurricane Repairs at the Common Areas and Public Space Buildings at the Westin St. John Resort, USVI

**The Architect is:**  N/A

NOW THEREFORE, for and in consideration of the mutual covenants herein contained, Owner and Contractor agree as set forth below:

## ARTICLE 1
## CONTRACT DOCUMENTS, SCOPE OF WORK AND RELATED PROVISIONS

1.     The Contract Documents consist of (a) this Construction Contract (the "Agreement"); (b) the Scope of Work Description set forth in Exhibit A hereto and any related clarifications, qualifications and exclusions; (c) the Specifications as listed on Exhibit A hereto; (d) the Drawings as listed on Exhibit A hereto; (e) all other Exhibits attached hereto; (f) any Addenda to the Drawings or Specifications issued by the Architect with respect to the Work and (g) any Modifications issued in connection with the Work for the Project. The Contract Documents form the Contract for Construction and may be collectively referred to herein as the "Contract", the "Contract Documents" and/or the "Agreement". All Contract Documents and Exhibits to this Agreement are fully incorporated into this Agreement by reference and are as fully a part of this Agreement as if repeated in their entirety in this Agreement. A Modification is (1) a written amendment to the Contract signed by both parties, (2) a Change Order, (3) a Construction Change Directive or (4) a written order for a minor change in the Work issued by the Architect. In the event of a conflict among any of the Contract Documents, the Contract Documents shall take precedence in the order in which they are listed in this paragraph, except that a Modification shall take precedence over that portion of any other Contract Document which is modified by the applicable Modification.

2.     The Contract represents the entire and integrated agreement between the parties hereto and supersedes the Request for Proposal, all other solicitations or requests for qualifications and/or bids and any responses thereto and all prior negotiations, representations or agreements, either written or oral (including the Contractor's responses to, and/or submissions in connection with the Owner's requests for proposal or other solicitations), all of which are hereby rendered null and void and of no effect. To the extent any portion of the Contractor's proposal or responses to Owner's solicitations are attached or referenced in this Agreement, such attachment or reference is intended only to identify the specific, limited Agreement or any other Contract Document, but rather all such terms and conditions are null and void and are superseded and rendered of no effect by the terms of this Agreement. The Contract Documents shall not be construed to create a contractual relationship of any kind (1) between the Architect and Contractor, (2) between the Owner and a Subcontractor or Sub-subcontractor or (3) between any persons or entities other than the Owner and Contractor.

3.     As used herein the term "Work" shall mean, and the Contractor shall be required to perform or provide, all labor, supervision, construction, materials, equipment, special facilities and "built-ins", construction documentation, construction management services, fixtures, tools, supplies, taxes, permits (including general building and occupancy permits) and all other property and services necessary to timely and fully perform all construction or other obligations or services as required pursuant to the Contract Documents, in a good and workmanlike manner and in accordance with the requirements of the Contract Documents, and all labor, services, materials or other items necessary to produce fully connected, complete, operational and functional systems and finishes as required by the Contract Documents. With respect to the services required of the Contractor herein, the Contractor's services shall be performed in (and measured according to) a manner consistent with those standards of professional skill, care and diligence applicable to a Contractor of comparable experience and knowledge in similar circumstances. With respect to duplications, inconsistencies, conflicts or ambiguities as to the nature and extent of the Work to be performed, all labor, materials, services or other items, necessary for the execution of the Work and any labor, materials, services within the limits established by the Contract Documents, shall be considered as part of the Contract Documents and shall be executed by the Contractor in the same manner and with the same character and quality of material as other portions of the Work, without increase in the Contract Sum or extension of the Completion Dates. In this regard, the Contractor acknowledges that Contractor has made representations to the Owner in Contractor's proposal and subsequent negotiations that Contractor has substantial experience in the construction of improvements substantially similar to the Project and that the Owner has reasonably relied on such representations in entering into this Agreement with the Contractor.

Contract No. WSJ-17016

4.      The Project is the total construction of which the Work performed under the Contract Documents may be the whole or a part and which may include construction by the Owner or by separate contractors.  References herein to the "Site" shall mean the location of the Project and any areas therein or adjacent thereto where the Work is to be performed and/or the Contractor is permitted to store or stage the Work and/or any materials, equipment or tools.  All terms and phrases defined in this Agreement shall the respective meanings as are specified herein.  Unless otherwise defined in the Contract Documents, words which have well-known technical or construction industry meanings are used in the Contract Documents in accordance with such recognized meanings.  The Article, Section and paragraph headings, and other titles and captions used in the Contract Documents, are inserted only for convenience of reference, and are not intended to and shall in no way define, limit, enlarge or prescribe the rights or obligations of the parties, or affect the meaning, construction, scope or extent of any provisions of the Contract Documents.

5.      Contractor also acknowledges that in connection with the administration and coordination of the Work and the activities of the various participants on the Project, various documents, correspondence, charts and related materials may be created and circulated discussing or identifying certain of the respective roles and responsibilities of the Contractor and the various Project participants.  Contractor agrees that no such document is a Contract Document, unless so defined herein and that the purpose of all such documents is only to coordinate and administer the communications required among the Project participants.  The Contractor's obligations with respect to the performance of the Work shall be as set forth in the Contract Documents, not in any other document or correspondence circulated among the Project participants, unless and only to the extent provided otherwise in a written Modification to this Agreement that is signed by the Owner and the Contractor.  The Contractor acknowledges that this Agreement and various documents and correspondence issued by the parties in connection with the Agreement, such as Change Orders, CCDs, related proposals and communications, may be translated from English into another language, and vice versa, and that the parties may execute this Agreement and any

agrees, however, that notwithstanding the issuance or translation of any such document in any other language, in the event of any conflict, ambiguity or inconsistency between the English version of the Contract and/or such other documents and the version of the Contract or such documents in another language, then the English version will control, and all disputes between the parties shall be decided by reference to the English version of the Contract and such other documents only.

6.      The Contractor is independently responsible for obtaining, reviewing and coordinating the provisions of all of the Contract Documents, all of which such documents shall have been delivered to the Contractor or physically attached to the Contract.  The failure to review any such document shall not relieve or excuse the Contractor from compliance with the terms of such document or the terms of any other Contract Document.  By execution of the Agreement, Contractor represents that Contractor has read and understands all of the Contract Documents existing as of the date hereof and that Contractor can and will comply with all of the provisions therein.  Execution of the Agreement by the Contractor is a representation that the Contractor has visited the Site, become familiar with local conditions under which the Work is to be performed and correlated personal observations with requirements of the Contract Documents.  Organization of the Specifications into divisions, sections and articles, and the arrangement of Drawings shall not control the Contractor in dividing the Work among Subcontractors or in establishing the extent of Work to be performed by any trade.  In addition, the Contractor acknowledges that the Specifications may be provided in a format that is embedded in the Drawings.  In such event, the Contractor shall be responsible to review the Drawings for the Work and notify the Owner and the Architect if the Contractor believes that any aspect of the Work does not have sufficiently detailed Specifications necessary for the proper and complete execution of the Work and shall obtain the direction of the Owner or Architect before proceeding with any affected Work.

7.      Drawings are intended to show general arrangement, design and extent of the Work and are partly diagrammatic.  As such, they are not intended to be scaled for measurements or to serve as Shop Drawings, the responsibility for preparation of which shall be entirely the Contractor's.  Large scale Drawings shall take precedence over small scale Drawings and figures, dimensions and noted materials shall take precedence over graphic representations.  Architectural Drawings shall take precedence in regard to dimensions when in conflict with mechanical/electrical or structural Drawings

affected by existing conditions, the existing conditions shall be verified and shall take precedence over the Drawings with regard to dimensions.  The Contractor shall carefully study and compare the Contract Documents with each other and with the information furnished by the Owner and shall take field conditions and shall carefully compare such field measurements and conditions and other information known to the Contractor with the Contract Documents before commencing activities.

8.      All Drawings, Specifications and other documents prepared by the Owner, Architect, or any interior designer or other design or engineering consultant involved with the Project or by any of the Owner's Consultants, or through which the Work to be executed by the Contractor is described, are the property of the Owner, and shall not be used by any person other than the Owner on projects other than the Project unless expressly authorized in writing by the Owner.  The Contractor may retain one (1) record set of the Contract Documents.  All copies of such Drawings, Specifications and other documents, except the Contractor's record set, shall be returned or suitably accounted for to the Owner on request, or upon completion of the Work.  All Drawings, Specifications and other documents relating to the Project, and any copies thereof furnished to the Contractor, are for use solely with respect to this Project.  They are not to be used by the Contractor or any Subcontractor, on other projects or for additions to this Project outside the scope of the Work without the specific written consent of the Owner.  The Contractor and Subcontractors are granted a limited license to use and reproduce applicable portions of the Drawings, Specifications and other documents prepared for the Project but only to the extent appropriate to and necessary for use in the execution of their Work under the Contract Documents.  Submittal or distribution to meet official regulatory requirements or for other purposes in connection with this Project are permitted and shall not be construed to be a publication or derogation of the Owner's rights with respect to such Drawings, Specifications and other documents.  To the extent any drawings issued by the Architect concerning clarifications, proposed changes (in the form of "bulletins") or changes are in the form of a reproducible print, the Contractor shall do all printing or duplication and distribution of such reproducible prints as necessary for the proper performance of the Work.

Contract No. WSJ-17016

9.    The Owner shall also own and have the right to use all drawings, designs, specifications, notes and other design works developed directly by the Contractor or any Subcontractors in the performance of the Work and the ideas and designs contained therein (including Shop Drawings, wiring diagrams, process control and instrumentation drawings and equipment drawings) in connection with the Owner's occupancy, use, maintenance and repair of the Project and for additions, alterations or future construction to the Project. Notwithstanding the foregoing, however, the Owner agrees that the Contractor and any Subcontractors or suppliers, as applicable, shall continue to own the underlying technical design concepts set forth in such drawings, designs, specifications, notes and other documents, and shall have the right to use such concepts in connection with the design and construction of other projects without the Owner's consent. The Contractor agrees to furnish the original or copies of all such documents at Owner's request and without additional compensation. Owner agrees that the Contractor shall have no responsibility for any claims, losses or damages arising out of the Owner's use of such drawings, designs, specifications, notes and other design documents developed directly by the Contractor or any Subcontractors pursuant to this Agreement in connection with other projects or future alterations or additions to the construction of this Project, unless the Contractor or applicable Subcontractor is retained to perform the necessary work (including design work) relating to such use.

10.   As used herein the term "Proprietary Information" shall mean all information (including the Contract Documents and any documents created pursuant to this Agreement) which the Contractor acquires (whether directly from the Owner or through the performance of the Work on the Project) concerning the present and future plans of the Owner, the operations of the Owner's business, or the use of the Project or the Project's design, construction, features, appearance, marketing, layout or décor (including the Contract Documents), and any information concerning the Project Site or the Owner's business, activities or property at the Project Site. "Proprietary Information" will not include any information that (a) is or becomes generally available to the public other than as a result of a disclosure by Contractor, its affiliates, or its or their a non-confidential basis prior to its disclosure by Owner, its affiliates, or its or their representatives, or (c) is or becomes available to Contractor, its affiliates, or its or their representatives on a non-confidential basis from a source other than the Owner, its affiliates, or its or their representatives who is not subject to a confidentiality agreement with, or other obligation of secrecy to, Owner or Owner's affiliates prohibiting such disclosure. Contractor acknowledges that all information relating to the Owner, the Work or the Project received from Owner's insurer shall be deemed "Proprietary Information". The Contractor represents to the Owner that Contractor has and employs policies and procedures, including but not limited to notices to Subcontractors and their respective employees, to protect Proprietary Information and to prevent the unauthorized publication and disclosure of Proprietary Information. The Contractor agrees that the Owner's Proprietary Information shall be subject to such policies and procedures. Specifically, and in addition, the Contractor agrees that Contractor will not disclose any Proprietary Information to any person, either internally or externally, (except as directly necessary for the performance of the Work) without the prior and written consent of Owner, and will not use, copy or distribute any Proprietary Information (or any document containing Proprietary Information) except to the extent directly necessary for the performance of the Work and/or as necessary to comply with the Contractor's obligations under applicable law (including but not limited to reporting requirements to OSHA and other governmental agencies with jurisdiction over the Work or the Contractor). The Contractor agrees, upon completion of the Work, to return to the Owner or destroy all documents containing Proprietary Information (except for the Contractor's record set of the Contract Documents). Further, Contractor acknowledges and agrees that all public relations matters arising out of or in connection with the Project shall be the responsibility of and be handled by the Owner. The Contractor shall not make any announcement or publication, either internal or external, with respect to or in connection with the Project, (including but not limited to any public announcement, website mention, advertising, publicity or comment about the Project or Contractor's participation in the Project) without the Owner's prior and written approval, except as directly necessary for the performance of the Work or as otherwise permitted above. Contractor shall not permit any of its employees or any of its Subcontractors or their employees to publicize, email, distribute, or otherwise post photographs of the Work or the Site, or any other Proprietary Information, on the internet, on social media sites (including but not limited to Facebook, Twitter, Pinterest, etc.), or in any other public or private forum.

11.   Contractor acknowledges that certain of the Drawings, Specifications and other Contract Documents may be provided to Contractor in electronic format, including CAD or Revit versions of the Drawings for use in connection with the creation and maintenance of as-built documents and/or for coordination purposes with respect to Design/Build Work and the submission of Shop Drawings and other Submittals (all of which documents are collectively referred to herein as "Electronic Documents"). In this regard, Contractor acknowledges that the Electronic Documents are in a form that is susceptible to manipulation, degradation and inconsistency due to, among other things, operator error, computer viruses, machine malfunctions, software imperfections and similar causes. Contractor acknowledges and agrees that the Electronic Documents are not intended to, and shall not, be used to construct the Project but instead are provided only for the reference and convenience of the Contractor in connection with the Contractor's performance of its responsibilities and obligations relating to the Project (including the preparation of as-built drawings, Shop Drawings and other Submittals). For purposes of constructing the Project, only the hard, paper blueprint or vellum copies of the Drawings, Specifications and other Contract Documents (collectively the "Paper Documents") shall be used. The Electronic Documents do not replace or supplement the Paper Documents, and the Paper Documents shall not be deemed to have been modified by any Electronic Documents furnished to Contractor. Contractor and its Subcontractors shall be solely and completely responsible to compare the Electronic Documents to the Paper Documents in order to identify and resolve any discrepancies, inconsistencies, ambiguities or conflicts between the Electronic Documents and the Paper Documents and shall be independently and solely responsible to obtain any required clarification, resolution or direction from the Owner and Architect and then to integrate, coordinate and account for the accurate information as required in connection with the Work.

12.   Contractor shall carefully review and compare the Contract Documents and assess existing conditions, as required by the Contract Documents, and shall notify and obtain the direction of the Owner and/or Architect with respect to any material inadequate information, conflicts, inconsistencies, errors, omissions, duplications, variances with codes or existing conditions, failure to comply with legal requirements and/or any similar material issues or problems discovered by Contractor that require further detail, information, decision or direction from the Owner, Architect or other persons or entities involved with the Project in order for the Contractor to perform the Work fully, properly and in accordance with the

**Contract No. WSJ-17016**

requirements of the Contract Documents and applicable codes and laws. The Contractor shall provide such notice as promptly as practicable and in such time as to avoid any delay to the critical path and prior to performing any Work affected by the discovered condition. If the Contractor performs any construction activity when Contractor knows such activity requires such further detail, information, decision or direction, without giving prior notice to and obtaining the instructions of the Owner with respect to such activity, the Contractor shall, subject to the limitations set forth in Section 37 of Article 3, be responsible for such performance and shall be liable for any attributable costs, and shall not be entitled to any increase in the Contract Sum or extension of the Completion Dates on account thereof.

## ARTICLE 2
## OWNER

1. The Owner is the person or entity identified as such in this Agreement and is referred to throughout the Contract Documents as if singular in number. The Contractor shall provide the Owner, Owner's Consultants, Owner's lenders and invitees, and Architect access to the Work in preparation and progress wherever located. Information or services under the Owner's control which are reasonably necessary for the Project and requested in writing by the Contractor shall be furnished by the Owner with reasonable promptness to avoid delay in orderly progress of the Work. Unless otherwise provided in the Contract Documents, the Contractor will be furnished, free of charge, two (2) copies of the Drawings and Specifications. All other copies required by Contractor shall be reproduced at Contractor's sole cost and expense.

2. Contractor acknowledges and agrees that the Owner, Owner's Consultants, and Architect are under no obligation to inspect the Work or to discover defects or deficiencies in the Work. The discovery of or failure to discover any defects, deficiencies or other problems in the Work by the Owner, Owner's Consultants, or Architect, shall not in any way constitute a waiver or acceptance of any such defect, deficiency or other problem or in any way affect or reduce the Contractor's responsibilities to perform the Work in conformance with the terms of the Contract Documents and free of defects, deficiencies or other problems in materials or workmanship, unless and to the extent any such waiver or acceptance is specifically given by Owner. Contractor shall be solely responsible for all construction means, methods, techniques, sequences or procedures and for all safety requirements, programs, measures and precautions in connection with the Work. In this regard, Contractor acknowledges and agrees that any review, discussion, observation, inspection, approval or comment by Architect, Owner's Consultants, or Owner with respect to such matters and any review, approval or comment by Architect, Owner's Consultants or Owner with respect to any shop drawing or other design detail, specification or engineering calculation shall relate to and reflect only the Architect's, Owner's Consultants' and/or Owner's general information as to the nature and status of the Work being performed and shall not, unless otherwise specified in writing, constitute a technical approval or acceptance of (or any assumption of liability or responsibility with respect to) any such drawing, design specification or calculation or any means, methods, techniques, sequences or procedures or safety requirements, programs, measures and precautions, and shall not relieve, affect or diminish in any way Contractor's obligations and responsibilities for such matters as set forth in the Contract Documents.

3. If the Contractor fails to correct Work which is not in accordance with the requirements of the Contract Documents within fifteen (15) days following notice by Owner to Contractor of such non-compliance, as required by Article 12 of this Agreement, or fails to carry out Work in accordance with the Contract Documents, the Owner, by written order signed personally or by an agent specifically so empowered by the Owner in writing, may order the Contractor to stop the Work, or any portion thereof, until the cause for such order has been eliminated; however, the right of the Owner to stop the Work shall not give rise to a duty on the part of the Owner to exercise this right for the benefit of the Contractor or any other person or entity. This right shall be in addition to and not in restriction or derogation of Owner's rights under Article 12 hereof, nor shall the exercise of this right by Owner relieve Contractor of any responsibilities and obligations under or pursuant to the Contract Documents. If the Contractor, in Contractor's reasonable judgment, believes that a suspension is warranted by reason of unforeseen circumstances which may adversely affect the quality of the Work if the Work were continued, the Contractor shall promptly notify the Owner and Architect of such belief and describe with particularity the reasons therefor.

4. If the Contractor defaults or neglects to carry out the Work in accordance with the Contract Documents and fails within a fifteen (15) day period after receipt of written notice from the Owner to commence and continue correction of such default or neglect with diligence and promptness, the Owner may immediately and without prejudice to other remedies the Owner may have, correct such deficiencies. In such case an appropriate Change Order shall be issued deducting from payments then or thereafter due the Contractor the cost of correcting such deficiencies, including compensation for the Architect's additional services and any other expenses made necessary by such default, neglect or failure. If payments then or thereafter due the Contractor are not sufficient to cover such amounts, the Contractor shall pay the difference to the Owner. The rights stated in this paragraph shall be in addition to and not in limitation of any of the rights of Owner granted in the Contract Documents or at law or in equity.

5. The Owner hereby designates Kyle Myers, as the Owner's representative authorized to act on the Owner's behalf with respect to this Agreement (hereinafter the "Owner's Representative"). In the event Contractor receives any instructions or approvals, either in writing or orally, from any property or facilities managers or other personnel of the property where the construction is being performed or from any persons other than the Owner's Representative designated pursuant to this paragraph or any Project Manager designated pursuant to this Agreement, (which Project Manager's authority shall be subject to the limitations set forth herein), then Contractor shall notify the Owner's Representative of such instructions or approvals and shall not act upon such instructions or approvals until provided with directions from the Owner's Representative. The Contractor shall not accept requests for work or services or other directions in connection with the performance of the Work pursuant to this Agreement unless such request or direction is issued by the Owner's Representative (or, subject to the limitations set forth herein, from any Project Manager designated pursuant to this Agreement). A new representative may be designated by the Owner pursuant to this paragraph by providing the Contractor with three (3) business days' prior, written notice.

Contract No. WSJ-17016

6.    Contractor acknowledges that, in addition to the Architect, the Owner may retain a project manager on the Project (the "Project Manager") and that the Owner may retain other persons or entities (including but not limited to third-party auditors, engineering consultants and others) to act as consultants to the Owner and to assist the Owner, as and when authorized, in the evaluation and observation of certain aspects of the design and construction of the Project (the Project Manager and any other consultants retained by Owner with respect to the Project are referred to herein as the "Owner's Consultants"). If the Owner has retained a Project Manager or other Owner's Consultants, such entities or persons are identified in Exhibit B. (The Owner reserves the right to designate any other or different person or entity to act as the Project Manager or an Owner's Consultant, in addition to or in replacement of any entity or person so designated in Exhibit B, in a later, written directive issued by the Owner's Representative). Contractor agrees to maintain appropriate communication and to coordinate its activities with the Project Manager and Owner's Consultants, as necessary to facilitate the full, timely and proper performance of the Contractor's obligations under the Contract Documents and the completion of all Work within the applicable Completion Dates established by this Agreement. The Project Manager shall have authority to observe, evaluate, administer, monitor and direct the Work, subject to the limitations set forth in this Agreement, including those set forth in this paragraph below, and Contractor shall provide the Project Manager with all information requested by the Project Manager in this regard and shall abide by all directions of the Project Manager, again subject to the limitations set forth in this Agreement, including those set forth in this paragraph below. Communications on the Project shall be directed to and include both the Owner's Representative and the Project Manager. In all events, copies of all written communications with the Project Manager shall be copied by Contractor directly to the Owner, through the Owner's Representative identified in this Agreement, and all significant issues with respect to the Project and/or this Agreement shall be communicated by Contractor directly to the Owner through the Owner's Representative. Contractor acknowledges that the Project Manager and the Owner's Consultants are solely advisors to the Owner and do not have authority to act generally as the Owner's agents, or to act otherwise on behalf of the Owner in connection with the Project, unless expressly as stated in this Agreement or the Contract Documents or later on indicated to the Contractor by the Owner in writing. Contractor specifically understands and agrees that the Project Manager and Owner's Consultants do not have authority to authorize any change in the scope of the Work, increase in the Contract Sum, revision to the Completion Dates or schedule or any additional compensation or payment to the Contractor, without the prior and written approval of the Owner through the Owner's Representative. Notwithstanding the preceding sentence, the Project Manager shall represent the Owner, and communications given to the Project Manager shall be as binding as if given to the Owner.

7.    The Owner, Owner's Representative and Owner's Consultants shall at all times have reasonable access to the Work wherever the Work is in preparation and progress. The Contractor shall provide facilities for such access. Contractor hereby acknowledges that the Owner's Representative (either directly or through specific authority given by the Owner's Representative to the Architect) shall have authority to, in accordance with the terms of this Agreement (i) reject Work which does not conform to the Contract Documents; (ii) stop the Work in order to require the proper execution of the Work or to order the correction of Work which the Owner's Representative reasonably determines is defective, substandard or not in conformance with the applicable Contract Documents; and (iii) require special inspection or testing of the Work in accordance with the provisions of the Contract Documents whether or not such Work is then fabricated, installed or complete.

