# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| COTTON INTERNATIONAL, INC.,<br><br>     Plaintiff,<br><br>v.<br><br>WESTIN ST. JOHN HOTEL CO., INC., BAY VISTA OWNERS ASSOCIATION, INC., SUNSET BAY CONDOMINIUM ASSOCIATION, LLC, SUNSET BAY VACATION OWNERS ASSOCIATION, LLC, VISTANA SIGNATURE EXPERIENCES, INC., MARRIOTT VACATIONS WORLDWIDE CORPORATION, and WESTIN VACATION MANAGEMENT COMPANY,<br><br>     Defendants. | Civ. No.: 1:21-cv-2099-JGK |

**REPLY MEMORANDUM OF LAW IN FURTHER SUPPORT OF DEFENDANTS WESTIN ST. JOHN HOTEL CO., INC.'S, VISTANA SIGNATURE EXPERIENCES, INC.'S, MARRIOTT VACATIONS WORLDWIDE CORPORATION'S, and WESTIN VACATION MANAGEMENT <u>COMPANY'S MOTION TO DISMISS THE FIRST AMENDED COMPLAINT</u>**

               **FOLEY & LARDNER LLP**

               Todd C. Norbitz
               Benjamin I. Bassoff
               90 Park Avenue
               New York, New York 10016
               Tel: (212) 682-3406
               tnorbitz@foley.com
               bbassoff@foley.com

               *Attorneys for Defendants Westin St. John Hotel*
               *Co., Inc., Vistana Signature Experiences, Inc.,*
               *Marriott Vacations Worldwide Corporation,*
               *and Westin Vacation Management Company*

# TABLE OF CONTENTS

I.    ARGUMENT .................................................................................................................. 4

    A.  The First Amended Complaint Fails to State a Breach of Contract Claim Against the Non-Contracting Parties ....................................................................... 4

    B.  The First Amended Complaint Should be Dismissed as to Defendant WSJ to the Extent that it Asserts WSJ Breached Contracts to Which it is Not a Party ....................................................................................................................... 10

II.   CONCLUSION ........................................................................................................... 11

# **TABLE OF AUTHORITIES**

**Page(s)**

**Cases**

*Ashcroft v. Iqbal*,
    556 U.S. 662 (2009) ................................................................................................................7

*Capricorn Investors III, L.P. v. Coolbrands Int'l, Inc.*,
    24 Misc. 3d 1224(A), (Sup. Ct. N.Y. Cnty.), *aff'd,* 66 A.D.3d 409 (1st Dep't
    2009) ......................................................................................................................................5

*Dember Constr. Corp. v. Staten Island Mall*,
    56 A.D.2d 768 (1st Dep't 1977) .........................................................................................5, 9

*Jennings v. Hunt Cos., Inc.*,
    367 F. Supp. 3d 66 (S.D.N.Y. 2019) .......................................................................................9

*Mercator Corp. v. Sapinda Holding B.V.*,
    2016 WL 6683505 (S.D.N.Y. Nov. 14, 2016) ........................................................................8

*Powerbox (USA), Inc. v. Honeywell Int'l, Inc.*,
    2020 WL 6151491 (S.D.N.Y. Oct. 20, 2020) ......................................................................5, 9

*Primiano Elec. Co. v. HTS-NY, LLC*,
    2018 WL 3659557 (N.Y. Sup. Ct. Aug. 01, 2018), *modified in part*, 173
    A.D.3d 620 (1st Dep't 2019) ..................................................................................................9

*Roldan v. Second Dev. Services, Inc.*,
    2018 WL 1701938 (E.D.N.Y. Mar. 30, 2018) ......................................................................6, 9

*Rus, Inc. v. Bay Indus., Inc.*,
    322 F. Supp. 2d 302 (S.D.N.Y. 2003) .....................................................................................6

*Silverberg v. SML Acquisition LLC*,
    2017 WL 758520 (S.D.N.Y. Feb. 27, 2017) ...........................................................................8

*TransformaCon, Inc. v. Vista Equity Partners, Inc.*,
    2015 WL 4461769 (S.D.N.Y. July 21, 2015) .........................................................................9

*Wiederman v. Spark Energy, Inc.*,
    2020 WL 3965258 (S.D.N.Y. Mar. 9, 2020) ..........................................................................4

Cotton[1] acknowledges that it entered into six separate construction Contracts that are countersigned by the denominated property "Owners" at the Resort. Cotton further alleges that each Owner breached its respective construction Contract, and that each such Owner is responsible for damages.