**ARTICLE 3**
**CONTRACTOR**

1.    The Contractor is the person or entity identified as such in this Agreement and is referred to throughout the Contract Documents as if singular in number. The term "Contractor" means the Contractor or the Contractor's authorized representatives. The Contractor will be responsible for insuring that the Work of the Subcontractors is being performed in accordance with the Contract Documents, and will guard the Owner against defects and deficiencies in the Work of the Subcontractors. The Contractor shall supervise and direct the Work, using the Contractor's best skill and attention. The Contractor shall be solely responsible for and have control over construction means, methods, techniques, sequences and procedures and for coordinating all portions of the Work under this Agreement. The Contractor shall, subject to the employees, Subcontractors and their agents and employees, and other persons performing portions of the Work under a contract with the Contractor or claiming by, through or under the Contractor and for any damages, losses, costs and expenses resulting from such acts or omissions, unless any such damages, losses, costs or expenses are caused by the acts or omissions of the Owner or Architect or anyone directly or indirectly employed by either of them. Unless otherwise provided in the Contract Documents, the Contractor shall provide and pay for all labor, materials (except any Owner Supplied Items provided directly by Owner pursuant to this Contract), equipment, tools, construction equipment and machinery, transportation, and other facilities and services necessary for proper execution and completion of the Work, whether temporary or permanent and whether or not incorporated or to be incorporated in the Work.

2.    The Contractor acknowledges that the Project involves the design and construction of facilities that are "public accommodations" under the local disabilities laws and agrees to return areas of the Work subject to such laws to their original pre-loss state. Notwithstanding anything herein to the contrary, this Section 3 of Article 3 contains the only requirement with respect to disabilities laws.

3.    Unless expressly set forth in writing, the Contractor shall not be relieved of obligations to perform the Work in accordance with the Contract Documents either by activities or duties of the Architect or by tests, inspections or approvals required or performed by persons other than the Contractor. The Contractor shall be responsible for inspection of portions of Work already performed under this Agreement to determine that such portions are in proper condition to receive subsequent Work. If any of the Work is required to be inspected or approved by any public authority, the Contractor shall cause such inspection to be performed or such approval to be obtained. No inspections performed or failed to be performed by the Owner hereunder shall be a waiver of any of the Contractor's obligations hereunder or shall be construed as an approval or acceptance of the Work or any part thereof, unless expressly set forth in writing.

Contract No. WSJ-17016

4.      In connection with the Work, the Contractor shall take reasonable steps as necessary in Contractor's reasonable judgment during emergencies, without requiring the prior approval of Owner, to protect the Contractor's materials and equipment used for the Work and personnel employed by the Contractor as part of the Work.  As soon as practicable, Owner is to be notified by Contractor of the emergency and the actions taken by the Contractor in connection herewith.

5.      The Contractor shall secure and deliver to Owner all required guarantees, affidavits, releases of liens, waivers, certificates, consent of any surety to Final Payment and other documents required to be delivered in connection with the Work under the Contract Documents.  Contractor shall provide installation, maintenance and operation manuals on all equipment.  Contractor shall familiarize the Owner's operations staff with the operation of systems installed.  Subsequent to Substantial Completion of the Work and during the Owner's initial occupancy and use of thereof, the Contractor shall schedule and conduct with the Owner and Architect a complete review, commissioning, demonstration, start-up and operational shakedown of all equipment and mechanical and electrical systems installed by the Contractor or any Subcontractors in connection with the Work, and shall also review the operation and maintenance of such systems with the Owner's maintenance contractors.  Subsequent to this review, the Contractor, with reasonable promptness and at no cost to the Owner, shall make all adjustments or corrections required by the Owner or Architect and shall balance all systems in order to make all equipment and systems perform as required by the Contract Documents.  If necessary or requested by the Architect or Owner, the Contractor shall require the Subcontractor responsible for any such equipment or system to participate in the review and/or to perform the adjustments, corrections or balancing required by this paragraph.

6.      The Contractor shall enforce strict discipline and good order among the Contractor's employees and other persons carrying out the Work.  The Contractor shall not permit employment of persons not skilled in tasks assigned to them.  The Contractor shall confine operations at the Site to the areas permitted by the Owner and shall not encumber the other portions of the Site with any materials or equipment.  The Contractor shall comply with any directions or restrictions issued by the Owner regarding protecting and securing materials or equipment stored on the Site and shall be responsible for such protection and security.  The duty of the Contractor to maintain discipline and good order and compliance with the Owner's policies, rules and regulations pursuant to the Contract Documents shall apply to the Contractor's employees and to all Subcontractors and their respective employees.  The Contractor shall require all persons performing Work to comply with any and all policies and rules established by the Owner and provided to the Contractor relating to access or behavior at the Site and any policies or rules regulating parking, access to the Site, ingress, egress, noise, smoking, hygiene, food services, restricted areas, elevator use, and guest privacy and confidentiality, including any House Rules attached to this Agreement as Exhibit F.  In this regard, if the Project involves renovation of an existing facility being used by the Owner, the Contractor acknowledges that the Owner's facilities will remain in operation while the Work is performed, and agrees to comply with all reasonable directions and instructions of the Owner regarding the use of the Site in order to avoid unnecessary or excessive interference with the Owner's operations, and will take all reasonable actions needed to provide clean, unencumbered, well defined and safe access to the Owner's facilities for vehicles, guests, visitors and employees.

7.      The Contractor (i) shall assure that Contractor's employees and Subcontractors do not interfere with Owner or Owner's other contractors and (ii) shall use Contractor's best efforts to avoid any work stoppage, picketing, labor disruption or dispute involving the employees, contractors, subcontractors, laborers, or materialmen of Owner or any tenant or occupant of the Project and any unreasonable interference with the business of Owner or any tenant or occupant of the Project.  In the event of a labor dispute, the Contractor shall not be entitled to any increase in the Contract Sum.  In addition, Excused Delays shall not include delays or interruptions to the Work caused by labor disputes arising from the decision of the Contractor or any Subcontractors to use non-union labor or to schedule concurrent work by non-union and union labor crews or arising from jurisdictional labor disputes.

8.      Contractor shall be responsible to assure compliance with all United States immigration laws and requirements, including but not limited to regulations of the United States Immigration and Naturalization Service ("INS") and the United States Department of Homeland Security, as applicable, and all other applicable International, Federal, Territorial, State and local laws with respect to all employees of Contractor and its Subcontractors who will be performing Work in connection with the Project.  In this regard, Contractor shall comply with all applicable rules and related regulations and shall obtain and maintain all I-9 forms, I-797 forms and related backup documentation as required by applicable law.  Additionally, Contractor shall maintain all records required by the INS, including records of any posting requirements under H-1 visa regulations.  Contractor shall make such documentation available to Owner for review promptly upon request.

9.      Contractor certifies that: (i) neither it nor its officers, directors or controlling owners is acting, directly or indirectly, for or on behalf of any person, group, entity, or nation named by any Executive Order, the United States Department of Justice, or the United States Treasury Department as a terrorist, "Specially Designated National or Blocked Person," or other banned or blocked person, entity, nation, or transaction pursuant to any law, order, rule, or regulation that is enforced or administered by the Office of Foreign Assets Control ("SDN"), (ii) neither it nor its officers, directors or controlling owners is engaged in this transaction, directly or indirectly on behalf of, or instigating or facilitating this transaction, directly or indirectly on behalf of, any such person, group, entity or nation, and (iii) neither it nor its officers, directors or controlling owners is in violation of Presidential Executive Order 13224, the USA Patriot Act, the Bank Secrecy Act, the Money Laundering Control Act or any regulations promulgated pursuant thereto.  In the event that Contractor, during the term of this Agreement, is designated an SDN, the Owner, in addition to any other remedies that may be available under this Agreement or applicable law, may terminate this Agreement for cause pursuant to Article 16 herein.

10.     The Contractor warrants to the Owner and Architect that materials and equipment furnished under this Agreement will be of good quality and new unless otherwise required or permitted by the Contract Documents, that the Work will be free from defects not inherent in the quality required or permitted, and that the Work will conform in all material respects with the requirements of the Contract Documents (including any provisions in the Specifications or other Contract Documents requiring that the Work be guaranteed against failure for a specific period or establishing specific performance parameters or durations).  Work not conforming to these requirements, including substitutions not properly approved and authorized, may be considered defective.  The Contractor's warranty excludes remedy for damage or defect caused by abuse,

Contract No. WSJ-17016

modifications not executed by the Contractor, improper or insufficient maintenance or improper operation. If required by the Owner or Architect, the Contractor shall furnish satisfactory evidence as to the kind and quality of materials and equipment. This warranty is not limited by the provisions of Article 12.

11.     All Owner Supplied Items and all other manufactured articles, materials, and equipment shall be stored, applied, inspected, tested, connected, erected, used, cleaned and conditioned by the Contractor as directed by the applicable manufacturer and/or vendor unless otherwise specified. Contractor shall promptly notify Owner in writing if Contractor believes that any defect or deficiency in the Work is attributable to a defect or deficiency in any Owner Supplied Item for which Contractor is not responsible pursuant to the terms of this Agreement. Such written notice shall specify the nature of the defect or deficiency and the Contractor's recommendation as to how it should be repaired. If so requested by Owner, Contractor shall cease performing any corrective work in connection with the defect or deficiency in the Owner Supplied Item and shall provide appropriate access for, and cooperate with, the vendor of the Owner Supplied Item so that the vendor can repair, replace or correct the Owner Supplied Item, as necessary. However, notwithstanding any such notice, the Contractor agrees, that if so requested by Owner, Contractor shall correct or repair any defect or deficiency in any Owner Supplied Item promptly upon notice of such direction or request and irrespective of any dispute as to the Contractor's responsibility for such corrective work, subject to the Contractor's right to make claim for additional compensation and/or an extension of the Completion Date(s) resulting therefrom pursuant to the terms of this Agreement.

12.     Contractor will be responsible for paying all International, Federal, State, Provincial or local, income, labor, and similar taxes applicable to the Work. Owner will be responsible for paying any value-added tax in connection with the Project. Payments made by Owner to Contractor will be subject to applicable income tax withholdings unless Contractor submits to Owner its US Tax Residency Certificate (IRS 6166) prior to any payment. Owner is responsible for paying its portion of any applicable taxes generated by the payment(s) of this Agreement, directly to the corresponding government agencies.

13.     Unless otherwise provided in the Contract Documents, or agreed by the Owner in writing, the Contractor shall secure and pay for the building permit and other permits and governmental fees, licenses and inspections necessary for proper execution and completion of the Work. All Work performed hereunder by Contractor shall comply in all material respects with the current and applicable versions (as of the date when the Work is performed) of all applicable laws, ordinances and regulations of duly constituted authorities in force in the locality in which the Work is performed (including, but not limited to, all safety and health regulations applicable to the Work including the Federal Occupational Safety and Health Act, as amended, if applicable, and all applicable environmental, energy conservation and/or green building regulations governing the Work and related means, methods and procedures such as dust control, noise mitigation, waste disposal, access restrictions, etc.) and if any licenses, permits, or bonds are required in connection therewith, the same shall be furnished by Contractor at Contractor's sole cost and expense. If the Project is registered as a National Historic site on the U.S. National Historic Register or has otherwise been declared a historic property under applicable local, State, Provincial or Federal law, the Contractor shall perform the Work in such fashion as complies with the applicable requirements and regulations relating to the construction and renovation of such historic structures. If the Work involves demolition (interior or exterior) and/or any possible removal, remediation or repair of existing conditions and structures that may contain asbestos, water damage or other hazardous materials, then the Contractor shall be responsible to assure that all approvals, permits, licenses and surveys (including pre-demolition surveys or assessments of the existing conditions and the potential presence of asbestos, water damage and other hazardous materials) have been requested, issued, reviewed and obtained prior to commencing the Work.

14.     The Contract Sum includes those specific allowances that are identified in Exhibit C hereto. Items covered by allowances shall be supplied for such amounts and by such persons or entities as the Owner may direct, but the Contractor shall not be required to employ persons or entities against which the Contractor makes reasonable objection. The Contract Sum shall be adjusted accordingly if the actual costs for allowance items are more or less than the allowances specified in the Contract Documents. Unless otherwise provided in Exhibit C, allowances shall cover the cost to the Contractor of materials and equipment delivered at the Site and all required taxes, less applicable trade discounts. The Contractor's costs for unloading and handling at the Site, labor, installation costs, overhead, profit and other expenses relating to stated allowance items shall be included in the Contract Sum and not in the allowances. Unless otherwise provided in the Contract Documents, materials and equipment under an allowance shall be selected with reasonable promptness by the Owner to avoid delay in the Work.

15.     The Contractor shall employ a competent superintendent, project manager and necessary assistants who shall be in attendance at the Project Site on each day during performance of the Work. The Contractor's project manager shall represent the Contractor, and communications given to the Contractor's project manager shall be as binding as if given to the Contractor. The list of all supervisory personnel, including the Contractor's project manager and superintendent that the Contractor intends to use for the Work and a chain of command organizational chart shall be submitted to the Owner for approval. Upon such submittal, the Owner shall have the right to review the qualifications of and conduct interviews with such persons and shall have the right to disapprove, on a commercially reasonable basis, of any person selected by the Contractor. The Contractor shall not assign or change supervisory personnel or utilize any organizational chain of command to the extent disapproved by the Owner (on a commercially reasonable basis). The Contractor's superintendent and project manager shall not be discontinued and the Contractor shall not replace the Contractor's superintendent or project manager without the prior written consent of the Owner, which such consent shall not be unreasonably withheld or delayed.

16.     No later than fourteen (14) days after the execution of this Agreement by the Contractor and the Owner, the Contractor shall prepare and submit for the Owner a baseline construction schedule (the "Baseline Construction Schedule") for all of the Work using the Critical Path Method. The Baseline Construction Schedule shall be related to the entire Work to the extent required by the Contract Documents, and shall provide for the expeditious and practical execution of the Work and for Substantial Completion of the Work and completion of any interim milestones no later than the Completion Dates identified in Exhibit D to this Agreement (except as such dates may be modified hereafter pursuant to a Change Order signed by the Owner or the applicable provisions of this Agreement). The Baseline Construction Schedule shall set forth

Contract No. WSJ-17016

the time for performance and the dates for commencement and completion of each significant aspect of the Work, shall set forth the anticipated purchase and delivery dates for all major materials and equipment to be employed in the performance of the Work, shall set forth the estimated man hours to complete each aspect of the Work identified in the Baseline Construction Schedule, shall set forth a weekly projected head count of manpower by trade, for each week beginning with commencement of the Work through to Substantial Completion, and shall identify (by noting the number of personnel assigned to each task, the interaction between tasks, etc.) the assignment and coordination of manpower with respect to each aspect of the Work identified in the Baseline Construction Schedule. The Baseline Construction Schedule shall be coordinated with the Owner and Architect so that all activities connected with the construction of the Project shall be performed in an orderly and timely fashion. The Baseline Construction Schedule shall include reasonable allowances for periods of time required for the Owner's and/or Architect's review and approval and for inspections and approvals by the various governmental authorities having jurisdiction over the Work, which periods shall be consistent with the provisions of Article 8 herein.

17.  The Contractor shall prepare a Materials Status Report not later than fifteen (15) calendar days after subcontracts are awarded for each separate aspect of the Work. The Materials Status Report shall include a complete list of suppliers, items to be purchased from the suppliers or fabricators, time required for fabrication, and the scheduled delivery dates for each item relevant to each aspect of the Work. Whenever the Contractor learns of an event or circumstance that may delay a scheduled delivery date shown on the Materials Status Report, Contractor shall: (i) promptly notify the Owner of such event or circumstance, including the effect of such event on the Construction Schedule; and (ii) if requested by Owner, consult with the Owner and/or the Architect to develop and implement procedures that mitigate the effect of such event on the Construction Schedule. From commencement of the Work through to Final Completion, Contractor shall also maintain an RFI Report, identifying (by number and in sequence) each Request for Information ("RFI") submitted by

of the RFI, the date when a response was given to the Contractor relating to the RFI and the nature of the response. In addition, from commencement of the Work through to Final Completion, Contractor shall maintain a Change Order Request Log identifying each Change Order Request ("COR") submitted by the Contractor (by number and in sequence), the date when the COR was submitted to the Architect and Owner, the general nature of the COR, the date when a response was given to the Contractor relating to the COR and the nature of the response.

18.  Subsequent to the commencement of the Work on the Project, the Contractor shall prepare and submit every thirty (30) days a schedule report in such form, detail and character as approved by the Owner and including an updated construction schedule, referenced to the Baseline Construction Schedule and showing all delays, impacts or changes thereto (which such updated schedule is referred to herein as the "Construction Schedule") and reflecting and accounting for all events and occurrences encountered in or associated with the performance of the Work which may delay Substantial Completion of the Work and/or preclude the Owner from using and occupying all, or any portion of the Work, for its intended purpose on or before the applicable Completion Dates (hereinafter referred to as a "Delaying Event"). The monthly Construction Schedule shall be accompanied by a narrative recap of the month's activities with appropriate reference to the Contractor's daily logs or other records for purposes of reflecting actual or projected manpower allocation. Accompanying this schedule report shall be an updated, current Construction Schedule, an updated Materials Status Report, an updated RFI Report, an updated Change Order Request Log, and a listing and status report with respect to all Change Orders, CCDs, and Modifications. The Contractor shall also deliver with this schedule report a certification by the Contractor that the Architect has inspected and reviewed the Record Drawings for the Work and found the maintenance of such documents to be in a current state and shall deliver a concise, written summary prepared by the Contractor's superintendent identifying and discussing all significant achievements, problems or other events affecting or relating to the Work during the preceding thirty (30) days. This schedule report shall contain a statement by the Contractor's superintendent as to the progress of the Project, and the status of conformance with such Construction Schedule and the Contractor's expectation of completion as compared to the Construction Schedule.

19.  The Contractor shall notify the Owner with reasonable promptness if and when any Delaying Event takes place. Further, should a Delaying Event take place, the Contractor shall meet with the Owner and Architect, as and when requested, to

Event and shall modify, revise and adjust the Construction Schedule accordingly, pursuant to the direction of the Owner. Specifically, the Contractor shall (as directed by the Owner and subject to the Contractor's right to make a claim pursuant to the applicable provisions herein) modify the Construction Schedule, in response to any Delaying Event, and prioritize the Work in such a fashion so as to allow the Owner to use and occupy as much of the Work as possible for its intended purpose on or before the applicable Completion Dates. At all times, the Contractor shall cause the Work to be performed in accordance with the most recent revisions and modifications to the Construction Schedule.

20.  Contractor acknowledges and agrees that the Owner's receipt, review, approval or comment with respect to any schedule prepared by Contractor and/or furnished to Owner pursuant to this Agreement (including the Baseline Construction Schedule and any subsequent Construction Schedules) does not constitute any representation, warranty or acceptance by Owner of the reasonableness of the schedule or its logic, nor of any specific sequencing, phasing or scheduling of the individual aspects of the Work, and does not constitute a representation by Owner that the Work can be performed within the time or in the manner set forth in any such schedule. By executing this Agreement, Contractor agrees that Contractor has independently assessed the Completion Dates established in Exhibit D to this Agreement and determined that they are adequate to allow the Contractor to complete the Work, fully and properly, within the times established and that the Contractor has available and will supply sufficient manpower, personnel and resources to complete the Work within the Completion Dates established in Exhibit D to this Agreement (except as later modified pursuant to the applicable provision of this Agreement). The Completion Dates established in Exhibit D to this Agreement are not based upon any representation by the Owner to the Contractor as to how the Work will be sequenced, when or for how long any area at the Site will be available for the performance of the Work or when, for how long, or in what sequence any manpower assignments or levels will be necessary to perform and complete the Work in accordance with the Completion Dates. All of these determinations and decisions shall be the responsibility of the Contractor. The Baseline Construction Schedule and any Construction Schedules prepared by and/or submitted by the Contractor are information tools only, for use by Owner in evaluating Contractor's performance in relation to the Completion Dates established in Exhibit D to this

**Contract No. WSJ-17016**

Agreement (as later modified pursuant to the applicable provisions of this Agreement). The inclusion of dates or assumptions in any such schedule for action by the Owner, availability of certain areas, or other circumstances or conditions is not a promise or representation by the Owner of such dates and/or assumptions and shall not be deemed accepted or agreed to by Owner merely by Owner's acceptance, review or use of such schedule to evaluate Contractor's performance and shall not entitle Contractor to any claim for costs or damages based on the failure of such dates or assumptions to be met or satisfied. Notwithstanding the foregoing, the Owner has no knowledge of any facts and circumstances (including the availability of certain areas) that would cause the Completion Dates established in Exhibit D to this Agreement not to be met.

21. The Contractor shall hold weekly progress meetings at the Site, or at such other time and frequency as the Owner requests and shall give the Architect and Owner advance written notice of the time of said meetings. Progress of the Work shall be reported in reasonable detail with reference to the then current Construction Schedule. Each interested Subcontractor shall have present a competent representative to report the condition of the Work being performed by such Subcontractor and to receive information. The Contractor shall maintain at the Site for the Owner one (1) record copy of the Drawings, Specifications, Addenda, Change Orders, CCOs, RFIs, CORs, Modifications and other records relating to the Work performed, in good order and marked currently to record changes and selections made during construction, and in addition shall maintain approved Shop Drawings, Product Data, Samples and similarly required submittals (the "Record Drawings"). These Record Drawings shall reflect (i) all deviations from the Contract Documents made during construction; (ii) details in the Work not previously shown on the Contract Documents; (iii) changes to existing conditions or existing conditions found to differ from those shown on the Contract Documents or related existing drawings; and (iv) the actual installed position of equipment, piping, control valves, drawings, openings and stub-outs. These Record Drawings shall be made available to the Owner and the Architect for inspection and review during the course of

the Contractor to produce a coordinated set of as-built drawings showing all construction Work as set in place during construction and revised to show the foregoing information and all changes made during construction from the original drawings. The Contractor shall be responsible for accurately and completely recording all of the information required by this paragraph on the as-built set of drawings. In addition, the Contractor shall compile and submit to the Owner, upon Substantial Completion of the Work, one (1) set of permit drawings and specifications. These permit drawings and specifications shall bear all stamps, signatures, notations, changes, approvals required by the appropriate governmental agencies and a copy of the building permit(s) shall be included.

22. Shop Drawings shall show the design, dimension, connections and other details necessary to insure that the Shop Drawings accurately interpret the Contract Documents and shall also show adjoining Work in such detail as required to provide proper connections with said adjoining Work. Where adjoining connected Work requires Shop Drawings, such Shop Drawings shall be submitted to Architect (with a copy to the Project Manager) for review so that connections can be checked. The Contractor shall submit Product Data to the Owner, Project Manager and/or Architect when necessary or requested by the Owner, Project Manager and/or Architect to explain fully apparatus or equipment required by the Work. The Product Data shall be treated as Shop Drawings. Manufacturers' catalogue numbers alone are not acceptable as sufficient information or compliance with this requirement. Samples shall be accompanied by a letter of transmittal to the Architect, with a copy to the Project Manager and the Owner. The Contractor shall number transmittals. Data and/or manufacturers' certificates shall be referenced and forwarded with the letter of transmittal. Samples without accompanying test data or certificates will be returned without action. In the event that a range of variations in textures, graining, color or other characteristics may be anticipated in finished materials, assemblies or elements of the Work, a sufficient number of Samples of such materials or product shall be submitted to indicate the full range of characteristics which will be present in the materials or products proposed for the Work. Any such materials or products delivered or erected prior to approval of full range Samples shall be subject to rejection. Samples shall be submitted from the same source which actually supply the applicable Work, and shall be of adequate size to show quality, type, color, range, finish, texture and other specified characteristics. Samples of materials or products which are normally furnished in containers or packages which bear descriptive labels or application or installation instructions shall be submitted with such labels and/or instructions.