Despite asserting a contract claim against the actual Owners who entered into these agreements, Cotton now seeks by the FAC to make the non-signatory Defendants (Marriott, Vistana, and Westin Management) also liable for the alleged breach of these very same Contracts and responsible for the total amount of damages. Why is Cotton asserting this entirely untenable claim? In its opposition papers, Cotton explains why – it wants the Court to condone an extra-contractual insurance policy so that Cotton can be assured to collect the full value of its alleged damages from whatever corporate entity it can come up with. (Opposition Brief ["Opp. Br."] at 8, ECF No. 76 [". . . Cotton does not want its $5.2 million receivable to become a hot potato tossed from defendant to defendant. Denying the Motion would help prevent that result."].)[2]

Nothing raised in Cotton's opposition papers supports its gambit to make new law and impute contract liability to non-contracting parties Marriott, Vistana and Westin Management

---

[1] All defined terms used herein have the same meanings ascribed to them in the moving Defendants' opening brief in support of their Motion to Dismiss ("Def. Br.," ECF No. 73).

[2] Cotton's opposition papers also contain extraneous material pertaining to the underlying merits of its claim – namely, whether the Contracts required the Owners to reimburse Cotton for the GRT as part of the "Contract Sum." (*See* Opp. Br. at 3-4.) This is irrelevant to the narrow issue of whether contract liability may be imputed to non-contracting parties – the focus of the Motion – and the Court should disregard it. In any event, the moving Defendants disagree with Cotton's interpretation of the Contracts, which state that *Cotton* bears responsibility for payment of taxes in connection with the Restoration Project. (*See* WSJ Contract, Art. 3, § 12

3

under these circumstances. The Contracts expressly make the denominated property Owners the sole obligors. And the FAC's vague and conclusory allegations respecting the non-parties' purported involvement in negotiating and administering the contracts (devoid of any allegation that they materially benefited from Cotton's restoration of the *Owners'* properties) fail as a matter of law.

Cotton knew all along with whom it was contracting and who to sue in the event of a purported breach – the Owners whose properties they hired Cotton to restore. It cannot now ask the Court to rewrite the Contracts out of its blatant desire for a more reliable payday. Therefore, the Motion should be granted.

## I. ARGUMENT

### A. The First Amended Complaint Fails to State a Breach of Contract Claim Against the Non-Contracting Parties

Cotton has not carried its "heavy burden" of pleading an exception to the general rule that a non-contracting party may not be sued for breach. *Wiederman v. Spark Energy, Inc.*, 2020 WL 3965258, at *8 (S.D.N.Y. Mar. 9, 2020) (citation omitted).[3]

*First*, the express terms of the Contracts belie any objective expectation that the non-contracting parties would be responsible for a $5.2 million in tax liability arising from the restoration of properties that they do not own. The Contracts expressly and unambiguously state

---

["[Cotton] will be responsible for paying all International, Federal, State, Provincial or local, income, labor and similar taxes applicable to the Work."].)

[3] Cotton's assertion that this burden only applies to corporate-veil piercing (Opp. Br. at 10 n.6) is wrong. New York law draws no distinction among the various exceptions to the general rule – in all such instances, the plaintiff bears a heavy burden. *See Wiederman*, 2020 WL 3965258, at *8, 10 (plaintiff failed to carry "heavy burden" to prove non-party "assumed . . . obligations under the Employment Agreement").

that the respective property *Owners* are the sole obligors, and therefore that no payment obligation runs to non-parties Marriott, Vistana and Westin Management. (*See* WSJ Contract, Art. 9, § 1 ["Owner shall pay" the Contract Sum for the "full and satisfactory performance of the Work"]; *id.* at Art. 9, § 4 ["Owner may withhold any payment to the Contractor"].) And Cotton expressly agreed that the Contracts "shall not be construed to create a contractual relationship of any kind…(3) between any persons or entities other than the Owner and Contractor." (*id.* at Art. 1, § 2.)