23. Shop Drawings, Product Data, Samples and similar submittals are not Contract Documents. The purpose of their submittal is to demonstrate, for those portions of the Work for which submittals are required, the manner in which the Contractor proposes to conform to the information and design concepts expressed in the Contract Documents. Any review by the Owner, Project Manager, Architect, or Owner's Consultants of Shop Drawings, Product Data, Samples and similar submittals is for the limited purpose of checking for conformance with the information and design concepts expressed in the Contract Documents and is subject to the limitations set forth in herein. Review of such submittals is not conducted for the purpose of determining the accuracy and completeness of other details such as dimensions and quantities, or for substantiating instructions for installation or performance of equipment or systems, all of which remain the responsibility of the Contractor as required by the Contract Documents. The review of submittals shall not relieve the Contractor of the obligations under the Contract Documents and shall not constitute approval of safety precautions or of any construction means, methods, techniques, sequences or procedures. The approval of a specific item shall not indicate approval of an assembly of which the items is a component. The Contractor shall obtain, review, approve and submit to the Architect, with copies to the Owner and Project Manager, Shop Drawings, Product Data, Samples and similar submittals required by the Contract Documents within the times required by the Baseline Construction Schedule (or if no such time is established with reasonable promptness and in such sequence as to cause no delay in the Work or in the activities of the Owner or of separate contractors). The Contractor shall perform no portion of the Work requiring submittal and review of Shop Drawings, Product Data, Samples or similar submittals until the respective submittal has been approved by the Owner, provided that Owner shall timely respond to all such requests for approval. Such Work shall be in accordance with approved submittals.

24. By approving and submitting Shop Drawings, Product Data, Samples and similar submittals, the Contractor represents that the Contractor has determined and verified materials, field measurements, field construction criteria related thereto, and that Contractor has checked to insure that Work contiguous with and having bearing on the Work shown on the Shop Drawings is accurately and clearly shown, that Contractor has checked the Shop Drawings against the

**Contract No. WSJ-17016**

composite drawings, that the Work has been coordinated, that the equipment will fit into the assigned spaces and that Contractor has checked and coordinated the information contained within such submittals with the requirements of the Work and of the Contract Documents. The Contractor shall number transmittals consecutively and indicate, where the Shop Drawing is a resubmittal, the file number of the original submittal. Each Shop Drawing or sample and letter of transmittal shall contain the following information: (1) the name of the Project; (2) the name of the Contractor; (3) the names of the firm or organization and the person or persons preparing the Drawing; (4) the date of submittal; (5) the number of the Shop Drawing and the number and date of each revision, if any; (6) the applicable section of the Specifications; (7) the applicable number of the Drawing and detail; (8) the name of subcontractor and/or supplier, manufacturer, fabricator or processor; (9) the trade designation and the grade or quality of the material or product; and (10) the specific identification of each Sample.

25. The Contractor shall be responsible to the Owner for delays caused by the Contractor's failure to comply with the provisions of this Article above, unless such failure was primarily caused by the action or inaction of Owner or its affiliates or representatives. The Contractor shall not be relieved of responsibility for deviations from requirements of the Contract Documents by the Owner's approval of Shop Drawings, Product Data, Samples or similar submittals unless the Contractor has specifically informed the Owner in writing of such deviation at the time of submittal and the Owner has given written approval to the specific deviation. The Contractor shall not be relieved of responsibility for errors or omissions in Shop Drawings, Product Data, Samples or similar submittals by the Owner's approval thereof. The Contractor shall direct specific attention, in writing or on resubmitted Shop Drawings, Product Data, Samples or similar submittals, to revisions other than those requested by the Architect on previous submittals. When professional certification of performance criteria of materials, systems or equipment is required by the Contract Documents, the Owner and Architect will be entitled to rely upon the accuracy and completeness of such calculations and certifications.

26. Following the Owner's and/or Architect's review of each Shop Drawing, Product Data and Sample submission, the Owner and/or Architect will retain a copy and return the reviewed submission to the Contractor, with a stamp (if applicable) and signature affixed thereto, noting the Shop Drawing, Product Data or Sample submission as: (1) "APPROVED", (2) "APPROVED AS NOTED" (meaning Contractor must comply with all annotations and/or corrections indicated on the reproducible print and with the requirements of the Contract Documents); (3) "RESUBMIT" (meaning a corrected submittal of the drawing is required); or (4) "DISAPPROVED" (meaning that major deviations from the requirements of the Contract Documents exist in the submittal). No Work shall be constructed, fabricated or manufactured until the Contractor has revised the applicable submittal in compliance with any annotations and pursuant to all requirements of the Contract Documents and has resubmitted and obtained approval of the applicable submittal.

27. The Contractor shall confine operations at the Site to areas permitted by law, ordinances, permits and the Contract Documents and shall not unreasonably encumber the Site with materials or equipment. Up to the date of Final Completion, the Contractor shall be solely responsible for all material or equipment stored by Contractor or by any Subcontractors, including all tools, materials, and equipment which are employed at or stored at the Site by the Contractor. The Contractor, without any increase in the Contract Sum, shall take such actions as may be necessary to maintain such security. The Contractor shall properly safeguard and store any combustible materials brought to the Site by Contractor so as to protect against the possibility of fire or other damage. The Contractor shall be solely responsible for all damage, cost or expense caused by the use or storage of combustible materials brought to the Site by the Contractor, but only to the extent that such damages, costs or expenses are actually paid by applicable insurance. The Contractor shall provide temporary weather-tight enclosures for all exterior openings to the extent necessary to protect the Work from weather conditions and at the end of each day shall close all temporary enclosures. In the event the Contractor encounters any materials at the Site which are hazardous (including but not limited to asbestos, PCBs, etc.) or other materials or substances which the Contractor knows will require special handling, disposal or treatment, the Contractor shall immediately stop Work in the affected area and shall immediately report the condition to the Owner. All Work involving or affected by the condition shall not thereafter be resumed until such time as the material has been disposed of, abated, or otherwise removed, remediated or handled as required by applicable law and Owner directs Contractor (in writing) to proceed with the Work, and any such delay will extend the period in which Contractor is required

28. The Contractor shall be responsible for cutting, fitting or patching required to complete the Work or to make its parts fit together properly. The Contractor shall not damage or endanger a portion of the Work or fully or partially completed construction of the Owner or separate contractors by cutting, patching or otherwise altering such construction, or by excavation. The Contractor shall not cut or otherwise alter such construction by the Owner or a separate contractor except with written consent of the Owner and of such separate contractor, which such consent shall not be unreasonably withheld. The Contractor shall not unreasonably withhold from the Owner or a separate contractor the Contractor's consent to cutting or otherwise altering the Work. The Contractor, if required by the Contract Documents, shall make connections to materials or equipment furnished, set, and/or installed by other contractors; provided that Contractor will not be liable in any way with respect to work done by any other contractor. No Work connecting to such materials or equipment provided by other contractors shall be done without giving such contractors a reasonable length of time to complete their work or until permission to proceed has been obtained from the Owner. The Contractor shall use commercially reasonable efforts to secure the shop detail drawings from other contractors for such of their work as is to be built into Contractor's Work, or to which Contractor's Work must make connection, and shall also measure for (and notify Owner of) any discrepancy or unsuitability relative to Contractor's Work. Contractor shall provide all openings and chases in the Work, necessary for the installation of process equipment, and shall fill in around the same afterwards. If the Work is damaged or interfered with by the negligence of Owner's separate contractors, Contractor shall have the rights and remedies provided in Article 6 hereof.

29. The Contractor shall keep the premises and surrounding area free from unreasonable accumulation of waste materials or rubbish caused by operations under this Agreement. For the Work to be considered Substantially Complete, the Contractor shall remove from and about the Site all waste materials and rubbish (and shall remove the Contractor's and all Subcontractors' tools, construction equipment, machinery and all surplus materials except to the extent such items are needed to perform any punch list or other Work that Contractor is permitted to complete after Substantial Completion

Contract No. WSJ-17016

pursuant to the provisions of this Agreement). In addition to general broom cleaning, for the Work to be considered Substantially Complete, the Contractor shall perform, or insure performance of, the following final cleaning for all trades: **(a)** remove temporary protections; **(b)** remove marks, stains, fingerprints and other soil or dirt from painted, decorated and natural-finished woodwork and other Work; **(c)** remove spots, plaster, soil and paint from ceramic tile, marble and other finished materials, and wash or wipe clean; **(d)** clean tubs, toilets and other fixtures, cabinet work and equipment, removing stains, paint, dirt and dust, and leave same in undamaged, new condition; **(e)** clean all metal finishes in accordance with recommendations of the manufacturer and accepted industry standards; **(f)** clean resilient floors thoroughly with a well rinsed mop containing only enough moisture to clean off any surface dirt or dust and buff dry by machine to bring the surfaces to sheen; and **(g)** thoroughly clean all interior glass and mirror surfaces. If the Contractor fails to clean up as required by the Contract Documents within forty-eight (48) hours after written notice, the Owner may do so and the cost thereof shall be charged to the Contractor who shall pay such costs either as a deductive change order or immediately upon demand, at the election of Owner.

30. All waste, rubbish, surplus materials and other items generated in connection with the Work or for which the Contractor is responsible (including but not limited to any paints, glues, oils or hazardous substances) shall be disposed of in such manner and in accordance with such procedures, certifications and approvals as required by applicable law. To the extent the Work includes the liquidation and/or salvage of any materials or items at the Project Site and/or involves the handling, use, demolition and/or abatement of hazardous materials, the Contractor shall be responsible to handle, transport, remove and dispose of all such items in accordance with all applicable EPA, OSHA and other local, municipal, State, Federal or Provincial requirements (using properly licensed and certified personnel as necessary) and shall maintain (and provide to the Owner upon request) all documents, manifests and other information reflecting the use, handling and disposal of such materials in accordance with such laws and requirements.

31. Contractor acknowledges that the Work may require Contractor to make penetrations through, connect with, gain access over, stage operations in or store equipment and materials around or near the Owner's existing property and facilities, adjacent property and/or other work that has been or is being constructed by other contractors. Contractor shall be responsible to take all appropriate precautions and measures to properly safeguard and prevent damage to the Owner's existing property, any adjacent property or to the work of other contractors. Contractor, without any increase in the Contract Sum, extension of time or any other cost to Owner, shall promptly repair or replace any such property or other work that is damaged by the Contractor or its Subcontractors (including repairing all cutting, fitting, patching or penetrations) and shall return all such damaged property or other work to the same condition as existed prior to the damage occurring. In this regard, Contractor acknowledges and agrees that Owner makes no representation or warranty to Contractor regarding the condition of any of the Owner's existing property, any adjacent property or facilities or the work of any other contractor or the suitability or adequacy of such property or other work for use or reference by Contractor or as fit and proper for Contractor's Work or any purpose associated therewith. Contractor shall be solely responsible for any investigation, assessment, reinforcement, or other actions necessary to make such property or other work fit and proper for, or otherwise adequate or suitable to accommodate, accept or integrate with, Contractor's Work.

32. [RESERVED].

33. [RESERVED].

34. To the fullest extent permitted by law, the Contractor will protect, defend, indemnify and hold harmless the Owner, all Additional Insureds as defined in Article 11 herein, Owner's Consultants and agents and employees of any of them, from and against any and all claims, damages, losses or expenses, including, but not limited to, attorneys' fees, arising out of or resulting from the performance of the Work or Contractor's failure to comply with the terms or provisions of this Agreement, to the extent caused in whole or in part by any willful or negligent acts or omissions of the Contractor, or any Subcontractors, or anyone directly or indirectly employed by them or anyone for whose acts they may be liable, unless and to the extent such claim, damage, loss or expense is caused by the acts or omissions of a party indemnified hereunder. Such obligation shall not be construed to negate, abridge, or reduce other rights or obligations of indemnity which would otherwise exist as to a party or person described in this paragraph. In claims against any person or entity indemnified under this paragraph by an employee of the Contractor, a Subcontractor, anyone directly or indirectly employed by them or anyone for whose acts they may be liable, the indemnification obligation under this paragraph shall not be limited by a limitation on amount or type of damages, compensation or benefits payable by or for the Contractor or a Subcontractor under workers' or workmen's compensation acts, disability benefit acts or other employee benefit acts. The obligations of the Contractor under this paragraph shall not extend to, and shall exclude, the liability of the Architect, the Architect's consultants, and agents and employees of any of them arising out of (1) the preparation or approval of maps, drawings, opinions, reports, surveys, Change Orders, designs or specifications; or (2) the giving of or the failure to give directions or instructions by the Architect, the Architect's consultants, and agents and employees of any of them provided such giving or failure to give is the primary source of the injury or damage.

35. In addition to the foregoing, Contractor shall indemnify and hold harmless the Owner, Owner's Consultants and agents and employees of any of them, from and against any costs, damages, expenses, fines or penalties arising out of Contractor's failure to comply with the obligations set forth in Article 3, paragraphs 8, 9, 13 and 30 of this Agreement, unless and to the extent such costs, damages, expenses, fines or penalties are caused by the acts or omissions of the Owner or Architect or anyone directly or indirectly employed by either of them.

36. Contractor acknowledges that the Contract Documents may require that the Contractor provide certain elements of the Work, such as the fire protection, on a design/build basis (which work is referred to herein as the "Design/Build Work"). In such event, the Contractor shall be responsible, through the retention of certain design/build Subcontractors who shall be under contract with the Contractor, for the design and engineering of the Design/Build Work ("Design/Build Subcontractors"). The Contractor further acknowledges that the Design/Build Work will be identified in the Contract Documents only in outline form by reference to essential performance or system characteristics and requirements. The Contractor agrees that, with respect to any Design/Build Work, it shall (through the retention of appropriately qualified and

Contract No. WSJ-17016

licensed Subcontractors responsible for such Design/Build Work) provide all work or services (of either an engineering or construction nature) necessary to provide the Owner with full, complete and operational systems, in compliance with all applicable codes and industry standards, whether or not all such work is itemized in the Contract Documents in full and exact detail. In connection with the Design/Build Work, the Contractor shall be responsible to meet with the Architect and Owner and assist in the development and articulation of the final design requirements for all such Design/Build Work, and will be responsible to integrate and coordinate the Design/Build Work with the remainder of the design prepared by the Architect, so that the entire design is fully integrated and coordinated into a final set of construction documents articulating the work, labor and services necessary to construct both those portions of the Work that the Architect is responsible to develop and those portions of the Work that the Contractor is responsible to design as part of its Design/Build Work. The Contractor's agreement with each Subcontractor performing Design/Build Work shall provide that each Design/Build Subcontractor shall procure and maintain (and provide the Owner with evidence of) design errors and omissions/professional liability insurance with minimum limits per occurrence of $5,000,000. The Contractor agrees that any Design/Build Work that is completed or installed contrary to applicable codes, ordinances and laws in any material fashion, or contrary to the requirements and design concepts established in the Contract Documents, shall be corrected, modified, repaired or replaced promptly and at no cost to the Owner. Additionally, Contractor shall not indemnify or defend Owner, Owner's Consultants, or their agents and employees from their own willful misconduct or gross negligence.

37.   Notwithstanding anything to the contrary contained herein, in no event will Contractor be liable or responsible for any losses, damages, costs or expenses under this Agreement in excess of amounts covered and paid by insurance covering the Contractor as required under Section 1 of Article 11.

**ARTICLE 4**

ADMINISTRATION OF THE CONTRACT

1.   The Architect is the person or entity identified as such in this Agreement and is referred to throughout the Contract Documents as if singular in number. The term "Architect" means the Architect or the Architect's authorized representative. Duties, responsibilities and limitations of authority of the Architect as set forth in the Contract Documents shall not be restricted, modified or extended without written consent of the Owner. At Owner's discretion, the Owner may remove or replace the Architect. In either such event, the Owner may proceed without an Architect (and perform construction administration directly or through the Owner's Representative or any of the Owner's Consultants) or may substitute another Architect of the Owner's choosing, and references in the Contract Documents to the Architect shall be deemed to mean the Owner, Owner's Consultants or the replacement Architect, as applicable.

2.   The Architect will advise and consult with the Owner. The Architect will have authority to act on behalf of the Owner only to the extent provided in the Contract Documents, unless otherwise modified by written instrument in accordance with other provisions of this Agreement. The Architect will keep the Owner informed of progress of the Work, and will endeavour to guard the Owner against defects and deficiencies in the Work. The Architect will not have control over or charge of and will not be responsible for construction means, methods, techniques, sequences or procedures, or for safety precautions and programs in connection with the Work, since these are solely the Contractor's responsibility. The Architect will not be responsible for the Contractor's failure to carry out the Work in accordance with the Contract Documents. The Architect will not have control over or charge of and will not be responsible for acts or omissions of the Contractor, Subcontractors, or their agents or employees, or of any other persons performing portions of the Work. The failure of the Architect to discover any defects, deficiencies or other problems in the Work shall not in any way constitute a waiver or acceptance of such defects, deficiencies or problems and shall not in any way affect or reduce the Contractor's responsibilities pursuant to this Agreement to perform the Work in conformance with the requirements of the Contract Documents and free from defects or deficiencies in materials or workmanship.

3.   At all times, the Owner (at Owner's sole discretion) shall have the right to communicate directly with the Contractor, without involving the Architect, provided however that all communications involving design issues shall include the Architect (by direct participation or copy as determined by the Owner in Owner's sole discretion). In all events, all written communications between the Architect and Contractor shall be provided contemporaneously to the Owner (through the Owner's Representative). The Architect and the Owner will each have authority, as provided in this Agreement, to reject Work which does not conform to the Contract Documents. Whenever, in the reasonable opinion of either, it is considered necessary or advisable to ensure the proper implementation of the intent of the Contract Documents, either will have authority to require special inspection or testing of the Work in accordance with the terms of the Contract Documents, whether or not such Work be then fabricated, installed or completed.

4.   If so requested by the Owner, the Architect will prepare Change Orders. However no changes to the Work or adjustments to the Contract Sum nor any extension of the Completion Dates shall be valid unless in a written Change Order signed by the Owner. The Architect will conduct inspections to assist the Owner in determining the dates of Substantial and Final Completion, will receive and forward to the Owner for the Owner's review and records written warranties and related documents required by the Contract Documents and assembled by the Contractor, and will issue a Final Certificate for payment upon the Contractor's compliance with the applicable requirements of the Contract Documents.

5.   A "claim" is a demand or assertion by one of the parties seeking adjustment or interpretation of the Contract terms, payment of money, and extension of time or other relief with respect to the terms of the Contract Documents and also includes other disputes and matters in question between the Owner and Contractor arising out of or relating to the Contract. Claims must be made by written notice. The responsibility to substantiate claims shall rest with the party making the claim. Any claim by the Contractor (including but not limited to any claim for additional compensation or additional time) must be made within fifteen (15) days after occurrence of the event giving rise to such claim or within fifteen (15) days after the Contractor first recognizes the condition giving rise to the claim, whichever is later.
      Notwithstanding any other provision of this Agreement, the failure of the Contractor to provide the Owner with written notice of any claim (including but not limited to claims based on any COR submitted by Contractor, claims for Excused Delays, and any claims seeking any extension of the Completion Dates, any increase in the Contract Sum or

**Contract No. WSJ-17016**

other damages or costs of any kind) within the applicable time frame established by this paragraph (or any earlier time specifically required for such claim in the Contract Documents) shall mean that the Contractor has waived such claim and shall perform all work required by or in connection with any occurrence or condition giving rise to the claim without increase in the Contract Sum or extension of the Completion Dates. The Contractor's sole and complete remedy with respect to any successful claim regarding a Change Order (including but not limited to claims based on any COR, Excused Delay or any changes to the Work or delay, impact or acceleration) shall be limited to the actual increased costs of labor and material, if any, incurred by the Contractor as a result of the occurrence or condition giving rise to the claim (measured and calculated as set forth in Article 7 herein, as applicable), plus any increase in General Conditions permitted by Section 2.1 of Article 9, plus a Contractor's fee equal to fifteen percent (15%) of such increased costs of labor, materials and General Conditions. This recovery shall be deemed to include (and no additional damages or costs may be sought or recovered by Contractor for) all profit, overhead, general conditions, supervision, delay, acceleration or impact costs or other expenses or losses allegedly sustained or incurred by Contractor as a result of any such claim.

6.     Subject to the provisions of Article 16 herein, Contractor shall carry on the Work during all disputes or disagreements with Owner, including but not limited to any disputes or claims by Contractor that Owner has materially breached or defaulted under the Contract or any disputes based on the refusal by Owner to agree to a COR submitted by Contractor. Except as set forth in Article 16 herein, no Work shall be delayed or postponed pending resolution of any disputes or disagreements. The Contractor expressly agrees that Owner has no adequate remedy at law in the event that Contractor stops Work, and that Owner may obtain an injunction in a court of competent jurisdiction enforcing this provision requiring Contractor to continue to perform under this Agreement pending resolution of any dispute or disagreement.

7.     The Contractor represents that Contractor has visited the Site, has examined carefully all of the Contract Documents, has reviewed all reports, test data and other information relating to the conditions at the Site that have been made available to the Contractor by the Architect or Owner in connection with the solicitation or submission of the Contractor's bid and the negotiation of this Agreement, and has made a reasonably thorough inspection of the Site (during which inspection the Contractor has correlated Contractor's personal observations with the requirements of the Contract Documents and has reviewed all physical and observable conditions under which the Work will be performed). Based on the foregoing, the Contractor assumes responsibility for (and shall not be entitled to any extension of the Completion Dates or increase in the Contract Sum or to any other damages or additional compensation based on) any conditions at the Site which are reasonably disclosed to the Contractor based on the information made available to the Contractor by the Architect or Owner prior to the execution of this Agreement (including a reasonably thorough inspection of the Project Site). The Contractor agrees that in the event an obstruction, difficulty or condition is encountered at the Site which the Contractor contends was unforeseen or un-anticipatable, the Contractor shall notify the Architect and Owner, with reasonable promptness, of the discovery of such obstruction, difficulty or condition. The Contractor shall perform no Work affected by or involving any such obstruction, difficulty or condition until after the Owner has reviewed the situation and have provided the Contractor with instructions regarding such Work, which review and instructions shall be conducted and provided by Owner promptly. If the obstruction, difficulty or condition is one which was not reasonably disclosed to the Contractor prior to the execution of this Agreement, the obstruction or condition shall be treated as an Excused Delay and the Contractor shall be entitled to an extension of the Completion Dates pursuant to the provisions of Article 8 herein, and to an increase in the Contract Sum calculated pursuant to the provisions of this Article 4, paragraph 5 above. If, however, the obstruction difficulty or condition is one which was reasonably disclosed to the Contractor prior to the execution of this Agreement (based on the information made available to the Contractor by the Architect or Owner prior to the execution of this Agreement and/or by a reasonably thorough inspection of the Site), then the Contractor shall not be entitled to any extension in the Completion Dates or to any increase in the Contract Sum or any additional compensation of any kind as a result of the existence of such obstruction, difficulty or condition, and the Contractor expressly agrees to perform all work required by or as a result of such obstruction, difficulty or condition, regardless of cost or expense, at the Contractor's own risk, cost and expense.