Cotton's assertion that the Court should credit the "conduct" of the non-contracting parties over the Contracts' express terms – that designate the *Owners* as the sole payment obligors – turns contract law on its head. (Opp. Br. at 18-19.) The agreement itself (if clear and unambiguous, as is the case here) is dispositive of contracting intent. *Dember Constr. Corp. v. Staten Island Mall*, 56 A.D.2d 768, 769 (1st Dep't 1977) (non-contracting party's "obligations in an action arising out of the contract must be determined from the contract itself and not from the plaintiff's allegations in the complaint of its obligations"); *Capricorn Investors III, L.P. v. Coolbrands Int'l, Inc.*, 24 Misc. 3d 1224(A), at *8 (Sup. Ct. N.Y. Cnty.), *aff'd,* 66 A.D.3d 409 (1st Dep't 2009).

In rebuttal, Cotton sets up a straw man – dismissively referring to the disclaimer in Art. 1, § 2, *supra*, as a "merger and integration clause," and arguing that courts have found non-contracting parties manifested an intent to be bound despite the existence of such clauses. (Opp. Br. at 19.) Needless to say, Cotton ignores the language in the Contracts placing the payment obligation squarely, and solely, on the property Owners. (*See* WSJ Contract, Art. 9, §§ 1, 4.) And the contract language that Cotton points to in its purported exemplars is nothing like the clear and explicit disclaimer in the Contracts. For instance, the "contract" in *Powerbox (USA), Inc. v.*

5

*Honeywell Int'l, Inc.*, 2020 WL 6151491, (S.D.N.Y. Oct. 20, 2020) was not (as here) a set of complex and sophisticated construction contracts, but rather forms exchanged between a buyer and seller in an agreement for the sale of goods. The generic disclaimer of extra-contractual representations contained in Honeywell's terms and conditions (upon which Cotton relies) bears no resemblance to the disclaimer in Art. 1, § 2 of the Contracts at issue here.[4] In any event, the court in *Honeywell* never assessed the effect of these clauses on the plaintiff's legal theory. The agreement in *Rus, Inc. v. Bay Indus., Inc.*, 322 F. Supp. 2d 302, 311 (S.D.N.Y. 2003) contained similar, generic language stating that modifications or amendments were ineffective unless they were embodied in a signed writing.

*Second*, the sparse factual allegations found in the FAC, considered in light of the "totality" of the circumstances present here, do not give rise to the inference that any of the moving Defendants manifested an intent to be bound by the Contracts. *See Roldan v. Second Dev. Services, Inc.*, 2018 WL 1701938, at *8 (E.D.N.Y. Mar. 30, 2018).[5]

The FAC principally consists of conclusory allegations that the Court need not credit on a motion to dismiss. (*See* Def. Br. at 14-15 [allegations that Vistana and Marriott "micromanaged" performance under the contracts, participated in the negotiation of the Contracts and their respective change orders, and "acknowledged" they were the real parties in interest (¶ 61) merely

---

[4] Cotton also cites to language in a paragraph of the Honeywell terms and conditions entitled "Relationship of the Parties/Independent Contract" which merely disclaims the formation of an agency relationship between the contracting parties. (Opp. Br. at 19.)

[5] Cotton asserts that it need only meet **one** of the *Roldan* factors. (Opp. Br. at 10-11.) This assertion finds no support in the law; indeed, in each of the decisions that Cotton cites, the court examined the "totality" of the parties' alleged conduct and the contracts at issue.

recite the first, second and third factors of the *Roldan* test, without factual specificity, and need not be credited].)[6]

*Honeywell*, a case which Cotton relies on (Opp. Br. at 11-12), illustrates the degree of factual specificity needed to survive Rule 12 scrutiny. The complaint in *Honeywell* contained 41 individually enumerated and particularized factual allegations, each describing the dates and contents of the plaintiff's numerous communications with specific Honeywell representatives regarding the placement of and revisions to purchase orders. *Honeywell*, 1:20-cv-03638, (Complaint) ECF No. 1. No such detail is alleged in the FAC. Instead Cotton relies on conclusory allegations that Marriott and Vistana "micromanaged performance" under the contracts and negotiated change orders, while ignoring the numerous aspects of contract administration that the Owners delegated to other entities, and that these Defendants are not alleged to have aided in. (Opp. Br. 14-16.)[7] And instead of stating, for example, on how many

---

[6] Cotton's conclusory assertions that the property Owners were under the moving Defendants' "watch and control," or that Vistana and Marriot were the "de-facto guarantors," also cannot vault the FAC past a motion to dismiss. (FAC ¶¶ 44, 46, 61.) These are labels and conclusions – not facts. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (a complaint that offers "labels and conclusions" or naked assertions without "further factual enhancement" will not survive a motion to dismiss). And Cotton's vague, factual assertion that Vistana and Marriott served as Cotton's "point of contact" simply is not material to determining whether these parties intended to be bound by the Contracts.