8.     All claims, disputes or other matters in question between the parties to this Agreement, arising out of or relating to the Work, the Project, the Agreement, the Contract Documents or the breach thereof, shall be decided by resort to litigation in _____ _____. The parties to this Agreement, arising out of or relating to the Work, the Project, the Agreement, the Contract Documents or the breach thereof, reasonable attorneys' fees shall be awarded to the prevailing party, measured by the extent to which such party in fact prevails in the action as determined by the extent such party in fact succeeds in each claim or defense asserted by the party. Nothing in the Contract Documents shall be deemed or construed on the part of the Owner or Contractor as an intent or obligation to arbitrate any matter or dispute whatsoever.

**ARTICLE 5**
**SUBCONTRACTORS**

1.     The term "Subcontractor" shall mean any person or entity who has a direct contract with Contractor to perform a portion of the Work (including materialmen and suppliers) and all other persons or entities (whether such persons or entities are subcontractors, sub-subcontractors, materialmen or suppliers) who provide materials, labor or services directly or indirectly to or for the Work through or under the supervision of Contractor or any Subcontractors. The foregoing definition shall apply when used in the Contract Documents with respect to any obligation for the Work or any other obligation or duty owed to the Owner under the Contract Documents, including but not limited to indemnity and warranty obligations, provisions of lien waivers and removal of liens and protection and safety of the Work and adjacent property.

2.     Within five (5) days after the execution of this Agreement, the Contractor shall furnish in writing to the Owner the names of all persons or entities (including those who are to furnish materials or equipment fabricated to a special design) proposed for each principal portion of the Work. The Owner will, within five (5) days after receipt of such list, reply to the Contractor in writing stating whether or not the Owner, after due investigation, has reasonable objection to any such proposed person or entity. The Contractor agrees that Contractor shall not hire any person or entity as a Subcontractor to perform Work on the Project against whom the Owner makes such an objection. In the event the Contractor is unable to hire a

Subcontractor meeting the approval of the Owner to perform any specific Work on the Project, the Owner shall have the right, without the obligation to do so, to hire another person or entity of the Owner's choosing to perform such work. Should the Owner directly hire a Subcontractor pursuant to this paragraph, the Contractor shall provide the Owner with a credit to the Contract Sum equal to the amount of the contract entered into between the Owner and such person or entity. Further the Contractor agrees to cooperate fully with such person or entity and to coordinate all Work with the work of such person or entity as necessary to ensure the proper and timely completion of all of the Contractor's Work. The Contractor shall not change a Subcontractor previously selected if the Owner makes reasonable objection to such change. All agreements between the Contractor and any Subcontractors shall preserve and protect the rights of the Owner under the Contract Documents with respect to the performance of the Work so that the subcontracting thereof will not prejudice such rights. No provision of this Agreement, the Contract Documents or any contract between the Contractor and any Subcontractor shall be construed as an agreement between the Owner and any Subcontractor. No Subcontractor shall have the benefit of any rights, remedies or redress against the Owner pursuant to any of the Contract Documents.

3. In the event of the termination of this Agreement by the Owner, the Owner shall have the right (without any responsibility so to do) to assume the rights and responsibilities of Contractor under all or some of Contractor's subcontracts, or purchase or rental agreements which the Owner, in Owner's sole discretion, chooses to assume. While this provision shall constitute a present assignment of Contractor's rights with respect to any and all such contract agreements and commitments which Owner so chooses to assume, the Contractor, upon request from Owner, shall promptly execute and deliver to the Owner written assignments of such contracts, agreements and commitments which the Owner in Owner's sole discretion so chooses to take by assignment. All Contractor's agreements with Subcontractors and suppliers shall provide for this assignment.

## ARTICLE 6
## CONSTRUCTION BY OWNER OR BY SEPARATE CONTRACTORS

1. The Owner reserves the right to perform construction or operations related to the Project with the Owner's own forces, and to award separate contracts in connection with other portions of the Project or other construction or operations on the Site, other than with respect to the Work. If the Contractor claims that delay or additional cost is involved because of such action by the Owner, the Contractor shall make such claim as provided elsewhere in the Contract Documents. The Contractor shall notify the Owner if any such independent action will in any way compromise the Contractor's ability to meet the Contractor's responsibilities under this Agreement. Specifically, the Contractor acknowledges that the Work on the Project may include certain materials, equipment, products, parts, furniture, fixtures and related items, including hardware, supplies and accessories that will be procured directly by Owner ("Owner Supplied Items"). Any Owner Supplied Items are identified in the Responsibility Matrix attached hereto as Exhibit E. Contractor shall be responsible to work directly with the various vendors of the Owner Supplied Items in order to arrange and administer the shipments of any Owner Supplied Items. The Contractor shall not be responsible for the purchase or delivery of the Owner Supplied Items. However, Contractor shall be responsible, to the extent set forth in Exhibit E, to unload, store, uncrate, move, handle, install and otherwise incorporate the Owner Supplied Items into the Work. Contractor shall account for and keep track of, and shall be fully and solely responsible for all storage and handling with respect to all Owner Supplied Items that Contractor is responsible to install and Contractor shall inspect all Owner Supplied Items prior to installing or incorporating such Owner Supplied Items as part of the Work and shall promptly notify the Owner if the Contractor believes any such Owner Supplied Items are in such condition that they should not be installed or incorporated into the Work or are not delivered in the required condition or quantity. The failure of the Contractor to report any apparent defect or deficiency in any Owner Supplied Items prior to the installation or incorporation of such Owner Supplied Items into the Work shall constitute an acknowledgement by Contractor that such Owner Supplied Items were fit and proper for installation and construction, except as to defects or deficiencies not then reasonably discernible.

2. The Responsibility Matrix divides the Owner Supplied Items into two (2) categories: (a) "Owner Supplied and Contractor Installed Items"; and (b) "Owner Supplied and Owner Installed Items". Unless specifically identified in the Responsibility [redacted] equipment, products, parts, furniture, fixtures and related items, including hardware, supplies and accessories, required for the Work and all such items shall be deemed to have been designated as "Contractor Supplied and Contractor Installed Items". Similarly, unless specifically identified in the Responsibility Matrix as an "Owner Installed Item", Contractor is responsible to install all materials, equipment, products, parts, furniture, fixtures and related items, including hardware, supplies and accessories, required for the Work.

3. With respect to Owner Supplied and Contractor Installed Items, the Contractor shall <u>not</u> be responsible for: (i) the procurement and delivery to the Site of the applicable Item; or (ii) the quality and warranty of the applicable Item (or its conformance to the Owner's requirements). However, Contractor shall be responsible for the following with respect to the Owner Supplied and Contractor Installed Items: (a) to the extent so identified in the Responsibility Matrix, for the unloading, storage, uncrating, moving and handling of the applicable Item upon arrival at the Site through to Substantial Completion; (b) the protection of and risk of loss to the applicable Item beginning with its delivery to the Site through to Substantial Completion; and (c) the installation, assembly and construction of the applicable Item in accordance with the Contract Documents and the related quality and warranty of such installation, assembly and construction. With respect to Owner Supplied and Owner Installed Items, unless provided otherwise in the Responsibility Matrix, the Contractor shall <u>not</u> be responsible for: (i) the procurement and delivery to the Site of the applicable Item; (ii) the quality and warranty of the applicable Item (or its conformance to the Owner's requirements); (iii) the unloading, storage, uncrating, moving or handling of the applicable Item; (iv) the protection of or risk of loss to the applicable Item; or (v) the installation, assembly and construction of the applicable Item or the related quality and warranty of such installation, assembly and construction. Contractor shall be responsible, however, to coordinate and cooperate with the Owner and the Owner's separate contractors and vendors with respect to the delivery, storage, protection, installation, assembly and construction of the Owner Supplied and Owner Installed Item, and shall perform all tasks and Work associated therewith that are required by the Contract Documents.

**Contract No. WSJ-17016**

4.      With respect to all Owner Supplied Items, regardless of whether the item is to be installed by Contractor or separate contractor(s) retained by Owner, Contractor shall be responsible, subject to the provisions of this Article 6 below, to coordinate with the applicable vendor of the Owner Supplied Item and to establish rough in locations and connections for the Owner Supplied Item to be installed, and to coordinate, for each component of the Owner Supplied Item, details pertaining and relevant to the requirements for the installation and assembly of the Owner Supplied Item and the connection to and relationship of such Owner Supplied Item with any other equipment, systems or utilities to be connected to or used with the Owner Supplied Item, so that the Contractor (or any separate installation contractor retained by Owner, as applicable) is able to assemble and install the Owner Supplied Item in a safe, proper and complete manner. In this regard, Contractor acknowledges that if rough in locations are commenced or set without proper coordination by Contractor, these locations may not be adequate or appropriate to fit the installation of the Owner Supplied Item and may result in additional costs and/or time should they need to be changed. Contractor shall be responsible for any extra costs or time caused by its failure to establish, commence or set rough in locations without first coordinating with the applicable vendor of the Owner Supplied Item (or for Contractor's failure to comply with the related instructions provided by the applicable vendor of the Owner Supplied Item) and for costs related to changes to any utility or other completed work on the Project (whether performed by Contractor or others) needed to fit and/or hook up the Owner Supplied Item in such event, except that Contractor shall not be responsible for such costs (or for any failure to coordinate with the vendor of the Owner Supplied Item, if such charges or costs are caused by the failure of the applicable vendor of the Owner Supplied Item to identify the applicable rough in work required to accommodate the applicable Owner Supplied Items in a timely or accurate fashion). In the event Contractor believes that any rough in location is inadequate or inappropriate, Contractor shall notify Owner with reasonable promptness and, if requested, shall provide Owner with recommendations as to how to modify the rough in locations to make the locations and rough-in adequate and appropriate.

the term "Contractor" in the Contract Documents in each case shall mean the Contractor who executes each separate Owner-Contractor Agreement. The Owner shall provide for coordination of the activities of the Owner's own forces and of each separate contractor with the Work of the Contractor, who shall cooperate with them. The Contractor shall participate with other separate contractors and the Owner in reviewing their construction schedules when directed to do so. The Contractor shall make any revisions to the Construction Schedule deemed necessary after a joint review and mutual agreement. The revised Construction Schedule shall then constitute the schedule to be used by the Contractor, separate contractors and the Owner until subsequently revised. The Owner shall be responsible to the Contractor, pursuant to the applicable provisions of this Agreement, for any interference with or damage to the Work caused by the Owner's own forces or separate contractors. In case of disagreement or disputes regarding the scheduling of work by other contractors or unnecessary interference to the Work caused by lack of cooperation between other contractors and the Contractor, the Contractor shall fully cooperate to resolve any disputes with or between other contractors. In case of disagreements or disputes between two (2) or more contractors, the Owner shall be consulted and the Owner's decisions as to proper methods for coordinating the Work shall be final. The Contractor shall provide access to the Work so as to fully cooperate with the Owner and other contractors in the performance of their Work.

6.      The Contractor shall afford the Owner and separate contractors reasonable opportunity for introduction and storage of their materials and equipment and performance of their activities and shall connect and coordinate the Contractor's Work and operations with theirs as required by the Contract Documents. If part of the Contractor's Work depends for proper execution or results upon construction or operations by the Owner or a separate contractor, the Contractor shall, prior to proceeding with that portion of the Work, promptly report to the Owner and Architect apparent discrepancies or defects in such other construction that would render it unsuitable for such proper execution and results. Failure of the Contractor to report any such apparent discrepancy or defect shall constitute an acknowledgment that the Owner's or separate contractors' completed or partially completed construction is fit and proper to receive the Contractor's Work, except as to defects not then reasonably discoverable. Costs caused by delays or by improperly timed activities or defective construction shall be borne by the party responsible therefor. The Contractor shall promptly remedy damage wrongfully caused by the Contractor to completed or partially completed construction or to property of the Owner or separate contractors as provided in Article 10. Should the Contractor delay or cause damage to the work or property of any separate contractor, the Contractor shall, upon due notice, promptly attempt to settle with such other contractor by agreement, or otherwise to resolve the dispute. If such separate contractor sues the Owner on account of any delay or damage alleged to have been caused by the Contractor, the Owner shall notify the Contractor who shall defend such proceedings at the Contractor's expense. The Owner and each separate contractor shall have the same responsibilities for cutting and patching as are described for the Contractor in Article 3. If a dispute arises among the Contractor, separate contractors and the Owner as to the responsibility under their respective contracts for maintaining the premises and surrounding area free from waste materials and rubbish as described in Article 3, the Owner may clean up and allocate the cost among those responsible as the Owner reasonably determines to be just.

## ARTICLE 7
## CHANGES IN THE WORK

1.      Changes in the Work may be accomplished after execution of this Agreement, and without invalidating this Agreement, by Change Order, Construction Change Directive ("CCD") or order for a minor change in the Work, subject to the limitations stated in this Article 7 and elsewhere in the Contract Documents. The Owner reserves the right, pursuant to a Change Order, to make any changes, deletions or additions, in whole or in part in the plans, specifications, and manner of performance of the Work, including acceleration of the Work that Owner may deem desirable, provided, however, that the Contractor agrees to any such change, deletion or addition. A Change Order shall be based upon agreement between the Owner and Contractor. A CCD is issued by the Owner and may or may not be agreed to by the Contractor. Change Orders and CCDs shall be coordinated, issued and signed only by the Contractor and by Owner's Representative. No other person or entity (including the Project Manager) shall have authority to issue or execute any Change Order or CCD on behalf of Owner or to direct any changes in the Work. An order for a minor change in the Work may be issued by the Architect alone.

Contract No. WSJ-17016

2.    The Contractor agrees to immediately perform the work that is the subject of any agreed Change Order or CCD diligently and without delay. Changes in the Work shall be performed under applicable provisions of the Contract Documents, unless otherwise provided in the Change Order or CCD. If unit prices are stated in the Contract Documents or subsequently agreed upon, and if quantities originally contemplated are so changed in a proposed Change Order or CCD that application of such unit prices to the quantities of Work proposed in the Change Order or CCD will cause inequity to the Owner or Contractor, the applicable unit prices to be used for the Change Order or CCD at issue shall be equitably adjusted pursuant to agreement between Owner and Contractor.

3.    A Change Order shall be based upon the agreement of the Owner and Contractor, shall be on the Owner's standard Change Order form (without modification unless so approved by the Owner in writing), shall be signed by the Owner and the Contractor and shall contain: (i) a description of the change in the Work; (ii) the amount of the adjustment in the Contract Sum, if any; and (iii) the extent of the extension of the Completion Dates, if any. A CCD shall be on the Owner's standard CCD form and may be issued unilaterally by the Owner (without agreement of the Contractor) and will set forth a directed change in the Work and the Owner's determination of what, if any, adjustment in the Contract Sum and/or extension of the Completion Dates is required thereby; provided that the changes in a CCD may not be material to Contractor with respect to the scope of the Work, the timeline for the conduct of the same or the anticipated adjustment to the Contract Sum. A CCD may be accepted and signed by the Contractor, or the Contractor may disagree with the CCD, in which event the Contractor shall proceed promptly and diligently with the Work required by the CCD subject to the provisions of this Article 7 below. A Change Order or CCD signed by the Contractor indicates his agreement therewith, including any adjustment in the Contract Sum or extension of the Completion Dates set forth therein. The Contractor agrees that the amount of any increase in the Contract Sum set forth in any Change Order or CCD signed by the Contractor includes full compensation to the Contractor for all Work required in connection with the Change Order or CCD

supervision, overhead, profit, or other costs, expenses or damages which have been or may be incurred by the Contractor as a result of the issuance of the Change Order or CCD and/or the performance of any Work required in connection with the Change Order or CCD. The Owner may, at its sole and complete discretion, require the Contractor to perform and commence immediately any change in the Work, without agreement as to whether such change requires an increase in the Contract Sum and/or an extension of the Completion Dates, or if so, what increase and/or extension is required thereby, by issuing a CCD for such Work, so long as the CCD is in compliance with this paragraph 3. If the Contractor disagrees with the method for adjustment in the Contract Sum, if any, set forth in any CCD issued by the Owner, the method and the adjustment shall be determined pursuant to the provisions of Article 4, paragraph 5 above.

4.    Notwithstanding any other provision of this Agreement, Contractor acknowledges and agrees that the mere submission by Contractor of a request for a Change Order or CCD or the submission of any other claim (collectively a "COR") does not entitle Contractor to any increase in the Contract Sum or to any extension of the Completion Dates, and does not entitle Contractor to stop or slow down any portion of the Work based upon such submission, and that the Owner fully reserves all of Owner's rights and positions with respect to any COR submitted by Contractor; provided that Owner will promptly consider any such COR and promptly, and in good faith, respond thereto. Specifically in this regard, Contractor agrees that notwithstanding the submission of a COR, Contractor shall proceed diligently and promptly to prosecute and perform all Work involved with or affected by any COR submitted by Contractor (and shall implement and follow any directions or instructions given by the Owner in connection therewith), even if Owner does not agree that the Work that is the subject of the COR constitutes a change to the Work required by this Agreement and/or does not agree that the COR entitles Contractor to any increase in the Contract Sum and/or extension of the Completion Dates and/or does not agree as to what increase and/or extension is required thereby. If Owner does not agree with a COR submitted by Contractor, Contractor shall be entitled to make a claim as permitted by the provisions of this Agreement, and in the event said claim is later determined to be valid, Contractor shall be entitled to an increase in the Contract Sum calculated pursuant to the provisions of Article 4, paragraph 5 herein. Subject to the limitations set forth in Section 36 of Article 3, Contractor shall be responsible to Owner for all damages, cost or expenses incurred by Owner as a result of any failure by Contractor to prosecute the Work fully, properly, promptly, and diligently because of the Contractor's submission of a COR.

extension of the Completion Dates and not inconsistent with the intent of the Contract Documents. Such changes shall be effected by written order from the Architect and shall be binding on the Owner and Contractor. The Contractor shall carry out such written orders promptly. In addition, Contractor acknowledges and agrees that the Owner (either through the Owner's Representative or the Project Manager) may issue field orders and other instructions to the Contractor, in writing, directing the Contractor to correct nonconforming Work, instructing or clarifying for the Contractor how to perform certain Work in accordance with the Contract Documents, or making minor changes in the Work not involving adjustment in the Contract Sum or extension of the Completion Dates and not inconsistent with the intent of the Contract Documents. All such field orders, instructions and directives shall be binding on the Contractor and the Contractor shall carry out such field orders, instructions and directives promptly. If the Contractor believes that any such field order, instruction or directive constitutes a basis for an increase in the Contract Sum and/or extension of the Completion Dates, then Contractor shall give written notice thereof to the Owner within the time and in the manner required by this Agreement. However, no such field order, instruction or directive shall entitle Contractor to any increase in the Contract Sum and/or extension of the Completion Dates unless and only to the extent so authorized in a Change Order or CCD signed by the Owner's Representative or awarded to the Contractor pursuant to a successful claim made in the manner required by, and subject to the limitations of, this Agreement.

## ARTICLE 8
## TIME

1.    The period of time for completion of the Work is established by the Completion Dates set forth in Exhibit D to this Agreement (as later modified pursuant to, or extended by Excused Delays allowed by, the applicable provisions of this Agreement). This Agreement is intended to and shall govern all Work provided by Contractor for the Project, whether initiated or performed prior or subsequent to the execution of this Agreement, and the effective date of this Agreement shall be deemed to be the first date when any such Work was so provided by Contractor. The date of Substantial

**Contract No. WSJ-17016**

Completion is the date determined in accordance with Article 9. The term "day" as used in the Contract Documents shall mean calendar day unless otherwise specifically defined. The Contractor shall diligently perform, forward and prosecute the Work to completion subject only to Excused Delays as defined herein. Contractor, at Contractor's sole cost and expense, shall utilize additional labor, premium time, equipment and material, as necessary, in order to meet the Completion Dates set forth in this Agreement, subject only to Excused Delays. The Contractor shall not knowingly, except by agreement or instruction of the Owner in writing, commence operations on the Site or elsewhere prior to the effective date of insurance required to be furnished by the Contractor pursuant to Article 11 below. The Completion Dates for the Work shall not be changed by the effective date of such insurance. The Contractor shall notify the Owner in writing not less than five (5) days or other agreed period before commencing the Work to permit the timely filing of mortgages, mechanic's liens and other security interests. After receipt of such notice and upon the date the Work is to commence, Owner will provide Contractor with a notice to proceed. Such notice to proceed shall constitute the beginning of the Work for the purposes Section 37 of Article 3.

2.      The Contractor acknowledges and recognizes that the Owner must have full and beneficial occupancy and use of the completed Work within the times established by the Completion Dates, subject only to Excused Delays as defined herein, and that the Owner has entered into, or will hereafter enter into, binding agreements for leasing rooms based upon the Contractor's representation that Contractor can achieve completion of the Work within the Completion Dates established in the Agreement. The Contractor acknowledges and understands that the Owner may incur substantial losses and damages if the Owner is not able to use and occupy the Work for its intended purpose as of the Completion Dates established in the Agreement (except as modified pursuant to the provisions of this Agreement), including, among other things, additional financing costs, additional fees to the Architect, Owner's Consultants and other consultants retained by the Owner, and economic loss in the form of lost rental incomes, rebates, lost event revenue, and related sales income,

established by the Completion Dates (except and only to the extent of Excused Delays as defined herein).

3.      The Contractor shall be entitled to an extension in the Completion Date(s) as the result of a delay only to the extent that such delay is attributable to causes beyond the reasonable control of and could not have been mitigated or avoided by the Contractor or any affected Subcontractors (hereinafter referred to as an "Excused Delay"). Excused Delays shall include, among other things, delays caused by the act or neglect of the Owner, Project Manager, Architect, the Owner's employees or separate contractors or their employees or agents, or by changes in the Work, unreasonable delays by governmental authorities in scheduling inspections, conducting reviews or issuing approvals, or by labor disputes (but only to the extent such labor dispute is an Excused Delay pursuant to the provisions of this Agreement), fire, weather conditions, unusual and unavoidable delay in deliveries or unavoidable casualties, or by unreasonable delays by the Owner and/or Architect in responding to Shop Drawings, submittals or RFIs (in this regard, if no date is established in the Contract Documents upon which such responses or any other interpretations or approvals to be provided by the Owner, Architect or their consultants in connection with the Work shall be furnished, then no claim for extension of the Completion Dates shall be allowed on account of failure to furnish any such response, interpretation or approval unless such time exceeds seven (7) days after receipt by the Architect and/or Owner or their consultants, as applicable, of the Shop Drawing, submittal, RFI or other item at issue).