[7] Cotton asserts that there is no prescribed form of "micromanaging" that is legally sufficient to impute liability to non-parties. (Opp. Br. at 16.) But it cannot ignore that, even crediting its vague factual allegations, Vistana and Marriott are alleged to have participated only in a small subset of the administrative activities delineated in the Contracts. Common sense dictates that, in determining whether intent to be bound may be inferred from a non-party's conduct, the alleged quantum of involvement by the non-party should be measured against the full scope of administrative activities called for under the contract, and not evaluated in a vacuum. (Def. Br. at 5-6, 15-16.)

occasions Vistana and Marriott representatives participated in negotiations to substantiate their materiality – as the *Honeywell* plaintiff did – Cotton alleges only that there were "multiple" such occasions. (FAC ¶ 20, ECF No. 56.)[8] This Court has found that similarly vague allegations failed to state a breach of contract claim against a non-contracting party. *See Mercator Corp. v. Sapinda Holding B.V.*, 2016 WL 6683505, at *5 (S.D.N.Y. Nov. 14, 2016) (allegation that "certain employees of Sapinda Holding were involved in discussing the purported contract" legally insufficient) (Koeltl, J.).[9]

Other factors drawn from the pleadings (and the contract documents incorporated therein) show that the moving Defendants never intended to be bound by the Contracts. The complexity, duration and value of the Contracts (with a combined alleged sum approximating $118 million), and their nature as <u>construction</u> contracts – involving several parties hired on the property Owners' behalves to oversee and facilitate the work (*see* Def. Br. at 17-18) – set this case apart

---

[8] Cotton also alleges that that Vistana and Marriott "reached out" to Cotton about commencing the restoration work. *Id*. This too does not give rise to an inference that they manifested an intent to be bound by the Contracts. *See Mercator*, 1:15-cv-02970, (Second Amended Complaint) ¶12, ECF No. 45 (alleging that Sapinda Holding "sought out" the plaintiff Mercator).

[9] Nor does Marriott's alleged advancement of an insurance payment to Cotton turn both Marriott and Vistana into "de-facto guarantors," as Cotton submits. The case that Cotton primarily relies upon here, *Silverberg v. SML Acquisition LLC*, 2017 WL 758520, at *6 (S.D.N.Y. Feb. 27, 2017), bears no resemblance to this case. In addition to the fact that SML (the contracting subsidiary) was merely a "dummy" for the parent, PTP (which is not alleged here), the Court found contract liability could be imputed to PTP because it had "assumed" responsibility for paying the plaintiff on a monthly basis under a 2011 contract after PTP became SML's managing member in 2013, and made such payments for approximately a year thereafter. *Id*. The FAC contains no allegations that any of the non-contracting parties made such consistent and regular payments so as to have "assumed" the property Owners' payment obligations.

from cases like *Honeywell* (exchange of forms for the purchase and sale of products valued at approximately $600,000), *Jennings* (breach of employment contract), *TransformaCon* (dispute primarily over nonpayment of approximately $500,000 in fees owed under an IT services agreement), and *RUS* (breach of sale and purchase agreement), upon which Cotton relies. *See Primiano Elec. Co. v. HTS-NY, LLC*, 2018 WL 3659557, at *24 (N.Y. Sup. Ct. Aug. 01, 2018), *modified in part*, 173 A.D.3d 620 (1st Dep't 2019) (construing construction contract and finding parent corporation, Hyatt Hotels Corporation, of property owner not liable because "[t]hat entity did not sign any of the operative agreements.")