4.      In the event of an Excused Delay, the Contractor shall be entitled to an extension of the Completion Dates, but only to the extent that there is an actual delay to the critical path of the entire Work (delays of only certain trades will not be considered an Excused Delay unless they in turn delay Substantial Completion of the entire Work), measured by the number of days, or portions thereof, that the Substantial Completion of the Work is actually delayed by such Excused Delay. The Contractor shall not be entitled to an increase in the Contract Sum as a result of an Excused Delay or due to any acceleration or other impact to the performance of the Work caused by any Excused Delay (or any action directed by the Owner or Architect with respect to the time for performance of the Work) except and only in the event of (and provided timely written notice is provided as required by this Agreement): (1) a delay that is the result of an interference with, or interruption of the Work caused by Project Manager, Owner (or Owner's Consultants, employees, agents or separate contractors) or Architect; or (2) an acceleration or other impact to the time for performance of the Work that is directed by

interference with or interruption of the Work by the Owner (or Owner's employees, agents or separate contractors) or Architect; or (3) an acceleration to the time for performance of the Work that is caused by the failure of the Owner to grant an extension of time that was required to be granted pursuant to the provision of this Agreement. In any such event, the Contractor's sole remedy shall be an increase in compensation calculated pursuant to the provisions of Article 4, paragraph 5 herein, and the Contractor shall be entitled to no additional compensation and shall have no addition or other rights of any kind or nature arising out of or under this Agreement by virtue of any delays, interferences, acceleration or other impact, regardless of their length or nature.

## ARTICLE 9
## PAYMENTS AND COMPLETION

1.      Owner shall pay to Contractor in current funds for the full and satisfactory performance of the Work the total amount Not to Exceed $28,687,518 (Twenty Eight Million Six Hundred Eighty Seven Thousand Five Hundred Eighteen Dollars), (the "Contract Sum") in accordance with the rates indicated in Exhibit G attached hereto (subject to alternate rates for Overhead and Profit (15%) and Per Diem as allowed and agreed to with the Owner's Insurance Adjuster). The Contract Sum shall include, and shall constitute the Contractor's sole compensation for, the Scope of Work as described in Exhibit A. The Contract Sum includes full compensation to the Contractor for its profit, home office services and supervision, overhead and for any and all other costs or expenses incurred in connection with the performance of the Work.

2.      The Contract Sum, and each individual component thereof, will not be increased for any reason, cause or circumstance unless and only to the extent expressly permitted by this Agreement. Costs in excess of the Contract Sum that are not permitted to be recovered by the Contractor pursuant to the terms of this Agreement shall be borne and paid for by the Contractor without reimbursement by the Owner. In this regard, the Contractor agrees that the description of the Work in further detail by the Architect or the Owner, subsequent to the execution of this Agreement, whether through the issuance

Contract No. WSJ-17016

of written specifications, directions or clarifications, the issuance of further and more detailed drawings or otherwise, shall not entitle the Contractor to any compensation in addition to the Contract Sum, or to any extension of the applicable Completion Date(s), unless and only to the extent that such later description constitutes a "Material Change" in the Work, which is defined as any of the following: (1) a later description of the Work that involves work of a materially different nature, character, scope or quality (other than refinement) than that set forth in and/or reasonably inferable from the descriptions and Contract Documents set forth or identified in Exhibit A hereto; (2) a later description of the Work which involves work expressly excluded from the Contract Sum as set forth in Exhibit A hereto; or (3) additional work that is required because of a change in applicable laws, codes or regulations after the execution of this Agreement, but only to the extent that the Contractor did not know, and was not reasonably able to determine, that such change was scheduled to take effect as of the time this Agreement was executed. Further, the Contractor hereby acknowledges and agrees that it shall not be entitled to any increase in the Contract Sum and/or any extension in the Completion Date as a result of any Material Change unless: (a) there is an actual, substantiated increase in the cost of the labor and material required to complete the Work and/or an actual delay in the Substantial Completion of the Work beyond the Completion Date(s) which results from such Material Change; (b) the Contractor makes a claim for an increase in the Contract Sum and/or extension of the Completion Date(s) with respect to such Material Change within the time and in the manner required by the terms of this Agreement; and (c) either (i) the Owner authorizes the Contractor to proceed with such Work in advance and in writing through a fully executed Change Order; or (ii) the Contractor is awarded an increase in the Contract Sum and/or extension in the Completion Date(s) pursuant to a claim made in the time and manner required by this Agreement and litigation thereafter commenced pursuant to this Agreement.

2.1     The General Conditions component of the Contract Sum (as reflected in the approved Schedule of Values) shall not be increased unless and only to the extent: (i) that Substantial Completion of the Work on the Project

Order, CCD or Material Change to the Work that causes an actual increase in the General Conditions items needed for the performance of the affected Work. If the Contractor believes that it will be entitled to an increase in the General Conditions amount, the Contractor shall provide notice pursuant to the applicable provisions of this Agreement for consideration by the Owner. The notice must contain an itemized list of the additional General Conditions items for which the Contractor is requesting additional compensation. In the event the Contractor is entitled to an increase in the General Conditions pursuant to the provisions of this subsection, the increase shall be limited to the actual (and reasonable and necessary) amount of the additional General Conditions costs incurred by the Contractor as a result of the Excused Delay, Change Order, CCD or Material Change, which amount shall constitute compensation to the Contractor for all additional General Conditions costs incurred by the Contractor as a result of the Excused Delay, Change Order, CCD or Excused Delay. This amount shall be decreased by any amounts already paid by the Owner to the Contractor for increased General Conditions costs pursuant to any Change Order or CCD relating to the Work at issue that has been signed by the Owner pursuant to the provisions of this Agreement.

3.      Subsequent to the execution of this Agreement, the Contractor shall continue to evaluate and assess the Drawings, Specifications and other design documents or descriptions of the Work prepared by the Architect for the Project and issued to the Contractor for construction as and when they are issued by the Architect and shall notify the Owner and Architect in writing, within seven (7) days of the Contractor's receipt of any such document, if the Contractor claims that such design document(s) contain a Material Change. With respect to any claimed Material Change, the Contractor shall (x) identify the specific direction, event, condition or design document which allegedly constitutes the Material Change; (y) state specifically and describe in reasonable detail why it allegedly constitutes a Material Change, and (z) identify the amount of the increase in the Contract Sum and/or Completion Date(s) that the Contractor claims is needed as a result of the alleged Material Change.

4.      Notwithstanding anything to the contrary contained in the Contract Documents, the Owner may withhold any payment to the Contractor hereunder for the Work of the Contractor or for the Work of any Subcontractor if and for so long as such party is in material breach of any of the party's obligations hereunder for the Work of the Contractor or under a

any such holdback shall be limited to an amount sufficient, in the reasonable opinion of the Owner, to cure any such fault or failure of performance by the Contractor or by such Subcontractor, as the case may be.

5.      [RESERVED].

6.      The Owner and Owner's Consultants shall have the rights to audit the applicable books and records of the Contractor and its Subcontractors (and to interview the employees of the Contractor and its Subcontractors) solely for the purposes of confirming Contractors and Subcontractor's compliance with the requirements of Section 8 of Article 14.

7.      Before the first Application for Payment the Contractor shall submit to the Owner a Schedule of Values (using the Owner's standard form, unless otherwise agreed to by the Owner in writing) allocated to various portions of the Work and the various categories within the Contract Sum (i.e. the Contractor's fee, General Conditions, etc.), and separately divided by each Subcontractor who is performing Work in connection with each identified line item and prepared in such form and supported by such data to substantiate the accuracy of the Schedule of Values as the Owner may require. This Schedule of Values upon approval by the Owner shall be used as a basis for reviewing the Contractor's Applications for Payment. The first Application of Payment shall include the cost of all materials for the Project then known by the Contractor. Each Application for Payment shall be in such form, including supporting schedules and exhibits, as is directed by Owner and shall include completed schedules adjusting and updating each line item of the Schedule of Values, as appropriate, to account for previous payments and for Change Orders and CCDs as they are issued.

8.      On or before the twenty-fifth (25th) calendar day of each month, the Contractor shall submit to the Owner an itemized Application for Payment with all related schedules completed to reflect (i) the then current status of the Work projected through the last day of the month when the Application for Payment is submitted, (ii) the Contract Sum (and its related

Contract No. WSJ-17016

components) and (iii) the payments previously made by the Owner for operations completed in accordance with the Schedule of Values during the prior calendar month. Such Application for Payment shall be itemized as required by the Owner, shall be notarized, if required by the Owner, and supported by such data substantiating the Contractor's right to payment as the Owner may require, such as copies of requisitions from Subcontractors and material suppliers, and reflecting retainage if provided for elsewhere in the Contract Documents. In addition, each Application for Payment submitted by Contractor shall be accompanied by a sworn statement identifying every Subcontractor who is to receive payment of any amounts requested in the Application for Payment and listing the amounts requested on behalf of such Subcontractor in the Application for Payment. The Owner shall not be required to process an Application for Payment until all information required by this Agreement with respect to such Application for Payment (including but not limited to any required backup or supporting documentation) has been submitted. The Contractor's Applications for Payment may not include requests for payment of amounts relating to alleged changes in the Work that have not been authorized by a Change Order or CCD signed by the Owner.

9.     Applications for Payment shall not include requests for payment of amounts the Contractor does not intend to pay to a Subcontractor because of a dispute or other reason. Contractor shall reject or modify the requisition of a Subcontractor for any of the following reasons, unless Contractor and Owner agree that notwithstanding the existence of a reason for such action by Contractor, it is nonetheless advisable to process the requisition: (a) Work not performed in accordance with the Contract Documents and not remedied; (b) claims filed against the Project, Owner, Contractor or Subcontractor; (c) failure of Subcontractor to make payments to the Subcontractor's agents, employees, or sub-Subcontractors for labor, material, or equipment; (d) damage to another party caused by Subcontractor's activities; (e) delays in the prosecution of any portion of the Work caused by Subcontractor; (f) failure of Subcontractor to submit a required release and waiver, (g) unaccepted back-charges; or (h) for any other cause as directed by Owner.

10.     With the exception of the first Application for Payment and unless otherwise provided in the Contract Documents, payments shall be made on account of materials and equipment delivered and suitably stored at the Site at the time an Application for Payment is submitted, provided such materials and equipment will be incorporated in the Work within the next thirty (30) days after the Application for Payment is submitted. If approved in advance by the Owner, payment may also be made for materials and equipment suitably stored off the Site at a location agreed upon in writing. Payment for materials and equipment stored on or off the Site shall be conditioned upon compliance by the Contractor with procedures satisfactory to the Owner to establish the Owner's title to such materials and equipment or otherwise protect the Owner's interest, and shall include applicable insurance, storage and transportation to the Site for such materials and equipment stored off the Site. Contractor shall provide Owner, promptly upon request and as a condition to any related payment, with any documents (including but not limited to affidavits of storage, warehouse receipts and insurance certificates) required by Owner to demonstrate compliance with the foregoing condition. The Contractor shall submit, within thirty (30) days after the date of commencement of the Work and thereafter as the Owner reasonably requires, schedules of materials and equipment for each category or Subcontract for which Contractor will seek payment under this paragraph, which schedule shall include items, quantities, value or unit prices with extensions and the month in which a request for payment with respect thereto is expected to occur. Schedules will be updated on a monthly basis and submitted as an attachment to the Contractor's Applications for Payment. The Contractor may request approval of the Owner for payment of material or equipment to be purchased by Contractor and delivered in accordance with the approved schedule and material register for installation on Site no earlier than permitted by this paragraph above. Any costs to store any material or equipment prior to such date shall be paid by the Contractor and all related insurance and risk of loss shall be the responsibility of the Contractor until such time as is required by Article 11 herein. A payment schedule for each such item to be invoiced must be approved by the Owner, prior to submittal of the invoice. Requests for such payments shall be delivered to the Owner for approval by the fifteenth (15th) of the month prior to the month when they are to be included in an Application for Payment and shall include the following: (a) A Certificate of Title for the material or apparatus without encumbrances; or if encumbered, a Certificate of Title containing a statement signed by the Contractor agreeing to pay all encumbrances within seven (7) days after receipt of payment from the Owner; (b) A copy of the supplier invoices verifying material costs; (c) A Certificate of Compliance from the supplier verifying that the quality and quantity of material or apparatus is in accordance with the technical requirements; (d) The location of the material (which location shall provide designated clear access for the Owner if it is other than the Site). If the location where the material or apparatus is stored is privately owned, the Owner shall be listed as a second party to the storage lease or other negotiated agreement between the Contractor and property owners; and (e) Insurance coverage acceptable to the Owner. Prior payments for materials and equipment shall be subtracted proportionately from the payment for completed Work as the material or equipment is incorporated into the Work in whole or in part.

11.     The Contractor warrants that title to all Work covered by an Application for Payment (including all materials, whether or not then incorporated or installed into the Work, subject to the right of the Owner to reject same for failure to conform to the standards of any or all of the Contract Documents) will pass to the Owner no later than its incorporation into the Work or the time of payment by Owner, whichever is earlier, and shall at such time be free and clear of liens, claims, security interests or encumbrances in favor of the Contractor, Subcontractors, material suppliers, or other persons or entities making a claim by reason of having provided labor, materials and equipment relating the Work, provided, however, that title to materials listed in the first Application for Payment which will be purchased in the future will pass to the Owner upon incorporation or installation into the Work. Notwithstanding the foregoing, the Contractor shall remain responsible for all damage or loss to any Work, materials or equipment until after Final Completion as required herein.

12.     The Owner will hold retention equal to ten percent (10%) of the amount paid pursuant to each Application for Payment with respect to each category of Work as set forth in the Schedule of Values and the relevant Application for Payment (including any self-performed Work, the Contractor's fee and the General Conditions). In this regard, in the approved Schedule of Values (as modified pursuant to this Contract) and in each Application for Payment, the Contractor shall separately identify the contract amount for each Subcontractor who is performing Work so that the Owner can track and withhold retainage on a line item basis with respect to each identified Subcontractor. Owner agrees that this is a lump sum contract and accordingly that the purpose of this information is to allow Owner to confirm that appropriate retainage has been withheld and released as required by this Agreement, and to confirm compliance with any applicable laws relating to the holding and release of retainage, and that this information will not be used by Owner to claim credit against the

**Contract No. WSJ-17016**

Contract Sum based on the amounts of the Subcontracts actually entered into by Contractor for Work included within the Contract Sum (except and only to the extent of CCDs or claims that are based on actual costs incurred by Contractor). The Owner shall reduce the retainage held with respect to the Work to an amount equal to one hundred fifty percent (150%) of any Work not then completed by the Contractor as of the date when Substantial Completion is achieved with respect to the entire Work. The Owner shall make payment of the retention to be released with the next scheduled payment following Substantial Completion of the entire Work.

13. Within five (5) days following receipt of the Contractor's Application for Payment, the Owner will either approve the Application for Payment (by issuing a Certificate for Payment for such amount as the Owner determines is properly due) or disapprove the Application for Payment in whole or in part. The Contractor shall promptly comply with any direction by the Owner to revise and resubmit an Application for Payment based on the Owner's review and disapproval thereof and no payments shall be required under this Agreement until an Application for Payment, in form and substance as required by this Agreement, and accompanied by all required backup and supporting documentation, has been submitted to and approved by the Owner, which approval will not be unreasonably withheld, delayed or denied. The approval of an Application for Payment, a progress payment, or partial or entire use or occupancy of the Project by the Owner shall not constitute acceptance of Work not in accordance with the Contract Documents. The Contractor may only stop the Work pursuant to the provisions of Article 16 herein.

14. The Owner may decide to withhold approval of an Application for Payment and/or may reduce any payment otherwise due to Contractor to the extent reasonably necessary to protect the Owner from loss because of: (1) defective Work not remedied; (2) third-party claims filed or reasonable evidence indicating probable filing of such claims with respect to the Contractor, in the Owner's reasonable judgment, is liable to the Owner pursuant to this Agreement or applicable law; ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓ to the Owner or another contractor with respect to which the Contractor, has been determined to be liable to the Owner pursuant to this Agreement or applicable law; or (5) failure to carry out the Work in all material respects in accordance with the Contract Documents. When the reasons for withholding approval are removed, payment shall be made for amounts withheld because of them in response to the next filed Application for Payment. If the Contractor disputes any determination by the Owner with regard to any proposed Application for Payment, the Contractor shall nevertheless expeditiously continue to prosecute the Work. In any of the events permitting Owner to withhold payment as set forth herein, the Owner shall have the right to apply any such amounts so withheld in such manner as the Owner may deem proper to satisfy such claims, to complete the Work or to compensate the Owner for any loss suffered by reason of the Contractor.

15. Within thirty (30) days after the Owner's approval of the Application for Payment, the Owner shall make payment to the Contractor of the amount specified therein. Such payment by the Owner shall not constitute approval or acceptance of any item of cost in the Application for Payment. No partial payment made hereunder shall be or be construed to be final acceptance or approval of that portion of the Work to which such partial payment relates, or relieve the Contractor of any of Contractor's obligations hereunder with respect thereto. The Owner shall not be required to make any payment until the Owner has received a release of liens from the Contractor and all Subcontractors for the portion of the Work covered by such payments.

16. The Contractor shall promptly pay each Subcontractor within ten (10) days after receipt of payment from the Owner, out of the amount paid to the Contractor pursuant to the Contractor's Application for Payment, the full amount paid to Contractor by Owner, pursuant to such Application for Payment, for Work performed by such Subcontractor. The Contractor shall, by appropriate agreement with each Subcontractor, require each Subcontractor to make payments to sub-Subcontractors, materialmen and suppliers in similar manner. If required by the Owner, the Contractor shall send to the Owner copies of receipts from the Subcontractors for the payment made to them by the Contractor. The Contractor shall in no event, however, stop the Work during the pendency of a bonafide dispute between the Owner and the Contractor or any Subcontractor. The Owner will, on request, furnish to a Subcontractor, if practicable, information regarding percentages of completion or amounts applied for by the Contractor and action taken thereon by the Owner on account of portions of the Work done by such Subcontractor. The Owner shall have no obligation to pay or to see to the payment of money to a Subcontractor except as may otherwise be required by law.

17. Each Application for Payment shall be accompanied by a partial, conditional lien waiver (effective upon receipt of payment), on Owner's standard lien waiver form without modification (unless approved by Owner in advance and in writing), executed by each Subcontractor on behalf of whom payment is requested, in the amount of the payment requested by the applicable Application for Payment and by a partial, unconditional lien waiver (on Owner's standard lien waiver form without modification [unless approved by Owner in advance and in writing]) executed by each Subcontractor, reflecting receipt of payment for all Work performed by such Subcontractor that has actually been paid for by the Owner pursuant to any previous Application for Payment and for which the Contractor should have paid the Subcontractor pursuant to this Agreement prior to the submission of the Application for Payment at issue. Each Application for Payment shall also be accompanied by a partial, conditional lien waiver (effective upon receipt of payment), on Owner's standard lien waiver form without modification unless approved by Owner in advance and in writing, executed by the Contractor, for the full amount of the payment requested in the Application for Payment and by a partial, unconditional lien waiver (on Owner's standard lien waiver form without modification unless approved by Owner in advance and in writing) executed by the Contractor, reflecting receipt of payment for all Work that has actually been paid for by the Owner pursuant to all previous Applications for Payment. In addition, each Application for Payment shall be notarized, if required by the Owner, and supported by such data substantiating the Contractor's right to payment as the Owner may reasonably require, such as any affidavit or other statement required by any lender to the Owner, schedules of values from Subcontractors, and copies of requisitions and/or invoices from Subcontractors (reflecting retainage as provided for in the Contract Documents). The Owner shall not be required to process an Application for Payment until all information required by this Agreement with respect to any such Application for Payment has been submitted.

18. In the event a Subcontractor files a mechanic's lien or claim for lien against the Project (and provided Owner has paid Contractor as required by this Agreement for the Work that is the subject of such lien or claim), Contractor shall cause such lien or claim for lien to be formally released, bonded against or satisfied, and shall reimburse Owner for all costs and

Contract No. WSJ-17016

expenses, including but not limited to attorneys' fees and bonding and title indemnity expenses, incurred in contesting, discharging, releasing or satisfying such lien or claim for lien or defending or otherwise participating in such suit. Upon the settlement of such claim, any excess monies held by Owner from such security shall be paid to Contractor. Contractor shall similarly indemnify and protect and defend Owner, all Additional Insureds (as defined in Article 11), Owner's Consultants, Project Manager, and agents and employees of any of them, in respect of any lien or claim for lien in favor of any person claiming by, through, or under Contractor, including, among others, any Subcontractors, that may appear after Final Payment has been made by Owner to Contractor in the amounts required by this Agreement. The Contractor shall have the right to contest any lien or claim covered by this paragraph, provided the Contractor has bonded over such lien or claim and the Contractor has agreed in writing to fully indemnify and defend the Owner, all Additional Insureds (as defined in Article 11 below), Owner's Consultants, Project Manager, and agents and employees of any of them, with respect to such lien or claim.

19.     As used herein, "Substantial Completion" and/or "Substantially Complete" shall mean that: (1) the Work has been fully completed in accordance with the Contract Documents except and only for minor items that will not unreasonably affect the occupancy and operation of the Work as intended and the Work is sufficiently complete (with the above noted exceptions only) to enable the Owner to occupy and use the Work for the use for which it is intended without unreasonable disruption or interference caused by the need to complete any of the Work then remaining to be completed; (2) all required approvals and permits for occupancy, use and completion of the Work shall have been issued by appropriate governmental authorities (except such certificates, permits, approvals or consents that cannot be procured due to reasons beyond the reasonable control of the Contractor or any Subcontractors, in which event this condition shall not apply to such extent); (3) if so required by the Owner, the Architect has certified that the Work is complete as required by subsection (1) above; and (4) all operational systems and elements that are part of the Work, including mechanical, electrical and support systems, are functioning as required by the Contract Documents.

20.     When the Contractor considers that the Work, or a portion thereof which the Owner agrees to accept separately, is Substantially Complete, the Contractor shall prepare and submit to the Architect and Owner a comprehensive punch list of items to be completed or corrected. The Contractor shall proceed promptly to complete and correct items on the punch list. Failure to include an item on such punch list does not alter the responsibility of the Contractor to complete all Work in accordance with the Contract Documents. Upon receipt of the Contractor's punch list, the Architect and Owner will make an inspection to determine whether the Work or designated portion thereof is Substantially Complete. If the Architect's or Owner's inspection discloses any item, whether or not included on the Contractor's punch list, which is not in accordance with the requirements of the Contract Documents, the Contractor shall, before issuance of the Certificate of Substantial Completion, complete or correct such item upon notification by the Architect or Owner. The Contractor shall then submit a request for another inspection by the Architect and Owner to determine Substantial Completion. When the Work or designated portion thereof is Substantially Complete, the Owner will authorize the Architect to prepare a Certificate of Substantial Completion which shall establish the date of Substantial Completion, shall establish responsibilities of the Owner and Contractor for security, maintenance, heat, utilities, damage to the Work and insurance, and shall fix the time within which the Contractor shall finish all items on the list accompanying the Certificate. Warranties required by the Contract Documents shall commence on the date of Substantial Completion of all of the Work unless otherwise agreed to in writing by the Owner in the Certificate of Substantial Completion, and except as to latent defects and matters specified in any punch list delivered with respect to the Work or a portion thereof. The Certificate of Substantial Completion shall be submitted to the Owner and Contractor for their written acceptance of responsibilities assigned to them in such Certificate. Upon Substantial Completion of the Work (or a designated portion thereof, as applicable), the Contractor may submit an Application for Payment for a sum sufficient to increase the total payments to the total amount of the Contract Sum, less one hundred fifty percent (150%) of such amounts as the Owner reasonably determine for Work not yet completed, including all remaining punch list items.