And, as Cotton's cited cases make clear, the non-contracting party must have derived some material benefit from the Contracts. *Powerbox*, 2020 WL 6151491, (parent "was intimately involved in and *would benefit* from the contract"); *Jennings v. Hunt Cos., Inc.*, 367 F. Supp. 3d 66, 71 (S.D.N.Y. 2019) (parent "manifested an intent to be bound by *and benefit from* the Agreements") (emphasis added); *TransformaCon, Inc. v. Vista Equity Partners, Inc.*, 2015 WL 4461769, at *5 (S.D.N.Y. July 21, 2015) (plaintiff alleged parent company "was intimately involved in and *would benefit* from the contract.") (emphasis added); *see also Roldan*, 2018 WL 1701938 at *9 ("It also is difficult to see how SDS benefited from the 2008 Agreement . . . ."; dismissing breach of contract claim against non-contracting party). There is no allegation that either Marriott, Vistana or Westin Management benefited from Cotton's restoration of the Owners' properties.

The fact that Cotton understood the non-contracting parties were merely "management" companies (*see* FAC ¶¶ 12-14; Def. Br. at 3), and that companies other than the denominated property Owners would be responsible for supervising and administering Cotton's performance of the Contracts (Def. Br. at 5-6) further belies any intent to be bound. *See Dember*, 56 A.D.2d at

769 (no intent to be bound where non-contracting party was alleged to be the "managing agent of the signatory defendants and hence could be expected to have been involved in the planning and execution of the contract"). The pleaded facts infer no more than an agency relationship between the non-contracting parties and the property Owners, which is insufficient to create a payment obligation. (Def. Br. at 17-18.)

As to Westin Management, Cotton concedes that it did not play any role in administering or negotiating the Contracts. Instead, Cotton seeks to pin liability to Westin Management on the sole allegation that it was the "real party in interest" because it authored an April 30, 2020 letter disclaiming liability for the GRT. (FAC ¶¶ 52, 62.) While the parties disagree over how the letter should interpreted, Cotton musters no legal support for its extraordinary assertion that the letter standing alone is enough to impute liability to Westin Management. (*See* Opp. Br. at 20-21.)

Put simply, there is no basis to impose millions of dollars in contract liability to non-contracting parties that are not alleged to have benefited from Cotton's restoration work under the Contracts. Cotton's theory defies the law and basic principles of fairness and common sense.

## B. The First Amended Complaint Should be Dismissed as to Defendant WSJ to the Extent that it Asserts WSJ Breached Contracts to Which it is Not a Party

WSJ seeks to dismiss the FAC to the extent that Cotton has pleaded that WSJ is liable for the portion of GRT allocable to Contracts that it did not enter into. In opposition, Cotton asserts that this issue is "moot" because it does not intend its FAC to be construed to plead contract claims against WSJ arising from Contracts it did not sign. (Opp. Br. at 21-22.) While this may be the case, the Court must take the FAC on its face, and on its face the FAC (which contains only one claim asserted against all of the Defendants for the full $5.2 million GRT liability) would impose liability under *all* of the Contracts on WSJ, even though WSJ is properly alleged to have

entered into only two of the Contracts. (FAC ¶ 69.) For the reasons set forth *supra* (Section I., A.), such a claim must fail.

## II. CONCLUSION

For the reasons stated herein, in addition to the reasons stated in Defendants' opening brief, the FAC should be dismissed in its entirety with prejudice as asserted against Westin Management, Vistana, and Marriott, and it should be dismissed with prejudice against WSJ to the extent it seeks to hold WSJ liable for purported breaches of Contracts to which WSJ is not a party.

Dated: New York, New York
September 13, 2021

Respectfully submitted,

*/s/ Todd C. Norbitz*
Todd C. Norbitz
Benjamin I. Bassoff
FOLEY & LARDNER LLP
90 Park Avenue
New York, NY 10016
Telephone: 212-338-3406
Fax: 212-687-2329
Tnorbitz@foley.com
bbassoff@foley.com

*Attorneys for Defendants Westin St. John Hotel Co., Inc., Vistana Signature Experiences, Inc., Marriott Vacations Worldwide Corporation, and Westin Vacation Management Company*

## **CERTIFICATE OF COMPLIANCE**

I, Todd C. Norbitz, hereby certify that this memorandum of law complies with the formatting requirements under Rule II.D of the Court's Individual Practices. Further, the memorandum complies with the word count limitations under Rule II.D in that it contains 2,761 words, exclusive of the portions not subject to counting pursuant to Rule II.D.

*/s/ Todd C. Norbitz*
Todd C. Norbitz