21.     The Owner shall have the right to occupy or use ahead of schedule all or any Substantially Completed or partially completed portions of the Work when such occupancy and use are in Owner's best interest, notwithstanding the time of completion for all of the Work. If such occupancy or use increases the cost of the Work (other than for corrections which are the Contractor's responsibility) or delays the completion of the Work, the Contractor shall be entitled to extra compensation or extension of time, to be valid, shall be made in writing in the time and manner required by Article 4 hereof. After the Owner has taken occupancy of all or any Substantially Completed or partially completed portions of the Work under construction, the Contractor shall not disrupt the Owner's use and occupancy thereof to make corrections in the Work but shall, at the Owner's discretion, make such corrections at the Contractor's expense in a fashion so as not to disrupt the Owner's use and occupancy of the area at issue. The Owner may require the use and operation of any completed heating, ventilating, air-conditioning or other equipment at the time that Owner occupies or uses any Substantially Completed portion of the Work under construction. In such event, the Owner may require the Contractor to operate such equipment and will pay the Contractor the cost of such operation required for the Owner's use and occupancy, but the Contractor shall be responsible for such equipment and for its careful and proper operation. At any time, the Owner may itself assume the care and maintenance of any portion of the Work which Owner is occupying and using and/or the operation of any such equipment, but in each case the Contractor shall not be relieved of Contractor's responsibility for the full completion of the Work and the protection of Contractor's tools, materials and equipment. Unless otherwise agreed upon, partial occupancy or use of a portion or portions of the Work shall not constitute acceptance of Work not complying with the requirements of the Contract Documents.

22.     Upon receipt of written notice that the Work is ready for final inspection and acceptance and upon the Owner's receipt of a final Application for Payment, the Owner will promptly make such inspection and when the Owner finds the Work acceptable under the Contract Documents and the Contract fully performed, and when the conditions listed in this Agreement as precedent to the Contractor's being entitled to Final Payment have been fulfilled and the entire Work is Finally Complete as defined herein, the Owner and Contractor shall execute a Certificate of Final Completion, which certificate shall establish responsibilities of the Owner and Contractor for security, maintenance, heat, utilities, damage to the Work and insurance. Unless otherwise agreed by the Owner in writing, the Owner's approval of an Application for Payment, a progress payment, or Final Payment, partial occupancy or use of a portion of the Work shall not constitute

**Contract No. WSJ-17016**

acceptance of Work not complying with the requirements of the Contract Documents.  Acceptance of Final Payment by the Contractor or any Subcontractor shall not constitute a waiver of all claims by the Contractor and such Subcontractor

23.     As used in the Contract Documents, Final Completion (and/or "Finally Complete") shall mean, and "Final Payment" shall not be due to the Contractor until, the proper and full completion of all of the Work, including but not limited to satisfactory operation of all equipment and systems, completion or correction of all punch list items, delivery of all maintenance and operations manuals and all warranties and guarantees (and assignments thereof), issuance of all required approvals and certificates by any authorities with jurisdiction over the Work (including final and unconditional certificates of occupancy), removal of all rubbish, tools, scaffolding and surplus materials from the Site and correction of all property damage that is the responsibility of the Contractor pursuant to the Contract Documents.  In addition, Final Payment shall not be due and owing and shall not be made unless and until the Contractor submits to the Owner the following:  (1) executed releases (effective upon receipt of Final Payment) signed by all Subcontractors who may be entitled to a claim against the Owner or the Project; (2) an executed release signed by the Contractor discharging and waiving all claims, damages, causes of actions, and/or suits which the Contractor may have against the Owner or the Owner's property relating to the Project, the Work, or this Agreement, effective upon receipt of the Final Payment, (3) an affidavit that all payrolls, bills for materials and equipment, and other indebtedness connected with the Work for which the Owner or the Owner's property might be responsible or encumbered (less amounts withheld by Owner) have been paid or otherwise satisfied, (4) a certificate evidencing that insurance required by the Contract Documents is to remain in force after Final Payment is currently in effect and will not be canceled or allowed to expire until at least thirty (30) days' prior written notice has been given to the Owner, (5) a written statement that the Contractor knows of no substantial reason that the insurance will not be renewable to cover the period required by the Contract Documents, (6) consent of surety, if any, to Final Payment; and (7) if and as reasonably required by the Owner, other data establishing payment or satisfaction of obligations, such as receipts,

from as may be designated by the Owner.  If any such claim is made with respect to the Project after Final Payment is made to the Contractor, the Contractor shall be responsible to the Owner for all money, costs, and expenses that the Owner may be compelled to pay in discharging such claim, including all costs and reasonable attorneys' fees.  When the Work is Finally Complete as defined herein, the Owner and Contractor shall execute a Certificate of Final Completion in a form reasonably acceptable to Owner.  The Owner agrees to make Final Payment to the Contractor within thirty (30) days after Final Completion has occurred and all of the requirements set forth in this paragraph have been satisfied.  Contractor shall, within ten (10) days after receipt of Final Payment from the Owner, submit final and unconditional releases from all persons and entities identified in subsection (1) above.

24.     All provisions of this Agreement, including without limitation, those establishing obligations and procedures, shall remain in full force and effect notwithstanding the making or acceptance of Final Payment prior to the date of Substantial Completion of the Work.  The Contractor's obligation to perform and complete the Work in accordance with the Contract Documents shall be absolute.  Neither approval of any partial or Final Payment by the Owner, nor the issuance of a Certificate of Substantial Completion, nor any payment by the Owner to Contractor under the Contract Documents, nor any use or occupancy of the Work or any part thereof by the Owner nor any act of acceptance by the Owner nor any failure to do so, nor any correction of defective work by the Owner shall constitute an acceptance of Work not in accordance with the Contract Documents, unless explicitly set forth in writing by Owner.

**ARTICLE 10**
**PROTECTION OF PERSONS AND PROPERTY**

1.     The Contractor shall be responsible for initiating, maintaining and supervising all safety precautions and programs in connection with the performance of this Agreement and the Work.  All Work shall be performed in compliance with the requirements of the current and applicable Construction Safety Act and the Occupational Safety and Health Act and any other laws or regulations pertaining to the safe performance of the Work.  Owner will not be responsible in any way for providing a safe place for the performance of the Work by the Contractor, any Subcontractor, or any of their respective agents or employees.  If Contractor is responsible for the abatement or removal of asbestos at the Project as set forth in the Contract Documents, the Completion Dates have been established taking such abatement and removal activities into account.  The Contractor shall take precautions for safety of, and shall provide protection to prevent damage, injury or loss to:  (1) employees on the Work and other persons who may be affected thereby; (2) the Work and materials and equipment to be incorporated therein, whether in storage on or off the Site, under care, custody or control of the Contractor or the Contractor's Subcontractors; and (3) the Site and any portions thereof and any other property at the Site or adjacent thereto, such as trees, shrubs, lawns, walks, pavements, roadways, structures and utilities not designated for removal, relocation or replacement in the course of construction and the Work of the Owner or any of Owner's separate contractors.

2.     The Contractor shall give notices and comply with applicable laws, ordinances, rules, regulations and lawful orders of public authorities bearing on safety of persons or property or their protection from damage, injury or loss.  The Contractor shall erect and maintain, as required by existing conditions and performance of this Agreement, reasonable safeguards for safety and protection, including posting danger signs and other warnings against hazards, promulgating safety regulations and notifying any guests at the Project Site and owners and users of adjacent areas and utilities.  When use or storage of explosives or other hazardous materials or equipment or unusual methods are necessary for execution of the Work, the Contractor shall exercise utmost care and carry on such activities under supervision of properly qualified personnel.  The Contractor shall designate a responsible member of the Contractor's organization at the Site whose duty shall be the prevention of accidents.  This person shall be the Contractor's superintendent unless otherwise designated by the Contractor in writing to the Owner and Architect.  The Contractor shall not load or permit any part of the Work or Site to be loaded so as to endanger safety.

3.     Subject to the limitations contained in Section 38 of Article 3, the Contractor shall indemnify and hold Owner, all Additional Insureds (as defined in Article 11 below), Owner's Consultants, Project Manager, and agents and employees of any of them, harmless from and against any loss or damage, and shall promptly remedy damage and loss (other than damage or loss actually paid for by property insurance procured by the Owner pursuant to this Agreement) referred to in this Article

Contract No. WSJ-17016

10 (including but not limited to damage or loss due to theft, burglary, destruction, carelessness or improper handling and any damage or loss which may prevent any part of said property being used or installed and accepted in accordance with the Contract Documents) to the extent caused in whole or in part by any action or failure on the part of the Contractor, a Subcontractor, or anyone directly or indirectly employed by any of them, or by anyone for whose acts they may be liable, except damage or loss attributable to acts or omissions of the Owner or Architect or anyone directly or indirectly employed by either of them, or by anyone for whose acts either of them may be liable, and not attributable to the fault or negligence of the Contractor or any Subcontractors. The foregoing obligations of the Contractor are in addition to the Contractor's obligations under Article 3. Nothing herein shall be construed as requiring the Owner to carry any property insurance (except any such insurance as Owner is expressly required to procure pursuant to Article 11 herein) covering any loss or damage for which Contractor is responsible pursuant to this Section. In an emergency affecting safety of persons or property to which the Owner cannot reasonably respond, the Contractor shall take commercially reasonable steps to act, at the Contractor's discretion and the Owner's cost, to prevent threatened damage, injury or loss, provided that Owner shall be given prompt notice of any such action. Additional compensation or extension of time claimed by the Contractor on account of an emergency shall be determined as provided in Article 4.

## ARTICLE 11
## INSURANCE AND BONDS

1.   Contractor shall purchase and maintain at Contractor's sole cost and expense, the insurance indicated below issued by insurance companies licensed to do business in the Territory(s), State(s) or Province(s) where the Work is to be performed and having a minimum A.M. Best's rating of A-XII. Contractor shall furnish to Owner, in quadruplicate, certificates of such insurance policies, which certificates shall specify that such insurance will not be canceled or modified until at least thirty (30) days' written notice has been given to Owner. Such insurance (other than Worker's Compensation insurance) shall name Contractor, Owner, and all persons and entities that Contractor is required to indemnify pursuant to Article 3 above, and their respective agents, as additional insureds:

| FORM OF COVERAGE | LIMITS OF LIABILITY |
| --- | --- |
| Statutory Worker's Compensation and Employer's Liability for Contractor's USA employees | Workers' Compensation – jurisdictional limits. Employer's Liability – $1,000,000 each accident, each employee, each occupational disease, and in the policy aggregate. |
| Commercial General Liability, including Products and Completed Operations, contractual liability and Contractor's protective liability | Covering bodily injury (including personal injury) and property damage with a combined single limit of not less than $25,000,000 on a per occurrence/annual aggregate basis. |
| Automobile liability, including non-owned and hired car liability | Where compulsory & per local standard |
| Property insurance on an "all risk" or "special risk" form covering all property such as tools, equipment and machinery used by Contractor in the performance of the Work (whether owned, leased, rented or borrowed) and containing a waiver of subrogation in favor of the Additional Insureds | Replacement cost value |

2.   If the Work involves removal, abatement, encapsulation or other treatment, disposal or remediation of asbestos or other hazardous materials, Contractor shall also provide insurance applicable to such Work and operations with such coverages and in such amounts as may be required by Owner. No such Work shall be commenced until Owner has first received, reviewed and approved certificates of insurance evidencing such coverage. All policies of liability insurance required under the terms of this Article 11 shall be on an "occurrence" form, covering the full period when all Work required under this Agreement is to be provided. The liability policies maintained by the Contractor shall name Owner, ILG, Inc., any owner associations having an interest in the Project, the constituent partners of Owner and their respective partners, directors, officers, shareholders, employees, affiliates, subsidiaries, agents and representatives, as their interests may appear, as additional named insured ("Additional Insureds"), and shall contain a provision that coverage afforded under the policies will not be cancelled nor failed to be renewed without at least thirty (30) days' prior written notice given to the Owner. Contractor shall furnish to Owner, in duplicate, certificates of such insurance policies prior to the start of construction.

3.   Certificates of Insurance showing such coverages to be in force shall be filed with the Owner prior to the commencement of the Work and renewals furnished prior to expiration of any coverage herein. If the Contractor shall fail to deliver any required certificates of insurance to Owner within forty-eight (48) hours of demand, Owner may obtain such insurance and Contractor agrees to repay Owner on demand all amounts paid therefor, or Owner may deduct all payments made in procuring such insurance from any money due or to become due to Contractor under this Agreement. The limits of insurance required by this Article 11 may be provided by any combination of base policy coverage and associated excess coverage. The coverage limits required for Commercial General Liability may be satisfied through any combination of primary liability and umbrella liability policies, provided that if umbrella liability coverage is obtained, such umbrella limits must also be excess over the automobile liability and employers' liability policies required by this Agreement. Contractor may require each Subcontractor to procure and maintain such insurance as Contractor may direct. However, Contractor expressly acknowledges and agrees that the failure of Contractor to require any Subcontractor to procure or maintain (and/or the failure of any Subcontractor in fact to obtain) any insurance, or to do so in any amount or coverage, shall not in

**Contract No. WSJ-17016**

any way affect, reduce, relieve or diminish Contractor's responsibility or liability to Owner for the acts or omissions of Contractor or any Subcontractors in connection with the Work or the Contract Documents.

4.      Materials and other portions of the Work that are stored on or off the Site or are in transit are not covered under the Owner's property insurance and the Contractor shall maintain property insurance on all such items until such time as they are actually incorporated into, and a permanent part of, the Work. Contractor's and Subcontractors' owned and/or leased vehicles, equipment and materials will not be covered by Owner's property insurance. Any loss insured under this paragraph is to be adjusted with the Owner and made payable to the Owner as loss payee for the insured, as their interests may appear. The Contractor shall pay each Subcontractor a share proportionate to the loss incurred by each party of any insurance monies received by the Contractor, and Contractor shall ensure that each Subcontractor shall be required to make payments to their sub-Subcontractors in similar manner. The Owner shall deposit in a separate account any money so received, and shall distribute it in accordance with such agreement as the parties in interest may reach. If after such loss no other special agreement is made, replacement of damaged Work shall be covered by an appropriate Change Order. Contractor shall be responsible, at Contractor's sole cost and expense to procure any other insurance or any increase of the limits of liability required above which the Contractor deems necessary for Contractor's own protection, or on account of statute. The carrying of any insurance described herein shall in no way be interpreted as relieving the Contractor or any Subcontractor of any responsibility or liability under this Agreement, except to the extent of the waiver of subrogation contained in this Article 11 below.

5.      The Owner and the Contractor (and Contractor shall require that all Subcontractors) waive all rights against (1) each other and each other's Subcontractors, agents, officers, directors, shareholders and employees; (2) the Architect, and separate contractors, if any, and their subcontractors, sub-subcontractors, agents and employees; and (3) any other person or ~~entity using or occupying any portion of the Project with Owner's knowledge and consent for damage caused by fire or~~ other perils but only to the extent actually paid by insurance obtained pursuant to this Article 11 or any other property insurance applicable to the Work, except such rights as they may have to the proceeds of such insurance held by the Owner as loss payee. The foregoing waiver afforded the Architect, their agents and employees shall not extend to the liability of the Architect. The Owner or the Contractor, as appropriate, shall require of the Architect, separate contractors, and Subcontractors by appropriate agreements, written where legally required for validity, similar waivers each in favor of all other parties enumerated in this paragraph. The Owner and Contractor waive all rights against each other and the Subcontractors for loss or damage to any equipment used in connection with the Project but only to the extent actually paid by any property insurance applicable to this Agreement. The Contractor shall require similar waivers from all Subcontractors. If the policies of insurance referred to in this Section require an endorsement to provide for continued coverage where there is a waiver of subrogation, the holders of such policies will cause them to be so endorsed at their expense.

6.      The following sets forth the bonding requirements for this Agreement (select only one):

☐       A combined performance and payment bond is required.

☐       Separate performance and payment bonds are required.

☐       A performance bond only is required.

☐       A payment bond only is required.

☒       Neither a payment nor performance bond is required.

The penal sum for each bond required above shall be one hundred percent (100%) of the Contract Sum as established in this Agreement. Upon the request of any person or entity appearing to be a potential beneficiary of bonds covering payment of obligations arising under this Agreement, the Contractor shall promptly furnish a copy of the bonds or shall permit a copy to be made. All bonds shall be in such form and substance as is acceptable to the Owner.

**ARTICLE 12**
**UNCOVERING AND CORRECTION OF WORK**

1.      If a portion of the Work is covered contrary to the Owner's or Architect's request or any governmental authority's requirements, or to requirements specifically expressed in the Contract Documents, such Work must, if required in writing, be uncovered for observation and be replaced at the Contractor's expense without extension of the Completion Dates. If a portion of the Work has been covered which the Architect or Owner has not specifically requested to observe prior to such Work being covered, the Architect or Owner may request to see such Work and it shall be uncovered by the Contractor. If such Work is in accordance with the Contract Documents, costs of uncovering and replacement shall, by appropriate Change Order, be charged to the Owner. If such Work is not in accordance with the Contract Documents, the Contractor shall pay such costs unless the condition was caused by the Owner or a separate contractor in which event the Owner shall be responsible for payment of such costs. The Contractor shall promptly correct Work rejected (i) by any governmental authority or (ii) by the Architect or Owner as defective or failing to conform to the requirements of the Contract Documents, whether observed before or after Substantial Completion and whether or not fabricated, installed or completed. The Contractor shall bear costs of correcting such rejected Work, including additional testing and inspections and compensation for the Architect's services and expenses made necessary thereby. The Contractor shall remove from the Site portions of the Work which are defective or not in accordance with the requirements of the Contract Documents and are neither corrected by the Contractor nor accepted by the Owner. If the Owner prefers to accept Work which is defective or not in accordance with the requirements of the Contract Documents, the Owner may do so instead of requiring the removal and correction of such Work, in which case the Contract Sum will be reduced as appropriate. Such adjustment shall be effected whether or not Final Payment has been made.

2.      If, within one (1) year after the date of Substantial Completion of the Work or designated portion thereof, or after the date for commencement of warranties established under Article 9, or within such longer period of time as prescribed by law or by terms of an applicable special warranty required by the Contract Documents, any of the Work is found to be defective

**Contract No. WSJ-17016**

or not in accordance with the requirements of the Contract Documents, the Contractor shall correct such Work promptly after receipt of written notice from the Owner to do so unless the Owner has previously given the Contractor a written acceptance of such condition. This period of one (1) year shall be extended with respect to portions of the Work first performed after Substantial Completion by the period of time between Substantial Completion and the actual performance of the Work. This obligation under this paragraph shall survive acceptance of the Work and termination of this Agreement. The Owner shall give such notice promptly after discovery of the condition.

3.      If the Contractor fails to correct defective or nonconforming Work within fifteen (15) days following written notice from Owner to Contractor of such defective or nonconforming Work, the Owner may correct such Work in accordance with the provisions of this Agreement. If the Contractor does not proceed with correction of such defective or nonconforming Work within such time period or such longer reasonable time fixed by written notice from the Architect, the Owner may remove such Work and store the salvable materials or equipment at the Contractor's expense. If the Contractor does not pay costs of such removal and storage within ten (10) days after written notice, the Owner may upon ten (10) additional days' written notice sell such materials and equipment at auction or private sale and shall account for the proceeds thereof, after deducting costs and damages that should have been borne by the Contractor, including compensation for the Architect's services and expenses made necessary thereby. If such proceeds of sale do not cover costs which the Contractor should have borne, the Contract Sum shall be reduced by the deficiency. If payments then or thereafter due the Contractor are not sufficient to cover such amount, the Contractor shall pay the difference to the Owner. The Contractor shall bear the cost of correcting destroyed or damaged construction, whether completed or partially completed, of the Owner or separate contractors caused by the Contractor's correction or removal of Work which is defective or not in accordance with the requirements of the Contract Documents. Nothing contained in this paragraph shall be construed to establish a period of limitation with respect to other obligations which the Contractor might have under the Contract Documents. Establishment

correct the Work, and has no relationship to the time within which the obligation to comply with the Contract Documents may be sought to be enforced, nor to the time within which proceedings may be commenced to establish the Contractor's liability with respect to the Contractor's obligations other than specifically to correct the Work.

## ARTICLE 13
## MISCELLANEOUS PROVISIONS

1.      This Agreement shall be governed and construed in accordance with the laws of the State of New York. It is the express intent of the parties hereto that all suits or proceeding hereunder shall take place in a court of competent jurisdiction in the State of New York. Historical lack of enforcement of any requirement contained in the Contract Documents shall not constitute a waiver of the Contractor's responsibility for compliance with such requirement in a manner consistent with the Contract Documents unless and until the Contractor has received written consent for the waiver of such compliance from the Owner and the agency responsible for the enforcement thereof. Duties and obligations imposed by the Contract Documents and rights and remedies available thereunder shall be in addition to and not a limitation of duties, obligations, rights and remedies otherwise imposed or available by law. No action or failure to act by the Owner, Architect or Contractor shall constitute a waiver of a right or duty afforded them under the Contract, nor shall such action or failure to act constitute approval of or acquiescence in a breach thereunder, except as may be provided by the Contract Documents or specifically agreed in writing.

2.      The Owner and Contractor respectively bind themselves, their partners, successors, assigns and legal representatives to the other party hereto and to the partners, successors, assigns and legal representatives of such other party in respect to all covenants, agreements and obligations contained in the Contract Documents. However, Contractor shall not assign or transfer any interest in this Agreement without the written consent of the Owner. If Contractor attempts to make such an assignment without such consent, Contractor shall nevertheless remain legally responsible to Owner for all obligations under this Agreement. Owner shall have the right, in Owner's discretion, to assign and/or transfer Owner's interest in this Agreement to any person or entity either outright or as collateral security for a loan. Upon assumption of this Agreement by such person or entity, Owner shall have no further liability under this Agreement.

3.      Any notice required to be given hereunder shall be given in writing to the parties at the respective addresses hereinabove indicated and shall be deemed to have been given (i) when delivered by hand, (ii) when sent by first class registered or certified mail, postage prepaid, return receipt requested, or (iii) when sent by a nationally recognized overnight courier with written proof of delivery. Notices sent to the Owner shall also be copied to Vistana Signature Experiences, Inc., 9002 San Marco Court, Building 1000, Orlando, Florida 32819 (or fax 407-418-7850) attention General Counsel and attention Vice President – Acquisitions, Development & Construction.

4.      Tests, inspections and approvals of portions of the Work required by the Contract Documents or by-laws, ordinances, rules, regulations or orders of public authorities having jurisdiction shall be made at an appropriate time. Unless otherwise provided, the Contractor shall make arrangements for such tests, inspections and approvals with an independent testing laboratory or entity acceptable to the Owner, or with the appropriate public authority, and shall bear all related costs of tests, inspections and approvals. The Contractor shall give the Architect and Owner timely notice of when and where tests and inspections are to be made so the Architect and Owner may observe such procedures. The Owner, unless otherwise provided in this Agreement, shall bear costs of tests, inspections or approvals which do not become requirements until after bids are received or negotiations concluded. If the Architect, Owner or public authorities having jurisdiction determine that portions of the Work require additional testing, inspection or approval, the Architect will, upon written authorization from the Owner, instruct the Contractor to make arrangements for such additional testing, inspection or approval by an entity acceptable to the Owner, and the Contractor shall give timely notice to the Architect of when and where tests and inspections are to be made so the Architect may observe such procedures. The Owner shall bear such costs except that such procedures for testing, inspection or approval reveal failure of the portions of the Work to comply with requirements established by the Contract Documents, the Contractor shall bear all costs made necessary by such failure including those of repeated procedures and compensation for the Architect's services and expenses. Required certificates of testing, inspection or approval shall, unless otherwise required by the Contract Documents, be secured by

**Contract No. WSJ-17016**

the Contractor and promptly delivered to the Architect. If the Architect or the Owner wishes to observe tests, inspections or approvals required by the Contract Documents, they will do so promptly and, where practicable, at the normal place of testing. Tests or inspections conducted pursuant to the Contract Documents shall be made promptly to avoid unreasonable delay in the Work.

5.   This Agreement may be executed in any number of counterparts and by different parties in separate counterparts, each of which when so executed shall be deemed to be an original and all of which taken together shall constitute one and the same Agreement. Delivery by electronic transmission in portable document format (PDF) of an executed counterpart of this Agreement is as effective as delivery of an originally executed counterpart of this Agreement.

6.   The Parties agree that Project shall not use the services of an Architect or any associated Drawings or Specifications, and that all references to an Architect, Drawings or Specifications are to be ignored for the purposes of the enforcement of the terms of this Agreement.

## ARTICLE 14
## TERMINATION OR SUSPENSION OF THE CONTRACT

1.   This Agreement may be terminated by the Contractor only if the Owner fails to make payment to the Contractor, in such amounts as are required by this Agreement, within ten (10) days after such payment is due pursuant to this Agreement. In such event, the Contractor may, upon seven (7) days' written notice to the Owner, terminate the performance of Work under this Agreement. Unless such payment is thereafter received by the Contractor within such seven (7) day period,

terminates this Agreement, Contractor shall be entitled to compensation, pursuant to the provisions and subject to the limitations of this Agreement, only for the Work performed by Contractor up to and including the date of termination, plus the amount of the Contractor's fee earned pursuant to the terms of this Agreement as of the date of termination, all as determined by calculating that portion of the Contract Sum due to Contractor pursuant to this Agreement based on the stage of completion achieved by Contractor (overall and in each category of the Work, as applicable) as of the date of termination. Further, in such event, Contractor shall be entitled to reimbursement for the actual cost of materials ordered prior to the date of termination by Contractor, for use in connection with the Work, and necessary for the reasonable discharge of the Contractor's responsibilities under this Agreement, or, if applicable, cancellation charges for such materials and/or the discontinuation of rental equipment that is being rented from third-parties unaffiliated with the Contractor, to the extent such materials and/or rental equipment cannot be discontinued by the Contractor without cost or penalty upon notice of termination. In addition to the costs associated with those specific materials and rental equipment covered by the preceding sentence, the Owner will also be responsible, to reimburse the Contractor for any continuing contractual commitments to Subcontractors or penalties or damages for canceling such contractual commitments. No compensation shall be allowed to Contractor or its Subcontractors for anticipated or lost profit. The preceding sentence shall not limit the Contractor's ability to collect profits based on the work completed at the time of termination.

2.   The Owner may in one instance, with or without cause, suspend the Work for such period as the Owner may desire; provided, however, if such suspension would cause the Work not to be completed within 180 days of its initiation, such suspension will be for not less than one (1) year. Such period of suspension shall continue until terminated by the Owner by further written notice to the Contractor. The Contractor shall have the right to request in writing that the Owner terminate this Agreement after one (1) year if the total Work remains suspended for that duration. If any period of suspension ordered by Owner pursuant to this paragraph exceeds thirty (30) consecutive days, the Contractor may remove any of Contractor's personnel from the Project. In the event the Owner shall terminate the period of suspension after the Contractor has removed any of Contractor's personnel from the Project pursuant to this paragraph, such personnel, to the extent reasonably possible, shall be replaced with personnel of similar training and experience acceptable to the Owner. No action taken by the Owner hereunder shall affect any of the other rights or remedies of the Owner contained in this Agreement. An adjustment shall be made for increases in the cost of performance of the Work, including profit on the increased cost of performance, caused by any suspension ordered by the Owner pursuant to this paragraph which lasts more than thirty (30) consecutive days. However, no adjustment shall be made to the extent that performance is, was or would have been so suspended, delayed or interrupted by another cause for which the Contractor is responsible, or an equitable adjustment is made or denied under another provision of this Agreement.

3.   The Owner may terminate this Agreement with cause because of the negligence, errors, omissions or actions by Contractor in material breach of this Agreement, which material breach remains uncured as set forth below, or any circumstance in which the Contractor is insolvent or bankrupt or is otherwise unable to pay debts as they become due. A termination by the Owner for cause must specify the cause involved and will be effective fifteen (15) days after receipt of the Owner's notice of intent to terminate unless it is not reasonably possible to correct the cited cause within such fifteen (15) day period, in which event the termination will not be effective if the Contractor has commenced the correction of the cited cause within the fifteen (15) day period and thereafter continues to diligently pursue such correction to completion within a reasonable time period after receipt of the Owner's notice of intent to terminate (which time period shall not exceed forty five (45) days from the Owner's initial notice of termination), provided, however, that if the Contractor fails to commence and/or continue and/or complete the correction of the cited cause within such time periods, then the termination shall become effective immediately upon such failure. In the event the Owner terminates this Agreement for cause, the Contractor shall, subject to the limitations contained in Section 38 of Article 3, be liable to the Owner for all costs and damages actually incurred by the Owner as a result of the termination and/or the Contractor's material breach of contract (including reasonable attorneys' fees and court costs, the costs of completing the Contractor's Work as required by this Agreement and/or the Contract Documents, and the cost of any additional services required of the Architect as a result of the Contractor's fault or breach). After all such damages have been paid, the Contractor shall be entitled to the amount, if any, remaining due to the Contractor (after deducting such damages) for any Work performed by the Contractor up to and including the date of such termination (as determined by calculating that portion of the Contract Sum due to Contractor pursuant to this Agreement based on the stage of completion achieved by Contractor, overall and in each category of the Work as applicable, as of the date of termination). If such costs exceed the unpaid balance due to

**Contract No. WSJ-17016**

the Contractor, the Contractor shall be liable to the Owner for the difference.  A termination by Owner for cause which is later determined to be wrongful shall be considered a termination without cause pursuant to this Article 16 below.

4.       The Owner may also terminate this Agreement without cause, upon seven (7) days' written notice to the Contractor.  In the event the Owner terminates this Agreement without cause, the Contractor shall be entitled to compensation, pursuant to the provisions of and subject to the limitations set forth in this Agreement, only for the Work performed by the Contractor and accepted by the Owner, up to and including the date of termination, plus the amount of the Contractor's fee earned pursuant to the terms of this Agreement as of the date of termination, all as determined by calculating that portion of the Contract Sum due to Contractor pursuant to this Agreement based on the stage of completion achieved by the Contractor (overall and in each category of the Work, as applicable) as of the date of termination.  Further, in the event the Owner so terminates this Agreement, the Owner agrees to pay for the actual cost of  materials ordered prior to the date of termination by the Contractor, for use in connection with the Work and necessary for the reasonable discharge of the Contractor's responsibilities under this Agreement, or, if applicable, cancellation charges for such materials and/or the discontinuation of rental equipment that is being rented from third-parties unaffiliated with the Contractor, to the extent such materials and/or rental equipment cannot be discontinued by the Contractor without cost or penalty upon notice of termination.  In addition to costs associated with those specific materials and rental equipment covered by the preceding sentence, the Owner will be responsible to reimburse the Contractor for any continuing contractual commitments to Subcontractors or materialmen or penalties or damages for canceling such contractual commitments. No compensation shall be allowed to Contractor or any Subcontractors for anticipated or lost profit.

5.       If this Agreement is terminated pursuant to any of the foregoing provisions of this Article 16, then the Contractor shall (a) execute and deliver all such papers and take all such steps including the legal assignment of its contractual rights as the Owner may require for the purpose of fully vesting in the Owner the rights and benefits of the Contractor under such obligations and commitments and (b) account for and turn over to the Owner all Drawings and Specifications, correspondence, details, Shop Drawings, Samples and Product Data and such other Contract Documents, records and materials relating to the Project.  Compliance by the Contractor with the foregoing shall be a condition precedent to the Contractor's right to receive payment for termination in accordance with Article 16.  No termination by the Owner under this Article 16 (whether with or without cause) shall constitute a waiver or release of any claims by the Owner relating to events, circumstances or breaches arising prior to such termination, nor shall such termination affect any of the other rights or remedies of the Owner granted by this Agreement or by law, or relieve the Contractor from any consequences or liabilities arising from the Contractor's acts, omissions or deficiencies in connection with the Work or this Agreement. Neither the right of the Owner to terminate as provided in this Article 16 nor the agreement on the part of the Owner to pay any cost of the Work (for which Owner would not otherwise be obligated) incurred by reason of events within the control of the Contractor (including the negligent and/or willful act and/or omission of and/or default by any separate contractor employed directly by the Contractor) or incurred by reason of a default by the Contractor in the performance of its obligations hereunder shall impair or limit any rights, remedies and/or claims of the Owner to which the Owner may be entitled by reason of any such occurrence or default.  Payment by the Owner to the Contractor of any monies pursuant to this Article 16 shall not constitute a waiver of any remedies which the Owner may otherwise have against the Contractor for any failure of the Contractor to perform in accordance with this Agreement.

6.       The Contractor's sole remedy for any termination of this Agreement shall be the compensation allowed by the applicable provisions of this Article 16 above.  Any termination by the Owner for cause that is later determined to be unjustified shall be treated as a termination without cause pursuant to this Article 16.  In any such event the Contractor's sole and exclusive rights and remedies for any termination shall be limited to those set forth in this Article 16 above, and the Contractor shall be entitled to no additional compensation and shall have no additional or other rights of any kind, type or nature arising out of or under this Agreement by virtue of such termination; provided that Contractor will be able to recover reasonable attorneys' fees and court costs, if any.

**ARTICLE 16**
**SIGNATURES**

IN WITNESS WHEREOF, the parties hereto have executed this Agreement as of the day and year first above written.

OWNER:

By: _Mark Dunham_
DocuSigned by: Mark Dunham
800DFC4ABEF46B...
Mark Dunham
Vice President
Construction and Asset Management

By: _Denis Ebrill_
DocuSigned by: Denis Ebrill
C2255F0300F04B5...
Denis Ebrill
Senior Vice President
Acquisition, Development and Construction

By: _Sergio D. Rivera_
DocuSigned by: Sergio D. Rivera
25267B46489D455...
Sergio D. Rivera
President and CEO

CONTRACTOR:

By: _Joe Vasek_
DocuSigned by: Joe Vasek
396091A4B9904DC...

Printed Name: Joe Vasek

Title: Project Coordinator

**EXHIBIT A**
**SCOPE OF WORK DESCRIPTION, DRAWINGS, SPECIFICATIONS AND RELATED CLARIFICATIONS, QUALIFICATIONS AND EXCLUSIONS**

Provide all labor, materials and equipment necessary for emergency response, safety and restoration of the Common Areas and Public Space Buildings to pre-loss condition following damages sustained due to Hurricane Irma. Estimated costs are detailed in the Conceptual Repair Estimate is attached hereto as Exhibit A-1.

Drawings:  Restoration shall be in accordance with the Moisture Survey Report prepared by DBI Construction Consultants dated September 26, 2017 and the Renovations and Repairs to Public Buildings Construction Drawings and Specifications prepared by Coleman Partners Architects, LLC:  100% dated 12/6/2013, Revised 5/15/2014, and ASIs 1-50

Scope of Work:
This scope of work will be formulated in categories as follows:
- A.   Buildings under this Scope
- B.   Interior Building Repair
- C.   Exterior Building Repair
- D.   Grounds

General Items:

- Upon execution of this Agreement, Contractor will begin to mobilize staff, equipment, consumables and assets necessary for this project, and subject to the on-going crisis environment and availability of the airports, shipping lanes/ports and access to roads and drivers/transportation.
- Contractor will provide Consumables/Equipment/Materials to complete the rebuild process.
- Contractor's employees will sign safety sign-in sheet daily.
- Life, Health, Safety – Contractor will provide a safety coordinator and conduct safety meetings and assessments throughout the project.  On-site security will be provided by the Resort.
- Contractor proposes to run the crews on a 10-hour basis.
  Overall project staff will consist of:
  - (1) Project Coordinator (PC)
  - (1) Senior Project Manager (SPM)
  - (2) Project Managers (PM)
  - (6) Assistant Project Managers (APM)
  - (1) Health and Safety Officer
  - (1) General Admin
  - (40) Resort Labor
- Contractor to complete the rebuild in approximately 13 months from executed contract/permits
- Resort will assist Contractor with receiving and transporting of items from the airport and or sea port.
- Shift hours will be 7:00 am to 6:00 pm. Shift hours will vary depending on tasks to be performed.
- Photo documentation of structure and contents will be performed during the project.
- Select non-specialized labor will be provided by the Resort. Contractor will manage these employees as they

- Contractor agrees to use commercially reasonable efforts to utilize U.S. Virgin Island residents and/or subcontractors for the performance of the Work.

A.   Buildings to be completed under this scope of work
- Tennis Courts
- Swimming Pool & Deck
- Lobby
- Guard House & Gates
- Wastewater Treatment Facility
- Warehouse and All Cisterns
- Operations Center Mechanical Space
- Operations Building
- Executive Office
- Restrooms
- Kids Club
- Main Kitchen
- Sales Center

- Conference Center
- Workout Facility
- Engineering Laundry & Housekeeping Space
- Main Electrical Room – Transfer Switches & Distribution Switches
- Food & Beverage outlets
- Retail spaces
- Restoration of MDF and Telecom, CATV and IT Systems

B.  Interior Building Repair
- Replace Drywall on the walls and ceilings where removed during restoration phase as per DBI report
- Complete Interior Paint
- Replace trim and millwork that was removed during restoration
- Carpet/Flooring replacement where carpet and flooring was removed
- Replace Ceiling tile damaged from the storm
- Fire & Life safety systems test and repair/replacement
- Electrical Panel test and repair/replace
- Replace damaged windows
- Cabinetry replacement if needed
- Lighting and fixture replacement where damaged
- Electrical switch gear repaired or replaced as needed

C.  Exterior Building Repair
- Remove and Replace structural findings in accordance to engineer report
- Structures on property affected will be power washed and cleaned.
- Repair / Replace damaged soffit
- Paint exterior of buildings as prescribed by DBI report
- Roof repairs and replacement
- Gutter replacement if damaged or missing
- Replace signage where missing
- Chiller testing and repair or replacement
- Pump testing and repair or replacement
- Waste water treatment membrane evaluated and replaced if required
- Motors, Pumps, Transformers repaired or replaced if required

D.  Grounds
- Replace Signage where missing
- Pool & spa refinishing, heater and pump replacement as needed
- Restore Tennis Courts to previous condition including, surface, fencing, lighting. Repair to sub surface as
- Rail and fencing replacement where needed
- Replace sod and landscape damaged by hurricane
- Repair / Replacement to damaged site lighting and pole lighting
- Repairs to Concrete/Curb damaged during the storm or construction related activities

**Contract No. WSJ-17016**                                      **Exhibit A-1**

Vistana Signature Experiences
9002 San Marco Ct
Orlando, FL 32819



Westin St John
300A Chocolate Hole Dr
St John, USVI

### Conceptual Repair Estimate - Hurricane Irma Damage - Commons

| | | | | | | |
|---|---|---|---|---|---|---|
| **01  General Requirements** | | | | | | 1,435,750 |
| Debris Removal | Haul off | 120.00 | tn | 3,000 | 360,000 | |
| Permit | Permitting Requirements | 1.00 | ea | 150,000 | 150,000 | |
| Landscape | Commons Areas | 1.00 | ea | 925,750 | 925,750 | |
| | | | | | | |
| **02  Site Conditions** | | | | | | 86,300 |
| Structural | Engineering fees | 10,000.00 | sf | 5 | 50,000 | |
| Fencing | Tennis courts - vinyl coated, 12' | 660.00 | lf | 55 | 36,300 | |
| | | | | | | |
| **03  Concrete** | | | | | | 75,000 |
| Flatwork | Flatwork repairs | 4.00 | ea | 5,000 | 20,000 | |
| Curb | Curb repairs - concrete | 1.00 | ea | 55,000 | 55,000 | |
| | | | | | | |
| **04  Masonry** | | | | | | 280,000 |
| Stucco | Miscellaneous spot repairs | 20,000.00 | sf | 12 | 240,000 | |
| Stucco | Repair in place - large areas | 2.00 | sf | 20,000 | 40,000 | |
| | | | | | | |
| **05  Metals** | | | | | | - |
| | | | | | | |
| **06  Woods, Metals, & Composites** | | | | | | 937,500 |
| Rough Carpentry | Frame Lobby Roof | 12,500.00 | sf | 75 | 937,500 | |
| | | | | | | |
| **07  Thermal & Moisture Protection** | | | | | | 939,400 |
| Roof Systems | Pvc shake roof cover - Water Sports, Lobby | 18,500.00 | sf | 28 | 518,000 | |
| Roof Systems | Pvc shake roof repair | 3.00 | ea | 10,000 | 30,000 | |
| Roof Systems | R-panel - repair - Engineering | 1.00 | ea | 25,000 | 25,000 | |
| Roof Systems | EPDM repair - Conference Center | 800.00 | sf | 15 | 12,000 | |
| Roof Systems | Pvc shake roof system - Lobby | 12,500.00 | sf | 28 | 350,000 | |
| Gutters | Gutter System - Engineering | 200.00 | lf | 22 | 4,400 | |
| | | | | | | |
| **08  Door & Windows** | | | | | | 250,000 |
| Glass | Exterior Door/Window Pkg - Lobby | 1.00 | ls | 250,000 | 250,000 | |
| | | | | | | |
| **09  Finishes** | | | | | | 5,528,800 |
| Exterior | Paint - Lemongrass, Watersports & Lobby | 256,800.00 | sf | 4 | 898,800 | |
| Interior Finishes | Allowance for interior finishes - common areas | 40,000.00 | sf | 100 | 4,000,000 | |
| Interior Finishes | Allowance for interior finishes - Heart of House | 16,000.00 | sf | 30 | 480,000 | |
| Exterior | Curbs - Repaint | 100,000.00 | lf | 2 | 150,000 | |
| | | | | | | |
| **10  Specialties** | | | | | | 1,035,450 |
| Pool Area Finishes | Refinish main pool and associated arch details | 1.00 | ea | 522,200 | 522,200 | |
| Pool Area Finishes | Fountain re-finish | 1.00 | ea | 10,750 | 10,750 | |
| Tennis Courts | Playing surface | 13,500.00 | sf | 15 | 202,500 | |
| Architectural Features | Awnings | 1.00 | ls | 300,000 | 300,000 | |
| | | | | | | |
| **11  Equipment** | | | | | | - |
| | | | | | | |
| **12  Furnishings** | | | | | | 362,250 |
| Signage | Signage - fabricate & install | 1.00 | ea | 362,250 | 362,250 | |
| | | | | | | |
| **13  Special Construction** | | | | | | - |
| | | | | | | |
| **14  Conveying Equipment** | | | | | | - |
| | | | | | | |
| **22  Plumbing** | | | | | | 400,000 |
| Allowance | Repair as required | 1.00 | ls | 400,000 | 400,000 | |
| | | | | | | |
| **23  Mechanical** | | | | | | 2,000,000 |
| Allowance | Repair as required | 1.00 | ls | 2,000,000 | 2,000,000 | |
| | | | | | | |
| **26  Electrical** | | | | | | 2,000,000 |
| Allowance | Repair as required | 1.00 | ls | 2,000,000 | 2,000,000 | |

Contract No. WSJ-17016                                    Exhibit A-1

Vistana Signature Experiences
9002 San Marco Ct
Orlando, FL 32819



Westin St John
300A Chocolate Hole Dr
St John, USVI

Conceptual Repair Estimate - Hurricane Irma Damage - Commons

| | |
|---|---:|
| **Estimate Basis** | 15,330,450 |
| Overhead. 8% | 1,226,436 |
| Profit, 7% | 1,073,132 |
| Contingency, 5% | 766,523 |
| General Conditions, 10% | 1,839,654 |
| **Subtotal** | **20,236,194** |
| **Emergency/Restoration Services,** | |
| Estimated Amount, T&M Agreement | 7,085,252 |
| Taxes, Gross Receipts, 5% | 1.366.072 |
| Total | 28,687,518 |

Contract No. WSJ-17016

**EXHIBIT B**
**LIST OF OWNER'S CONSULTANTS**

Project Management:
Manhattan International Construction Company, LTD
6300 North Central Expressway
Dallas, Texas  77006

Contract No. WSJ-17016

## EXHIBIT C
## ALLOWANCES

N/A

Contract No. WSJ-17016

**EXHIBIT D**
**COMPLETION DATES**

December 31, 2018

**EXHIBIT E**
**RESPONSIBILITY MATRIX (OWNER SUPPLIED ITEMS)**

N/A

## EXHIBIT F
## HOUSE RULES

The following rules apply to Contractor and all Subcontractors, vendors and outside personnel working in or around the premises of the Site ("Construction Personnel").

1.  No Construction Personnel shall be allowed on guest occupied floors unless engaged in pre-scheduled activities.
2.  Construction Personnel are to eat, take breaks, change clothes and use restrooms etc. in designated areas only.
3.  Construction Personnel shall not be allowed in Owner's employee or guest designated areas. Use of the Employee Cafeteria is strictly forbidden.
4.  There is no on-site parking other than that provided for public use.
5.  Service elevator use will be scheduled with Owner for dedicated usage with 48 hours advance notification, or as available for Construction Personnel transportation.
6.  Construction Personnel are restricted from using guest elevators. Only service cars are to be utilized.
7.  There will be no use of Owner's employees or personnel or their tools, equipment or facilities during performance of the work.
8.  Trash shall be removed on a daily basis without use of Owner's facilities or the Site compactor. Site shall be left in broom swept condition. Absolutely no Site areas are to be used for storage of debris without prior consent from Owner.
9.  All temporary barriers and partitions will be placed in a safe workmanlike manner pursuant to industry practices. Any such work will take place after written notification and coordination with Owner or designated personnel. All temporary barriers are to be taped, spackled and painted unless wallcovering is specifically noted.
10. Provide temporary signage and lighting as required where public space is affected.
11. Life safety systems will be maintained in an operating condition at all times unless specific shut-downs are pre-scheduled.
12. A shutdown of any building service must be scheduled a minimum of 48 hours in advance. Shutdown of any major building services will be scheduled at the discretion of the Owner and only after sufficient advance notice.
13. All Construction Personnel will wear suitable identification, i.e., badge while on premises. Access and egress to and from the Site shall be through the security checkpoint only.
14. Absolutely no radio playing is permitted on the worksite.
15. The Contractor shall protect and secure its materials and equipment against loss by theft or otherwise. The Owner will not accept any claim for money or delay in time of completion due to alleged theft of materials or equipment from the jobsite unless such loss is due to Owner's sole negligence.
16. Alcoholic beverages, narcotics or cigarette smoking are absolutely prohibited on the premises at all times. Failure to comply with this rule will result in immediate dismissal.
17. Any work in public/guest areas will require strict supervision to assure that absolutely no guest interference will occur. Contractor assumes full responsibility for this supervision.
18. Use of chemicals related to job performance must be reported to the Owner prior to use. Use of such chemicals must be in strict compliance with OSHA standards and all other applicable laws.
19. A Hot Work Permit must be completed and delivered to the Owner's Risk Management Department prior to any soldering.
20. Damage to the Site including carpet and pad, wallcovering, softgoods, casegoods, hardware, electronics, electrical fixtures, switchplates, bathroom fixtures and accessories and any sundry items will be the responsibility of the Contractor.
21. Any wet work such as tile installation will be conducted only after proper protection of adjacent areas. Contractor is responsible for returning all areas to their proper condition upon completion.
22. On-Site storage facilities will not be automatically available. Where facilities are provided, Contractor is responsible for maintaining them in a clean fashion and returning them in like condition. Keys issued for such areas are the property of the Owner and must be returned daily.
23. Contractor is responsible for scheduling all deliveries of materials 48 hours in advance. Receipt and transport of all such materials are the responsibility of Contractor. None of Owner's employees or personnel will be utilized for these purposes.
24. Contractor bears full responsibility for protection and daily cleanup of the work area. Any Construction Personnel who fails to protect the Site, clean the premises or properly remove Project-related debris at the end of each workday or as scheduled, will be subject to a backcharge should Owner's employees or personnel perform this service.
25. Use of service elevator for movement of equipment must be properly supervised by Contractor's management personnel. Should any damage occur, Contractor is strictly responsible for restoration of the car.
26. Use of a dedicated elevator for movement of material and/or personnel will be provided only to the extent necessary for the Project and prior approval is provided by Owner. Contractor is solely responsible for scheduling such supervision and providing any related insurance requirements.
27. Unauthorized removal of any existing property at the Site by any Construction Personnel is strictly forbidden and will result in immediate dismissal.
28. Unauthorized entry into the Site will result in immediate dismissal.
29. Contractor shall provide a discrimination and harassment free work environment.
30. Construction Personnel are prohibited from taking pictures of the Site and are prohibited from publicizing, emailing, distributing, or otherwise posting pictures of the Site on the internet, including on social media sites like Facebook, Twitter, Pinterest, and the like.

It is the Contractor's responsibility to provide these house rules to all of Contractor's employees and to all Subcontractors and all other Construction Personnel. Each of these work rules will be strictly enforced and the Contractor held liable for the failure to comply by those in his employ.

**Contract No. WSJ-17016**                                   **Exhibit G**

\*\*  T&M Rates apply only to restoration portion scope of work.





**I.  Personnel Labor Rates:**

*These rates apply to personnel engaged to fulfill the terms of the contract, whether regular full time employees of Cotton International, Inc. ("Cotton International"), temporary hires employed directly by Cotton International or personnel secured through subcontracted labor. Rates stated below are per person per hour.*

**A.**

| CLASSIFICATION - Restoration | HOURLY RATES | CLASSIFICATION - Specialty | HOURLY RATES |
|---|---|---|---|
| Project Consultant (PCS) | $180.00 | Electrician (E) | $125.00 |
| Project Coordinator (PC) | $150.00 | Biohazard, Trauma, Forensic Supervisor (BTFS) | $105.00 |
| Project Manager (PM) | $108.00 | Health & Safety Officer (HSO) | $108.00 |
| Project Accountant (PA) | $95.00 | Biohazard, Trauma, Forensic Technician (BTFT) | $75.00 |
| Drying/Equipment Technician (DET) | $78.00 | Certified Asbestos/Lead Supervisor (AS) | $78.00 |
| Resource Coordinator (RC) | $82.50 | Carpenter (CPT) | $70.00 |
| Project Administrative (PAA) | $63.50 | Painter (P) | $68.00 |
| Restoration Supervisor (RS) | $65.00 | Drywall (D) | $68.00 |
| Restoration Technician (RT) | $44.00 | Roofer (R) | $68.00 |
| General Labor  (GL) | $35.50 | Asbestos Technician/Worker (AT) | $54.00 |
| | | Mold Remediation Worker (MRW) | $48.00 |

Management Fee ( Management of Customer Labor Force)$10.00 per hour / man

**B.    Labor Considerations/ Provisions:**

1.  *All scheduled rates are per the first 40 hours worked in a week, based on a seven (7) day work week (Monday-Sunday).  All hours worked in excess of 40 hours in a week will be billed at (1.5) times the normal rate schedule.  Commencement of any new project Friday after 5:00PM are subject to 1.5 times normal rates.*

2.  *All holidays recognized by Cotton International, Inc ("Cotton International") will be billed at (2) times the normal billing rates.  Recognized New Years, Good Friday, Memorial Day, Independence Day, Labor Day, Thanksgiving, Christmas Eve, and Christmas.*

3.  *Cotton International response personnel who are placed on stand-by by the Client, either on site or at an offsite location, who remain dedicated exclusively to the Client, will be billed at full rates for a minimum of eight (8) hours per day.  Full per diem rates will also be billed Friday after 5:00PM are subject to 1.5 times normal rates.*

4.  *Travel time for personnel shall be billed to the contract at the scheduled rates.  Project Consultants will be billed at 1/2 their rate.*

5.  *The scheduled rates and provisions in exhibit A ( Rate Schedule), take into account Cotton International's standard wage rates and overtime compensation practices paid to project workers.  To the extent the work under a particular contract is subject to Federal and State prevailing wage laws, Davis-Bacon Wages Act, collective bargaining agreements or labor shortage, which could exceed or would modify Cotton International standard rates and practices.  Cotton International will have the option to make adjustments in the hourly rates and other provision above or invoice all wages at cost plus 30% on any and all of the classifications listed above.*

6.  *Cotton International reserves the right to mobilize one or more qualified safety officers to any emergency response project to oversee site safety.  The quantity of safety officers mobilized to a project will be dependent on the scope of work to be performed and the necessity for safety personnel in each work location or zone.  Safety officers will remain on site and work with response personnel for the duration of the project or until is mutually agreed upon by Cotton International Management and authorized Client Representatives that these services are no longer required.*

7.  *Under certain circumstances, Cotton International may need to engage additional personnel in the categories listed above.  If the cost for this personnel exceeds our listed price, Cotton will charge the cost plus 30%.*

*Customer Initials:_____     Cotton Initials:_____*

**Contract No. WSJ-17016**          **Exhibit G**

<div align="right">

**Exhibit A**
**Rate Schedule (cont.)**

</div>

## II. DOCUMENT RESTORATION SERVICES

Document drying costs will be determined per job for the following factors:

Nature of Damage
Moisture Saturation
Degree of Char/Soot Residue
Mold/Mildew/Infestation
Smoke Odor
Deodorization Requirements
Contamination Factors include Debris, Sewage,
and/or Hazardous Materials

Document Remediation Provision.

Labor, equipment, materials and other costs incurred in connection with document remediation
will be billed in accordance with the appropriate schedules and provisions contained in the exhibit

## III. EXPENSES/REIMBURSABLE

### A. SUBCONTRACT/SPECIALTY WORK:

If a specific need for a particular trade or service, which Cotton International does not provide or is unable to provide, for the
project, the amount invoiced will be billed at cost plus 15% overhead and 10% profit.

### B. TRAVEL, LODGING AND PER DIEM

Cotton International shall be compensated for costs incurred for travel, lodging and per diem costs ("Incidental Costs") for all
workers assigned to the project. All Incidental Costs will be billed at actual cost plus 15% overhead and 10% profit added.
If actual costs cannot be determined for any reason, such Incidental Costs shall be determined in accordance with the
rates set by the United States General Services Administration plus 15% overhead and 10% profit added.
Standard Per Diem reimbursement is $40.00. Due to regional costs, there will be a $55.00 per diem rate paid to employees
for the following locations but not limited to: New York, New Jersey, Connecticut, Rhode Island, Massachusetts, New Hampshire,
California, Maine, and metro areas of Chicago, Cleveland, Detroit, Lansing, Philadelphia, Toledo, and Pittsburgh.

### C. FREIGHT/TRANSPORTATION FEE'S

Cotton International shall be compensated for costs incurred for the transportation of equipment and materials to the site of
work and for the transportation back of equipment and any remaining supplies and materials, upon completion of the
work. All such costs shall be billed at actual cost plus 15% overhead and 10% profit mark-up thereon.

### D. TAXES AND PERMITS

The rates contained in this schedule are exclusive of federal, state and local sales, use, goods, services or excise taxes
("Taxes") and any applicable federal, state or local approval, consent, permit, license, contribution, duty and/or order fees
("Fees") incidental to the performance of the work. Cotton International shall be reimbursed for all such Taxes and Fees
incurred with respect to the project.

### E. INDIRECT COSTS

Cotton International will have the option ( but not obligation) during a declared State of Emergency (including natural disasters
such as hurricanes, tornadoes, floods etc.) whether pending or existing, to pass onto our customer all indirect costs
associated with mobilization and management of the related recovery services, an amount not to exceed 7.5% of all
labor, equipment and consumables on each and every job managed by Cotton International under these circumstances.

<div align="right">

Customer Initials:_____   Cotton Initials:_____

</div>

Contract No. WSJ-17016                                    **Exhibit G**

EXHIBIT A
Rate Schedule (cont.)

| Equipment Description | Unit | Daily | Equipment Description | Unit | Daily |
|---|---|---|---|---|---|
| Air Compressor | Ea | $ 35.00 | Pump, Sump (2" or less Electric) | Ea | $ 28.00 |
| Barricade Fencing (One Time Charge) | Ft | $ 0.65 | Pump, Submersible (3" Electric) | Ea | $ 248.00 |
| Blower (Gas Powered) | Ea | $ 25.00 | Pump, Trash (3" or Less) | Ea | $ 95.00 |
| Cart, Tilt / Demolition | Ea | $ 24.00 | Radio, 2 way – Job site comm. | Ea | $ 24.00 |
| Chainsaw | Ea | $ 35.00 | Respirator Protection (Half/Full Face) | Ea | $ 16.50 |
| Electrical Dist. Panel (Spider Box) | Ea | $ 45.00 | Rubber Boots | Ea | $ 3.25 |
| Extraction Unit (Carpet Cleaning) | Ea | $ 200.00 | Saw - Kett | Ea | $ 48.00 |
| Extraction Unit (Electric) | Ea | $ 175.00 | Shower Kit for Decontamination Chamber | Ea | $ 135.00 |
| Extraction Unit (Gas Powered) | Ea | $ 450.00 | Skid Steer | Ea | $ 325.00 |
| Extraction Unit, Portable (Gas Powered) | Ea | $ 300.00 | Sprayer, Airless | Ea | $ 188.00 |
| Eye Wash Station | Ea | $ 25.00 | Sprayer, Pump | Ea | $ 8.00 |
| Fall Protection (harness w/anyard and life line, excludes pulley) | Ea | $ 26.00 | Trailer - Flatbed, Cargo, Reefer | Ea | $ 150.00 |
| Flex Duct (Includes T's and Y's) | Ft | $ 1.00 | Trailer - Command - AC/Generator included | Ea | $ 475.00 |
| Fogger, Thermal (Gas Powered) | Ea | $ 95.00 | Trailer - Fuel (refueling trailer) | Ea | $ 375.00 |
| Fogger, ULV / Thermal (Electric) | Ea | $ 25.00 | Trash Can | Ea | $ 7.00 |
| Four Gas Meter | Ea | $ 79.50 | Truck - (Bobtail/Box Truck) | Ea | $ 150.00 |
| Fuel Cell/Tank (Truck Mounted or Stand Alone) | Ea | $ 85.00 | Truck - Pulling/Tractor | Ea | $ 195.00 |
| Gang Box(Misc. Power Tools) | Ea | $ 65.00 | Transportation Bus | Ea | $ 500.00 |
| Generator (less than 10 kw) | Ea | $ 125.00 | Vacuum, Anti-Static | Ea | $ 65.00 |
| Generator 60 kw | Ea | $ 425.00 | Vacuum, HEPA | Ea | $ 50.00 |
| HEPA Filtration Unit / Air Scrubber | Ea | $ 125.00 | Vacuum, Wet/Dry | Ea | $ 25.00 |
| HVAC Diesel Duct Cleaning Truck | Ea | $ 450.00 | Van, Cargo/Passenger | Ea | $ 125.00 |
| HVAC Negative Air Machine | Ea | $ 125.00 | Vehicle, Truck/Car | Ea | $ 95.00 |
| HVAC Air Tool Kit | Ea | $ 30.00 | Washer, High Pressure (Cold) | Ea | $ 95.00 |
| HVAC Cutting Spray Kit | Ea | $ 30.00 | Washer, High Pressure (Hot) | Ea | $ 195.00 |
| HVAC Duct Auger | Ea | $ 95.00 | | | |
| HVAC Duct Sweeper | Ea | $ 80.00 | **Drying Equipment Description** | **Unit** | **Daily** |
| HVAC Pin Welder | Ea | $ 75.00 | Air Mover | Ea | $ 28.80 |
| Hydroxyl Deodorization Machine | Ea | $ 200.00 | Axial Fan | Ea | $ 33.60 |
| Ladder(Less than 12') | Ea | $ 7.00 | Air Mover, Wall Injection | Ea | $ 33.00 |
| Ladder(Greater or Equal to 12') | Ea | $ 11.00 | Injection Drying Machine/Manifold | Ea | $ 174.00 |
| Lumber - 2" x 4" (One Time Charge) | Ft. | $ 0.95 | Refrigerant DH Unit - Dri-Eaz 1200 | Ea | $ 108.00 |
| Lumber - Plywood 1/2" (4' x 8' sheet)(One Time Charge) | Ea | $ 35.00 | Refrigerant DH Unit - Dri-Eaz 2000 - 2400 | Ea | $ 180.00 |
| Lumber - Plywood 3/4" (4' x 8' sheet)(One Time Charge) | Ea | $ 65.00 | Refrigerant DH Unit - Phoenix 200 - 250 | Ea | $ 150.00 |
| Light, Demo / Drop / Stand / String | Ea | $ 25.00 | Refrigerant DH Unit - Phoenix 300 | Ea | $ 210.00 |
| Manometer, Recording Differential Pressure | Ea | $ 40.00 | Desiccant DH Unit - 750cfm | Ea | $ 510.00 |
| Moisture Survey - IR Camera | Ea | $ 125.00 | Desiccant DH Unit - 4500-6000cfm | Ea | $ 1,752.00 |
| Moisture Survey - Moisture Meter | Ea | $ 25.00 | Desiccant DH Unit - 9000-10000cfm | Ea | $ 2,856.00 |
| Onsite transportation | Ea | $ 35.00 | Desiccant DH Unit - 12000cfm | Ea | $ 3,420.00 |
| Ozone Generator | Ea | $ 120.00 | Desiccant DH Unit - 15000cfm | Ea | $ 4,620.00 |
| Particle Counter | Ea | $ 225.00 | DX Unit 1-2 ton - Portable | Ea | $ 270.00 |
| PPE Package A (3 or less) | Ea | $ 9.00 | DX Unit 20/25 ton | Ea | $ 1,234.80 |
| PPE Package B (4 or more) | Ea | $ 15.50 | | | |

1. **Daily Rate Calculation**
   For equipment listed above, the calculation of the number of days is based on a starting date when the equipment leaves Cotton International's warehouse and an ending date when the equipment is returned to Cotton International's warehouse.

**Equipment Rental Considerations:**

1. **Unscheduled Rental Equipment**
   For equipment not listed that is rented for the project by Cotton International the rate invoiced to the Customer will be the rate charged to Cotton International plus 15% overhead and 10% profit.

2. **Unscheduled Purchased Equipment**
   If special equipment not listed above is purchased for the project, the daily rental will be 10% of the purchase price.

3. **Scheduled Rental Equipment**
   Under certain circumstances, Cotton International may need to rent equipment listed on the Rate Schedule. If the rental for this equipment exceeds our listed price, Cotton International will charge the rental rate plus 15% overhead and 10% profit.

4. **Cotton USA Supplied Small Tools Charge**
   Small Tools usage will be calculated at 3% of total labor.

5. **PPE Package**
   Three or more of the following items must be used to warrant charge per day, per person: Hard Hat, Safety Glasses, Face Shield, Back Brace, Knee Brace, Rubber/Work Boots, Chainsaw Chaps, Ear Protection or Safety Vest.

6. **Calculation of Rental Days**
   The calculation of the number of rental days for items sourced from a third party is based on a starting date when Cotton International "takes possession" of the sourced item, pursuant to its contract with the third party, and an ending date when Cotton International "surrenders possession" of the sourced item, pursuant to its contract with the third party. Cotton International shall promptly place sourced items into use and shall promptly return sourced items, subject to reasonable delays.

*Customer Initials:_____    Cotton Initials:_____*

Contract No. WSJ-17016                                          **Exhibit G**

Exhibit A
Rate Schedule (cont.)

**Consumables**

| Chemical Description | Unit | Rate | Material Description | Unit | Rate |
|---|---|---|---|---|---|
| Alcohol, Isopropyl | Gal | $ 55.21 | Ducting, 20" Lay flat (6 mil) | Ft | $ 1.50 |
| Carpet, Cleaner | Gal | $ 21.63 | Ducting, 18" Lay flat (6 mil) | Ft | $ 1.25 |
| Carpet, Defoamer | Gal | $ 21.63 | Ducting, 12" Lay flat (6 mil) | Ft | $ 1.00 |
| Carpet, Deodorizer | Gal | $ 21.63 | Ducting, 8" Lay flat (6 mil) | Ft | $ 0.75 |
| Cleaner, Glass | Gal | $ 17.21 | Filter, HEPA for Hepa Vacuum | Ea | $ 357.23 |
| Cleaner, Glass Spray | Ea | $ 10.85 | Filter, Blue paper collection bag | Ea | $ 5.25 |
| Degreaser | Gal | $ 31.34 | Filter, Rolled Material | Sf | $ 3.22 |
| Deodorizing Block | Ea | $ 7.10 | Filter, Pleated for Neg Air Machine | Ea | $ 7.45 |
| Deodorizing Gel | Ea | $ 69.28 | Filter, Pre Filter for Neg Air Machine | Ea | $ 2.15 |
| Deodorizing Liquid | Gal | $ 62.79 | Filter, Charcoal for Neg Air Machine | Ea | $ 28.69 |
| Deodorizing Odor Crystals | Gal | $ 84.44 | Filter, HEPA for Neg Air Machine | Ea | $ 231.66 |
| Disinfectant / Biocide | Gal | $ 60.95 | Filter, Pleated for Phoenix 200 | Ea | $ 7.40 |
| Disinfectant / Biocide Tablet | Ea | $ 1.29 | Filter, Pleated for Phoenix 300 | Ea | $ 16.24 |
| Disinfectant / Bleach | Gal | $ 5.52 | Furniture Blocks | Bx | $ 73.61 |
| Remover - Adhesive | Gal | $ 78.59 | Furniture Pads | Bx | $ 126.65 |
| Remover - Goof Off | Ea | $ 29.59 | Gloves, Cut Resistant | Pr | $ 14.51 |
| Remover - Mastic (Odorless) | Gal | $ 29.82 | Gloves, Surgical Latex | Bx | $ 10.86 |
| Thermo Fog | Gal | $ 129.90 | Gloves, Work / Rubber  / Leather | Pr | $ 3.57 |
| Furniture Polish | Ea | $ 10.55 | Hog Rings | Bx | $ 36.26 |
| *Lubricant, Machinery* | | | Inventory Tags | Bx | $ 46.55 |
| Preserver - Light | Gal | $ 49.15 | Mop Heads | Ea | $ 8.40 |
| Long Term Preserver - Heavy | Gal | $ 61.05 | Plastic Sheeting (20' x 100') 6 mil | Rl | $ 151.55 |
| Stainless Steel Cleaner | Ea | $ 15.98 | Plastic Sheeting (20' x 100') 4 mil | Rl | $ 106.58 |
| Sealant - Encapsulant, Asbestos | Gal | $ 16.67 | Plastic Sheeting (20' x 100') - 6 mil FR | Rl | $ 205.68 |
| Sealant - Encapsulant, Duct | Gal | $ 84.44 | Painters Plastic (.75 mil) | Rl | $ 47.63 |
| Sealant - Encapsulant, Odor | Gal | $ 64.80 | PH Quick Test Strips (100 per pack) | Pkg | $ 31.72 |
| Sealant - Encapsulant, Antifungal | Gal | $ 121.24 | Respirator Cartridge | Ea | $ 21.54 |
| Spray Adhesive | Ea | $ 5.95 | Scrub pads 6 X 9 (20 per box) | Bx | $ 42.76 |
| *HVAC* | | | Sleeves, Cut Resistant | Pr | $ 10.15 |
| Cleaner, HVAC Coil | Gal | $ 64.41 | Sponges, Soot Removal | Ea | $ 2.25 |
| Lock Tight / Air Lock (grey) | 1/2 Gal | $ 44.92 | Spray Bottle w/ Trigger | Ea | $ 3.90 |
| Pre - Filter for HVAC Negative Air Machine | Ea | $ 27.93 | Sticky Mats 18" x 36" (30 Pads) | Ea | $ 27.20 |
| Cube(Secondary) Filter for HVAC Negative Air Machine | Ea | $ 68.20 | Tape, Asbestos(Danger) | Rl | $ 20.57 |
| 18" x 18" Precut Sheet Metal | Ea | $ 15.16 | Tape, Caution | Rl | $ 14.07 |
| | | | Tape, Duct(Teal) | Rl | $ 11.73 |
| **Material Description** | **Unit** | **Rate** | Tape, Duct(Grey) | Rl | $ 7.51 |
| Bags, Trash | Rl | $ 32.31 | Tape, Double Sided (Containment) | Rl | $ 34.64 |
| Bags, Trash Environmental - 6ml | Rl | $ 151.01 | Tape, Blue / painters | Rl | $ 13.53 |
| Bags, Glove 44" x 60" | Ea | $ 14.33 | Tape, HVAC (Aluminum) | Rl | $ 28.69 |
| Bags, Glove 60" x 72" | Ea | $ 23.82 | Tape, Box (Clear) | Rl | $ 5.41 |
| Bags, Glove 66" x 84" | Ea | $ 43.85 | Tape, Box (Brown) | Rl | $ 18.54 |
| Box, Book / Freeze Dry | Ea | $ 3.25 | Tarps | Sf | $ 0.26 |
| Box, Dish Pack | Ea | $ 6.25 | Tyvek Suits - General / Mold | Ea | $ 6.83 |
| Carpet mask 36" x 500' | Rl | $ 255.36 | Tyvek Suits - Chemical / Forensic | Ea | $ 13.93 |
| Paper, Corrugated | Rl | $ 131.74 | Wipes, Cotton Cloth | Lb | $ 4.00 |
| Brush, Wire | Ea | $ 4.55 | Wipes, Kitchen Towel | Lb | $ 5.22 |
| Brush, Grout | Ea | $ 5.19 | Wiper Lint Free / Anti Static | Lb | $ 5.19 |
| Brush, Long Handle / Scrub | Ea | $ 11.58 | Wrap, Bubble / Anti Static(Small) | Rl | $ 256.55 |
| Disposable Decontamination Chamber, Single/Dual Room | Ea | $ 192.33 | Wrap, Bubble / Anti Static(Large) | Rl | $ 99.37 |
| Disposable Decontamination Chamber, Three Room | Ea | $ 411.35 | Wrap, Shrink | Rl | $ 37.56 |
| Dust Mask | Ea | $ 3.25 | Zippers | Ea | $ 12.75 |

**Material Rate Considerations:**

1. Unscheduled Materials

   For materials not listed above, that are purchased for the project by Cotton International, the rate invoiced to the Customer will be the rate charged to Cotton International plus 15% overhead and ~~10%~~ profit.

*Customer Initials:_____*     *Cotton Initials:_____*

Rev. 1 - Feb, 2016